## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| MIRROR METALS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00260 |
| | : | |
| UNITED STATES; UNITED STATES | : | |
| DEPARTMENT OF COMMERCE; U.S. | : | |
| CUSTOMS & BORDER PROTECTION | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **COMPLAINT**

Plaintiff Mirror Metals, Inc. ("Mirror Metals"), by and through its counsel, brings this action and alleges as follows.

## **SUMMARY**

1.     In March 2018, the President of the United States of America ("the President"), acting pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), imposed a 25% *ad valorem* tariff on steel imports. The President's Proclamation recognized that these tariffs could have unintended consequences for U.S. businesses that rely on imports of steel products not otherwise immediately available in the domestic market. Proclamation 9705, *Adjusting Imports of Steel into the United States* (Mar. 8, 2018). The Proclamation therefore expressly directed the Department of Commerce (hereafter "Commerce" or "the Department") to grant exclusions from the Section 232 tariffs to U.S.-based businesses for imported steel products that are not immediately available in sufficient quality or quantity in the United States.

2.     According to Commerce, the reason for exclusions was:

1

> [T]o protect downstream manufacturers that rely on products not
> produced by U.S. domestic industry at this time. The guiding
> principle is that, if U.S. domestic industry does not or will not
> produce a given steel or aluminum product of the quality needed by
> users in the United States, companies that rely on those products
> will not pay duties on them.

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and*

*Aluminum*, 83 Fed. Reg. 46,026, 46,038–39 (Sept. 11, 2018).

3.    Mirror Metals is a California-based provider of "architectural-grade," flat-rolled

stainless steel in a variety of specialized textures and surface treatments such as # 8 non-

directional, bright annealed steel and # 4 satin finish (the "subject steel").

4.    Mirror Metals provides the subject steel to architects, fabricators, distributors, and

contractors in North America that, in turn, use the steel in specialty projects. These projects have

included the LAX International Airport Terminals, 300 North LaSalle in Chicago, Museum of

Art and History in Santa Cruz, California, the Treasure Island Casino in Las Vegas, Nevada, and

the Aquarium at the Boardwalk in Branson, Missouri. Mirror Metals also supplies the subject

steel to automotive, transportation, refrigeration, architectural industries and the like. The subject

steel is considered "specialty steel" because of its unique reflective qualities and high gloss, non-

directional finishes that are not available in standard flat-rolled stainless steel.

5.    Mirror Metal's operation depends upon a reliable, timely and continuous supply

of substantial amounts of the subject steel in order to meet the requirements of its varied

customers, each of which has its own unique project with specific timeframes.

6.    Mirror Metals has consistently sought to source the subject steel from the

domestic market; however, domestic producers either do not produce the subject steel or cannot

provide the subject steel with the type and/or quality of finish required by Mirror Metal's

customers. The subject steel's finish is of particular importance to Mirror Metals because it

2

provides the steel with a high-gloss and reflective finish that is distinct from standard flat-rolled stainless steel.

7.    This case concerns 63 exclusion requests submitted by plaintiff that were denied by Commerce. Thirty-five (35) exclusions were filed between October 10, 2022 and January 3, 2023, six (6) were filed between March 2023 and May 2023, fifteen (15) were filed between July 24, 2023 and August 23, 2023, and seven (7) were filed between January 19, 2024 and July 12, 2024. The exclusion requests covered primarily three categories of stainless steel products: (1) #8 Non Directional, (2) 430 Bright Annealed, and (3) #4 Satin Finish. The 63 exclusion requests are listed in Exhibit 1, which is incorporated in this paragraph 7 by reference.   Exhibit 1 identifies the products under one of the foregoing three categories. These products are hereafter referred to as "the subject steel."

8.    Despite substantial evidence documenting the lack of a sufficient quantity or quality of the subject steel in the domestic market, Commerce denied each of the 63 exclusion requests after receiving domestic objections principally from  Outokumpu Stainless USA ("Outokumpu") and North American Stainless ("NAS")  and two objections from Cleveland-Cliffs Steel Inc. ("Cleveland-Cliffs"). The decision memos were dated between December 23, 2022 and April 30, 2023 on the earliest 35 exclusion requests; June 4and July 30, 2023 on the exclusion requests filed in March and May 2023; October 28, 2023 to November 19, 2023 on the 15 requests filed in July and August 2023; and April to October 2024 on the later 7 requests. As a result of the denial of the exclusion requests, Mirror Metals paid substantial amounts in Section 232 steel tariffs from which it should have been exempt.

9.    In denying Mirror Metals' exclusion requests and sustaining the objections, Commerce undertook no effort to verify the objectors' respective claims; ignored the substantial

evidence that NAS, Outokumpu and Cleveland-Cliffs are unable to produce the subject products in the required quality or required time frame, including statements made by the objectors in the objections themselves; failed to recognize the objections as insufficient under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705; and failed to provide a sufficiently reasoned basis for each of its decisions.

10.    Thus, Commerce abandoned the standards established by Proclamation 9705 and the Department's own regulations; therefore, Commerce's denials of Mirror Metals' exclusion requests were  arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA").

11.    The administrative record demonstrates that Commerce  failed  to verify the objectors' assertions, ignored probative evidence submitted by Mirror Metals and disregarded the objectors' failure to comply with subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705. Thus, Commerce ceded the entire exclusion process to the objectors without giving any real consideration to the actual record evidence regarding Mirror Metals' requests. Commerce's disregard of its obligation to engage in fair, reasoned decision-making mandates reversal.

## JURISDICTION

12.    This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(1)(B).

13.    Section 1581 of Title 28 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .tariffs, duties, fees, or other taxes on the importation of merchandize for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), and "administration and enforcement with respect to the matters

referred to in paragraphs (A)–(C) of this subsection and subsections (a)–(h) of this section." *Id.* § 1581(i)(1)(D).

14.    Section 232 is a law, "providing for tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees. Thus, this matter involves the administration and enforcement of matters referred to in 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

15.    Plaintiff Mirror Metals imports the subject steel and supplies it to architects, fabricators, distributors and contractors engaged in the construction, automotive and commercial refrigeration industries in the United States.

16.    Plaintiff filed the exclusion requests identified in paragraph 7 and Exhibit 1 of this complaint, which Commerce subsequently denied.

17.    As the importer of record, Mirror Metals was required to pay the 25 percent *ad valorem* tariff imposed by Proclamation 9705 on its imports of the subject steel into the United States.

18.    Defendant is the United States of America, acting by and through Commerce. The United States is the federal government to which Section 232 tariffs are paid and is the statutory defendant under 28 U.S.C. § 1581(i). Commerce is the agency responsible for reviewing and granting or denying Section 232 exclusion requests.

19.    Defendant U.S. Customs and Border Protection is the agency that administers and enforces Section 232 tariffs, including the 25 percent *ad valorem* tariffs imposed on certain imports of steel under Proclamation 9705.

## STANDING

20.    Mirror Metals has standing to bring this action pursuant to 28 U.S.C. § 2631(i). That statutory subsection provides as follows: "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." Section 702 provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

21.    Mirror Metals is the importer of record in the United States and paid and continues to pay Section 232 steel tariffs on the subject steel as a result of Commerce's wrongful denial of Mirror Metals' requests for exclusion from Section 232 steel tariffs.

22.    Mirror Metals is therefore a "person . . . adversely affected or aggrieved" by Commerce's action pursuant to Proclamation 9705, within the meaning of 5 U.S.C. § 702, and has suffered and continues to suffer concrete and particularized injury from Commerce's action under Proclamation 9705.

## TIMELINESS OF THIS ACTION

23.    A plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

24.    Mirror Metals contests action taken by Defendant that resulted in the denial of its requests for exclusion from Section 232 steel tariffs.

25.    Mirror Metal's claims accrued at the earliest on the date that Commerce first posted notices of its decisions to deny the exclusion requests, which occurred on and after December 23, 2022. The instant action was filed within two years of the date that Commerce

first posted notices of its denial of Mirror Metal's requests for exclusion from Section 232 steel tariffs. This action is therefore timely because it is filed within two years after the cause of action first accrued. 28 U.S.C. § 2636(i).

## STATEMENT OF FACTS

### I.     Statutory and Regulatory Background

26.     Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), authorizes the Secretary of Commerce, in coordination with the Secretary of Defense, to conduct an investigation "to determine the effects on the national security of imports" of any articles. Upon completing this investigation, the Secretary must provide the President with a report advising whether the articles under investigation are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. §§ 1862(b)(1)(A), (3)(A).

27.     If the President concurs with the Secretary's finding that a threat exists, the President shall "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii).

28.     Pursuant to Section 232, on March 8, 2018, President Trump issued Proclamation 9705, imposing additional duties on imports of steel. The Proclamation directed the Secretary of Commerce to grant exclusions from these tariffs if the Secretary determines that any steel product for which an exclusion is requested is not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." *Adjusting Imports of Steel into the United States*, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018).

29.     On March 19, 2018, Commerce, through its Bureau of Industry and Security ("BIS"), issued an interim final rule (codified at 15 C.F.R. pt. 705, supp. 1) setting forth the circumstances in which BIS would grant a tariff exclusion to directly affected U.S. businesses. Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules for tariff exclusion requests. *See Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018). Commerce has subsequently amended the rule in June 2019, October 2020, and in December 2020. *Implementation of New Commerce Section 232 Exclusions Portal*, 84 Fed. Reg. 26,751 (June 10, 2019); *Procedures To Grant Relief From the Quantitative Limitation Applicable to Certain Steel Articles for Brazil for Parties With Preexisting Contracts That Meet Specified Criteria*, 85 Fed. Reg. 64,377 (Oct. 13, 2020); *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dec. 14, 2020).

30.     The regulations adopted by BIS set forth the procedures for affected parties to request tariff exclusions. An exclusion will be granted if "any of the following three criteria" are met: (1) "the article is not produced in the United States in a sufficient and reasonably available amount," (2) "is not produced in the United States in a satisfactory quality," or (3) "for specific national security considerations." 15 C.F.R. pt. 705, supp.1 § (c)(6).

31.     The regulations also provide that a domestic producer may object to any such request if that producer is capable of "immediately" providing the imported product in the United States in the quality and quantity required by the requestor. Commerce's regulations specify that a product is "not produced in the United States in a sufficient and reasonably available amount" if:

> the amount that is needed by the end user requesting the exclusion
> is not available immediately in the United States to meet its specified

> business activities. Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks", or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier.

15 C.F.R. pt. 705, supp. 1 § (c)(6)(i).

32.    BIS further defined when a steel product is "not produced in the United States in a satisfactory quality":

> The exclusion review criterion "not produced in the United States in a satisfactory quality" does not mean that the steel needs to be identical, but it does need to be equivalent as a substitute product. "Substitute product" for purposes of this review criterion means that the steel being produced by an objector can meet "immediately" . . . the quality (*e.g.*, industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S. produced steel to be used in that business activity in the United States by that end user.

15 C.F.R. pt. 705, supp. 1 § (c)(6)(ii).

33.    "A credible objection [to a request for exclusion from Section 232 tariffs] must state that the objector can produce the product being sought." 83 Fed. Reg. 46,026, 46,035 (BIS Response to Comment (f)(4)(i)). If the objector cannot produce and supply an identical product, the request must be granted, unless the objector can and will provide a sufficient and reasonable amount of a "substitute product." 15 C.F.R. pt. 705, supp. 1 § (c)(6)(ii).

34.    The regulations address who may file an objection to a Section 232 exclusion request in subsection (d)(1) of Supplement No. 1. Subsection (d)(1) provides:

> Any individual or organization that manufactures steel or aluminum articles in the United States may file objections to steel exclusion requests, but the U.S. Department of Commerce will only consider information directly related to the submitted exclusion request that is the subject of the objection.

*Id.* at § (d)(1).

35.     BIS's regulations plainly and sensibly place the burden on an objector to
demonstrate that it can produce the identical product or a suitable "substitute product" within the
United States and within the requisite timeframe. "It is incumbent upon both the exclusion
requester, and objecting producers, to provide supplemental evidence supporting their claimed
delivery times." *Id.* at § (c)(6)(i).

36.     Objections to exclusion requests are provided for in Subsection (d) of
Supplement No. 1. Subsection (d)(4) provides, in relevant part, as follows:

> The objection should clearly identify, and provide support for, its
> opposition to the proposed exclusion, with reference to the specific
> basis identified in, and the support provided for, the submitted
> exclusion request. If the objector is asserting that it is not currently
> producing the steel or aluminum identified in an exclusion request
> but can produce the steel or aluminum and make that steel or
> aluminum available "immediately" in accordance with the time
> required for the user of steel or aluminum in the United States to
> obtain the product from its foreign suppliers, the objector must
> identify how it will be able to produce and deliver the quantity of
> steel or aluminum needed either within eight weeks, or if after eight
> weeks, by a date which is earlier than the named foreign supplier
> would deliver the entire quantity of the requested product. *It is
> incumbent on both the exclusion requester, and objecting producers,
> to provide supplemental evidence supporting their claimed delivery
> times*. This requirement includes specifying in writing to
> Department of Commerce as part of the objection, the timeline the
> objector anticipates in order to start or restart production of the steel
> included in the exclusion request to which it is objecting. For
> example, a summary timeline that specifies the steps that will occur
> over the weeks needed to produce that steel or aluminum would be
> helpful to include, not only for the Department of Commerce review
> of the objection, but also for the requester of the exclusion and its
> determination whether to file a rebuttal to the objection.

*Id*. at § (d)(4) (emphasis added).

37.     BIS has stated that objectors "should be held to the standards set forth in the
regulations," which are "specified in paragraph[] (d) . . . of supplement no. 1 to part 705." *Steel and
Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020)

(codified at 15 C.F.R. pt. 705) (BIS Response to Comment (d)(8)).

38.     BIS regulations require BIS to disregard objections that do not comply with subsection (d)(4) of supplement no. 1 to 15 C.F.R. Part 705. The regulations specify that "objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) [of the regulations] will not be considered." 15 C.F.R. pt. 705, supp.1 § (h)(1)(ii).

## II.    Mirror Metals' Requests for Exclusion from the Section 232 Tariffs

39.     The exclusion requests filed by Mirror Metals are identified in Exhibit 1. Mirror Metal's submissions to BIS demonstrated that the subject steel was not available in the United States because no domestic producer could supply Mirror Metals.

40.     As noted on the schedule in Exhibit 1, the subject steel can be divided into three categories based upon the finish: (1) #8 Non Directional, (2) 430 Bright Annealed, and (3) #4 Satin Finish.

41.     After BIS accepted Mirror Metal's exclusion requests, a combination of primarily two companies – Outokumpu and NAS (collectively, the "Objectors") – filed similar and cursory objections. The Objectors claimed without any support that they could manufacture the subject steel or "similar" steel in the quality and quantity Mirror Metals needed within the time provided for in subsection (c)(6)(i) of the regulations – within eight weeks or, if not possible, within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier.

### 1.    #8 Non-Directional Steel

42.     Mirror Metals filed exclusion requests covering stainless steel with a #8 non-directional, mirror finish. See Exhibit 1. This product requires a base steel that is annealed and then highly polished so that there is a smooth and highly reflective finish with no grit lines. Mirror Metals' exclusion requests for the subject steel state that "The mirror finish is created by

polishing. It is not applied to the material, rather the raw material is polished to a mirror finish." Furthermore, in cases of 14-26 gauge steel, the underlying steel must be brightly annealed (known as "BA" or bright annealed steel). BIS denied all of these exclusions based on Outokumpu's objections alone without addressing those filed by NAS.

43.    Outokumpu objected to Mirror Metal's exclusion requests for the subject steel with a #8 non-directional finish even though it  does not manufacture the subject steel. Nonetheless, Outokumpu responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" *See, e.g.*, Objection No. 140486 to Exclusion Request No. 339249, Objection No. 144883 to Exclusion Request No. 346176, and Objection No. 166477 to Exclusion Request No. 386011.  However, evidence on the record demonstrated that, while Outokumpu in some cases can produce the underlying steel, it cannot polish the steel to the #8 non-directional finish required by Mirror Metals.  Thus, Outokumpu itself does not produce the #8 non-directional finish.

44.    In fact, in 27 of the 29 exclusions covering # 8 non-directional steel, Outokumpu's objections do not even mention  #8 non-directional finish or identify any particular surface finish specifications. Outokumpu simply claimed without support that it can "meet all of the specifications of the product in [the] exclusion request."  These exclusions are noted with an asterisk (*) on Exhibit 1.  Notably, in other exclusions requests filed by Mirror Metals that were approved, Commerce cited this omission as proof that Outokumpu does not produce the subject steel.  *See, e.g.*, Exclusion Nos. 403586, 403587, and 403591.

45.    Mirror Metals filed rebuttals to each of Outokumpu's objections  all of which

included information demonstrating that Outokumpu is not capable of producing the subject steel with the required finish. *See, e.g.*, Rebuttal No. 57542 relating to Exclusion No. 339249, Rebuttal No. 58044 relating to Exclusion No. 346176, and Rebuttal No. 63810 relating to Exclusion No. 386011. Mirror Metals stated that Outokumpu's Product Development Manager and West Coast Sales Manager confirmed during a teleconference with Mirror Metals in September 2022 that Outokumpu did not have the capability to produce the subject steel with a #8 non-directional finish. They advised that Outokumpu can only apply a gloss to base steel that adds a reflective quality to mimic the #8 finish. An added gloss is distinct from polishing the steel to a mirror finish. Moreover, Outokumpu's representatives directed Mirror Metals to the Deco 2R portion of Outokumpu's website, which is both quoted and linked in Mirror Metals' rebuttal attachment. The website clearly states that the Deco 2R finish is not the result of polishing. Accordingly, steel with an added gloss rather than a polished finish does not constitute a "substitute product" as defined in the regulations for the subject steel. Outokumpu's website does not even reference a #8 non-directional finish.

46.     Mirror Metal's rebuttals also include e-mails from November 14, 2022 in which Outokumpu unequivocally stated that it can only produce steel with a #8 finish using outside processors. The emails were submitted confidentially to BIS. In response to Mirror Metals' request for a quote on stainless steel with a #8 non-directional, mirror finish, Outokumpu stated "[i]n terms of #8, we can produce it via outside processors." Thus, Outokumpu itself stated it cannot produce the subject steel because it relies on third-party processors.

47.     Outokumpu stated in the same email referenced in Paragraph 46 that it would rely on foreign made steel for all products 18 gauge and thinner. This e-mail stated that the base steel in those cases is "produced at [Outokumpu's] mill in Mexico." As noted by Mirror Metal's

rebuttals, Outokumpu's website states that it sources bright annealed steel, which is required to produce the subject steel in gauges 18 and thinner, from just one affiliate (Mexinox) in Mexico. Mirror Metals' rebuttals include either a link to Outokumpu's website or both a screenshot from Outokumpu's website and a link. *See e.g.*, Rebuttal No. 56212 relating to Exclusion No. 324938, Rebuttal No. 57503 relating to Exclusion No. 338379, Rebuttal No. 57542 relating to Exclusion No. 339249. Accordingly, in these cases, Outokumpu admitted it cannot even produce the underlying steel let alone the subject steel with the required #8 non-directional finish.   Valid objections can only be filed by companies that produce the product ***in the United States***, and by its own admission, as corroborated by Outokumpu's website, the company does not produce the base steel in the United States.

48.     Mirror Metals identified in several rebuttals to Outokumpu's objections that Outokumpu provided Mirror Metals with a purported sample of a #8 finish. *See, e.g.,*  Rebuttal No. 57825 relating to Exclusion No. 341039; Rebuttal No. 58870 relating to Exclusion No. 355972; Rebuttal No. 57625 relating to Exclusion No. 339240; Rebuttal No. 57651 relating to Exclusion No. 339250;. The sample contained several flaws and was far below the flawless finish required by Mirror Metals. The poor-quality sample demonstrates that Outokumpu cannot produce an identical, substitute, or equivalent product to the steel Mirror Metals requires.

49.     Mirror Metals also identified in its rebuttals that Outokumpu explicitly stated in previous objections to Mirror Metals' exclusion requests that it could not produce the #8 finish steel Mirror Metals requires.  For example, Outokumpu previously stated in several objections not currently begin litigated, "In certain circumstances, Outokumpu melts and pours steel in its U.S. mill in Calvert, AL and contracts with other domestic steel manufacturers to achieve certain finishes [emphasis added]." *See, e.g.,*  Rebuttal No. 57825 relating to Exclusion No. 341039;

Rebuttal No. 56201 relating to Exclusion No. 324905; Rebuttal No. 56212 relating to Exclusion

No. 324938; Rebuttal No.58870 relating to Exclusion No. 355972; Rebuttal No. 57625 relating

to Exclusion No. 339240; Rebuttal No. 57651 relating to Exclusion No. 339250; Rebuttal No.

58070 relating to Exclusion No. 346364.

50.     Thus, Outokumpu submitted apparently inaccurate information in its objections

and clearly failed to demonstrate it can produce the subject steel in the #8 finish.

51.     Subsection (d)(4) of the Regulations requires that an objector asserting it can

make the steel identified in the exclusion request must be available "immediately" and the

Objector must identify "how it will be able to produce and deliver the quantity of steel or

aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier

than the named foreign supplier would deliver the entire quantity of the requested product."

Likewise, subjections (d)(4) and (c)(6)(i) of the Regulations require that an objector provide

support or supplemental evidence for the claimed delivery times. Objections that fail to meet

these standards must be ignored.

52.     Outokumpu failed to provide any support or supplemental evidence in its

objections or surrebuttals, including purchase orders, invoices, and/or shipping documents, that it

could produce and deliver the subject steel in the required finish in the time frames asserted in its

objections.

53.     BIS's regulations plainly and sensibly place the burden on an objector to

demonstrate that it can produce the identical product or a suitable "substitute product" within the

requisite timeframe. "It is incumbent upon both the exclusion requester, and objecting producers,

to provide supplemental evidence supporting their claimed delivery times." 15 C.F.R. pt. 705,

supp. 1 §§ (c)(6)(i), (d)(4).  Thus, Outokumpu's objections were insufficient under the

Regulations and should have been disregarded by BIS.

54.     Because Outokumpu does not have the ability to produce the subject steel in the #
8 non-directional finish and Outokumpu failed to support its claims that it could supply the
subject steel within eight weeks or within the time required for Mirror Metals to obtain the entire
quantity of the product from its' foreign supplier, it failed to establish that it had standing to
object or, even assuming it did,  could provide the steel "immediately" as that term is defined by
Supplement No. 1 to 15 C.F.R. Part 705.  Therefore, the subject steel was not produced in the
United States in a sufficient and reasonably available amount or satisfactory quality. Further, BIS
improperly accepted Outokumpu's deficient objections because it did not provide the
information required under the Regulations for the objections to merit consideration.

### 2.  Bright Annealed Finish

55.     Mirror Metals filed exclusion request nos. 357875, 356053, and 356061 covering
stainless steel in 18, 20, and 24 gauge with a bright annealed ("BA") finish, which is steel that is
annealed to have a reflective, mirror-like appearance. *See* Exhibit 1.

56.     Outokumpu filed objections nos. 151213, 150296, and 150344 to Mirror Metals'
exclusion requests for the subject steel with a BA finish. Outokumpu does not manufacture the
subject steel with a BA finish in the United States. However, Outokumpu responded "Yes" to the
question "Is the product type identified in the Exclusion Request currently manufactured by your
organization in the United States, or can it immediately be made (within 8 weeks) by your
organization, in a company-owned plant in the United States?" Accordingly, Outokumpu
asserted that it can produce and provide the exact steel that Mirror Metals requires.

57.     In its objection to exclusion  nos. 356053 and 356061, Outokumpu failed to
specifically mention bright annealed steel or identify any particular surface finish specifications.

Outokumpu simply claimed without support that it can "meet all of the specifications of the product in [the] exclusion request." In its objection no. 357875, Outokumpu admitted it produces only "some of the product in the exclusion request description."

58.    In its objection to exclusion request no. 357875, Outokumpu stated in various "comments" sections that it "produces *some* of the product in the exclusion request description [emphasis added]." Outokumpu simultaneously claimed it can produce all the products that Mirror Metals requires. In response to the question "[w]hat percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis," Outokumpu responded with "100%." Outokumpu also indicated that it can provide steel meeting all of the specifications that Mirror Metals requires in the full range of sizes covered by the request. These contradictory statements substantially undermine the reliability of Outokumpu's assertions.

59.    In its objections, Outokumpu identified the number of days it requires to manufacture, ship, and deliver the subject steel in BA finish. However, Outokumpu does not manufacture the subject BA finish steel in the United States. Further, Outokumpu failed to provide in  any of its objections any support or supplemental evidence that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections. Thus, the objections were insufficient under the Regulations and should have been disregarded by BIS.

60.    Mirror Metals filed rebuttals to Outokumpu's objections in which Mirror Metals provided information demonstrating that Outokumpu is not capable of producing the subject steel with the required finish. *See* Rebuttal No. 59118 relating to Exclusion No. 357875; Rebuttal No. 58857 relating to Exclusion No. 356053; Rebuttal No. 58855 relating to Exclusion No.

356061. Outokumpu's West Coast Sales Manager directly advised Mirror Metals in a November 14, 2022 email that "BA is produced at our mill in Mexico" in response to Mirror Metals' request for a quote on polished steel. The email was submitted confidentially to BIS. The same Sales Manager confirmed in a teleconference with Mirror Metals that Outokumpu's domestic facilities cannot produce the BA finish steel and stated that Outokumpu can only produce the BA steel at Mexinox, Outokumpu's affiliate in Mexico. Outokumpu also advised in a previous teleconference that Outokumpu does not produce steel with a BA finish in the United States. Outokumpu's website confirms that BA finish steel is produced only by Mexinox, Outokumpu's Mexican affiliate mill. Mirror Metals' rebuttals include both a link to Outokumpu's website and a screenshot from Outokumpu's website. Valid objections can only be filed by companies that produce the product in the United States, and by its own admission, as corroborated by Outokumpu's website, the company does not produce the BA finish steel in the United States. In subsequent exclusions requests for the exact same BA finish steel filed by Mirror Metals that were approved, BIS determined that this evidence submitted by Mirror Metals demonstrated that Outokumpu intended to manufacture the steel outside the United States. *See,* exclusion nos. 362763, 362715, and 362724.

61.    Additionally, Mirror Metals submitted confidentially with its rebuttals a letter from one of Mirror Metals' customers stating it cannot find steel with an acceptable BA finish in the United States.

62.    Outokumpu filed a surrebuttal to Mirror Metals' rebuttals. Outokumpu again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish, notwithstanding its own website evidencing it did not produce the steel in the United States. Outokumpu also failed to provide any supporting documentation to support its

claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. Outokumpu's surrebuttal did not establish "immediate" availability of the subject product in the United States.

63.     In its objection to exclusion nos. 357875, 356053, and 356061, and to the exclusion requests covering the subject steel in BA finish, NAS responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" Accordingly, NAS indicated that it can "immediately" produce and provide the steel that Mirror Metals requires. However, NAS contradicted this assertion in its objections by stating in a comments section in each objection that it "has the capability to produce a product similar to this product [covered by the exclusion request] [emphasis added]." A "substitute product" means that the steel produced by the objector "can meet 'immediately; . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user." 19 C.F.R. Part 705, Suppl. No. 1 (c)(6)(ii). NAS failed to specify that its "similar" product could meet the quality and specifications Mirror Metals' customers require. Further, NAS also failed to indicate in its objection form that it can produce a "substitute product for the [product covered by the corresponding exclusion request] that has similar form, fit, function, and performance."

64.     In its objections, NAS plainly admitted that it is not capable of manufacturing and delivering the subject steel within either eight weeks or within the time that Mirror Metals' foreign supplier requires to manufacture the subject steel. Instead, NAS stated that it "could ***potentially*** supply in 90 days ***depending on market conditions*** [emphasis added]." The 90 days

was beyond both eight weeks and the timeframe in which Mirror Metals could get the steel from its overseas suppliers. .

65.    Even so, NAS failed to provide any support or supplemental evidence that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objection. Thus, NAS' objections were insufficient under the Regulations and should have been disregarded by BIS.

66.    Mirror Metals filed rebuttals to NAS' objections with a supplement in which it identified that NAS admitted in its objection that it could only *potentially* produce and deliver the subject steel in the requested quantity and, in any event, couldn't do so within eight (8) weeks or within the time required for Mirror Metals to obtain the entire quantity from its foreign supplier.  Mirror Metals also identified NAS' inconsistent statements concerning its ability to make the subject steel in the required finish. Further, Mirror Metals stated that NAS had been unable to provide an acceptable sample of steel with a BA finish meeting Mirror Metals' requirements. The rebuttal letters include images of BA steel from Mirror Metals' foreign supplier compared to the steel supplied by NAS, clearly demonstrating that NAS' product does not meet the standard Mirror Metals requires. *See* Rebuttal No. 59013 relating to Exclusion No. 357875; Rebuttal No. 58869 relating to Exclusion No. 356053; Rebuttal No. 58867 to Exclusion No. 356061.

67.    NAS filed a surrebuttal to only one of Mirror Metals' rebuttals. *See*, Surrebuttal No. 32556 relating to Exclusion No. 357875. NAS again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish and failed to provide any supporting documentation to support its claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. NAS' surrebuttal

did not establish "immediate" availability of the subject product in the United States.

68.    Because Outokumpu does not have the ability to produce the subject steel in the BA finish in the United States, and because both NAS and Outokumpu failed to support claims that they could supply the subject steel within eight weeks or within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier, they failed to establish that they could provide the steel "immediately" as that term is defined by Supplement No. 1 to 15 C.F.R. Part 705.  Therefore, the subject steel was not produced in the United States in a sufficient and reasonably available amount or satisfactory quality.

### 3.  #4 Satin Finish

69.    Mirror Metals filed exclusion requests covering stainless steel with a #4 Satin Oil Polished finish in various alloys. See Exhibit 1. Mirror Metals' exclusion requests specified that the #4 Satin finish is an architectural grade unidirectional (or "satin") finish that must be manufactured using a "320 grit abrasive" belt. The steel is characterized by short, parallel finely polished grit lines obtained by mechanically polishing the steel sheet using a belt with a high-grit (320 grit to 1,000 grit) abrasive. Steel manufactured with an abrasive grade below 320 grit does not meet Mirror Metals' requirements. The steel must be polished using "sheet-to-sheet" polishing as opposed to "coil-to-coil" polishing which results in lower quality steel.

70.    Outokumpu filed objections to Mirror Metals' exclusion requests for the subject steel with a # 4 Satin finish. Outokumpu does not manufacture the subject steel to the standard Mirror Metals requires. However, Outokumpu responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" Accordingly, Outokumpu asserted that it can

produce and provide the exact steel that Mirror Metals requires.

71.    In 26 of the 31 exclusions covering # 4 satin, Outokumpu failed to even mention #4 satin finish or identify any particular surface finish specifications. Outokumpu simply claimed without support that it can "meet all of the specifications of the product in [the] exclusion request.   These exclusions are denoted with an asterisk (*) on Exhibit 1.  Again, this type of omission has previously been the basis for BIS disregarding objections filed by Outokumpu in other exclusion requests.

72.    In its objections, Outokumpu asserted that it required 50 days to ship from receipt of purchase order and 5 days to deliver from the time of shipment from its facility to Mirror Metals' loading dock. *See, e.g.*, Objection No. 168721 to Exclusion Request No. 390578, Objection No. 168686 to Exclusion Request No. 390883, and Objection No. 168717 to Exclusion Request No. 390589.  Outokumpu failed to provide any support or supplemental evidence that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections. Thus, Outokumpu's objections were insufficient under the Regulations and should have been disregarded by BIS.

73.    Mirror Metals filed rebuttals to Outokumpu's objections in which Mirror Metals provided information demonstrating that Outokumpu is not capable of producing the subject steel with the required #4 finish to the standard Mirror Metals requires. Outokumpu directly advised Mirror Metals in an email that it applies its finishes "coil-to-coil" and that it does not apply the sheet-to-sheet polishing that Mirror Metals requires. Further the email from the Outokumpu sales representative states that, "I believe it's 180 grit for #4."  Thus, Outokumpu cannot meet Mirror Metals' quality standards of sheet-to-sheet polishing and a 320 grit abrasive. *See, e.g.*, Rebuttal No. 64464 relating to Exclusion No. 390578; Rebuttal No. 64471 relating to

Exclusion No. 390883; Rebuttal no. 64462 relating to Exclusion No. 390589.

74.      Mirror Metals confidentially submitted a quote from its overseas suppliers demonstrating that the foreign mill manufactures and ships the subject steel well within the estimation made by Mirror Metals in its exclusion requests. Mirror Metals provided with its rebuttals an email from Outokumpu evidencing that Outokumpu had a total lead time of 81 days, which is well beyond the 55-day delivery lead time Outokumpu identified in its objections. *See, e.g.,* Rebuttal No. 64464 relating to Exclusion No. 390578; Rebuttal no. 64496 relating to Exclusion No. 390585; Rebuttal no. 64476 relating to Exclusion No. 390598. Accordingly, Mirror Metals provided information demonstrating that Outokumpu has extended lead times beyond eight weeks and the time required for Mirror Metals' suppliers to provide the subject steel.

75.      Outokumpu filed surrebuttals to Mirror Metals' rebuttals. Outokumpu again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish and failed to provide any supporting documentation to support its claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. Outokumpu's surrebuttal did not establish "immediate" availability of the subject product in the United States.

76.      In numerous objections to the exclusion requests covering the subject steel in #4 Satin finish, NAS responded "No" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" NAS failed to identify whether it could produce a substitute product. Accordingly, NAS itself indicated that it cannot "immediately" produce and provide the steel that Mirror Metals

requires and, for that reason alone, the objection should be disregarded. *See* Objection No.

169143 to Exclusion No. 390578, Objection No. 169144 to Exclusion No. 390582, Objection

No. 169145 to Exclusion No. 390589, Objection No. 169146 to Exclusion No. 390591,

Objection No. 166207 to Exclusion No. 386019, Objection No. 169124 to Exclusion No.

390092, and Objection No. 169128 to Exclusion No. 390408.

77.     In several of its objections, NAS plainly admitted that it could not provide the

subject steel to Mirror Metals within eight (8) weeks or within the time required for Mirror

Metals to obtain the entire quantity from its foreign supplier. NAS claimed it required 90 days to

ship from receipt of purchase order, 90 days to manufacture from receipt of purchase order, and

2 days to deliver from the time of shipment from NAS' facility to Mirror Metals' loading dock.

However, in the "comments" section NAS stated that "current market conditions will not allow

NAS to meet the shipping requirements in this exclusion request," but it could "potentially

supply in 180 days given market conditions change." *See* Objection No. 138047 to Exclusion

No. 334672, Objection No. 138274 to Exclusion No. 334673, Objection No. 138048 to

Exclusion No. 334674, Objection No. 138049 to Exclusion No. 334675, Objection No. 138275

to Exclusion No. 334676, and Objection No. 138050 to Exclusion No. 334677.

78.     In other objections, NAS admitted that it might not be able to provide the subject

steel to Mirror Metals within eight (8) weeks or within the time required for Mirror Metals to

obtain the entire quantity from its foreign supplier. NAS stated that it required either 60 or 90

days to ship from receipt of purchase order, 60 or 90 days to manufacture from receipt of

purchase order, and 2 days to deliver from the time of shipment from NAS' facility to Mirror

Metals' loading dock. Importantly, however, in the "comments" section NAS conceded that it

"could ***potentially*** supply in 90 [or 60] days ***depending on market conditions*** [emphasis added]."

*See* Objection Nos. Objection No. 141467 to Exclusion No. 339264, Objection No. 141198 to

Exclusion No. 339269, Objection No. 141232 to Exclusion No. 339271,Objection No. 141202 to

Exclusion No. 339540, Objection No. 141451 to Exclusion No. 339616, Objection No. 141204

to Exclusion No. 339627, Objection No. 143516 to Exclusion No. 342310, Objection No.

169233 to Exclusion No. 390585, Objection No. 169429 to Exclusion No. 390598, Objection

No. 169235 to Exclusion No. 390599, Objection No. 169236 to Exclusion No. 390883,

Objection No. 169635 to Exclusion No. 390900, Objection No. 166207 to Exclusion No.

386019, and Objection No. 169234 to Exclusion No. 390594.

79.     Accordingly, NAS admitted that it is not capable of manufacturing and delivering

the subject steel within the time that Mirror Metals' foreign supplier requires to manufacture the

subject steel because it claimed it can only potentially supply within this time frame.

80.     NAS failed to provide any support or supplemental evidence that it was capable

of producing and delivering the requested quantities of the subject steel in the time frames

asserted in its objection. Thus, NAS' objections were insufficient under the Regulations and

should have been disregarded by BIS.

81.     Mirror Metals filed rebuttals to NAS' objections with a letter supplement in which

Mirror Metals identified that NAS admitted in its objection that it could not or could only

potentially produce and deliver the subject steel in the requested quantity within eight (8) weeks

or within the time required for Mirror Metals to obtain the entire quantity from its foreign

supplier.  Mirror Metals also identified NAS' inconsistent statements concerning its ability to

make the subject steel in the required finish.

82.     NAS failed to file surrebuttals to many of Mirror Metals' rebuttals. For exclusion

requests in which NAS filed surrebuttals, NAS again failed to provide BIS any objective

evidence of its actual ability to produce the subject steel in the required finish and failed to

provide any supporting documentation to support its claimed lead times, even though it had an

obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. NAS' surrebuttals

did not establish "immediate" availability of the subject product in the United States.

83.    Cleveland Cliffs filed objections to Mirror Metals' exclusion request numbers

452856 and 452861 for the subject steel with a # 4 Satin finish. Cleveland Cliffs does not

manufacture the subject steel to the standard Mirror Metals requires. However, Cleveland Cliffs

responded "Yes" to the question "Is the product type identified in the Exclusion Request

currently manufactured by your organization in the United States, or can it immediately be made

(within 8 weeks) by your organization, in a company-owned plant in the United States?"

Accordingly, Cleveland Cliffs asserted that it can produce and provide the exact steel that Mirror

Metals requires.

84.    Cleveland Cliffs simply claimed without support that it can "produce this material

to the requirements outlined in the Exclusion Request." However, Cleveland Cliffs then failed to

provide its shipping, manufacturing, and delivery lead times in the required fields, stating that

this information is "proprietary information that will be provided confidentially upon request."

Subsection (d)(4) of the Supplement to 15 C.F.R. Part 705 specifies that an objection "should

clearly identify and provide support for, its opposition to the proposed exclusion" and that "[i]t is

incumbent on both the exclusion requester, and objecting producers, to provide supplemental

evidence supporting their claimed delivery times. This requirement includes specifying in

writing to Department of Commerce as part of the objection, the timeline the objector anticipates

in order to start or restart production of the steel included in the exclusion request to which it is

objecting." Guidance issued by BIS states that "[f]or an objection filing to be considered,

organizations must provide factual information on: . . . 2) The production capabilities at steel

manufacturing facilities that they operate in the United States; and 3) The availability and

delivery time of the products that they manufacture relative to the specific steel product that is

subject to an exclusion request." *232 Exclusions Portal: External User Guide*, Department of

Commerce (available at https://www.commerce.gov/sites/default/files/2019-

12/232%20Portal%20External%20User%20Guide%20Version%2007_02_2019.pdf); Section

232 National Security Investigation of Steel Imports Information on the Exclusion Process,

Department of Commerce, Bureau of Industry and Security (available at

https://www.bis.doc.gov/index.php/232-steel). Cleveland Cliffs also failed to provide any

support or supplemental evidence that it was capable of producing and delivering the requested

quantities of the subject steel in the time frames asserted in its objections. Thus, Cleveland Cliffs

has not met its burden under subsection (d)(4) of the regulations and failed to provide the

information required for a complete objection under BIS' guidance. Cleveland Cliffs' objections

are insufficient under the regulations.

85.     Mirror Metals filed rebuttals to Cleveland Cliffs' objections in which Mirror

Metals provided information demonstrating that Cleveland Cliffs is not capable of producing the

subject steel with the required #4 finish to the standard Mirror Metals requires. Mirror Metals

confidentially submitted information from May 31, 2024 in which Cleveland Cliffs states that it

outsources polishing operations and that this outside processer can only provide "coil-to-coil"

finish polishing and that it does not apply the sheet-to-sheet polishing that Mirror Metals

requires. Thus, Outokumpu cannot meet Mirror Metals' quality standards of sheet-to-sheet

polishing and cannot produce an identical or substitute product of satisfactory quality.

86.     Because Outokumpu, NAS and Cleveland Cliffs do not have the ability to

produce the subject steel in the #4 Satin finish to the standard Mirror Metals requires, and because they likewise failed to support claims that they could supply the subject steel within eight weeks or within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier, the Objectors failed to establish that they could provide the steel "immediately" as that term is defined by Supplement No. 1 to 15 C.F.R. Part 705. Therefore, the subject steel was not produced in the United States in a sufficient and reasonably available amount or satisfactory quality.

### III.    Commerce's Denial of Mirror Metal's Exclusion Requests

87.    Mirror Metals filed rebuttals to each objection with evidence substantiating the fact that the subject steel was not available in a "sufficient and reasonably available amount" and/or in a "satisfactory quality. Nevertheless, BIS denied each of the 63 exclusions at issue.

88.    In its decision memos denying the exclusion requests, BIS stated that it was relying on the recommendations from another entity within Commerce, the International Trade Administration ("ITA"). Although the recommendation memos issued by the ITA include sections purportedly addressing objector's claimed quality, quantity, and timeliness criteria,  they do not include a complete analysis of the record before it.

89.    Notably, Mirror Metals subsequently re-filed new exclusion requests for products identical to those in nearly all of these denied requests, and BIS thereafter approved the exclusions.  Specifically, BIS approved new exclusion requests for products identical to the denied exclusion requests identified in the below table:

| Denied Exclusion Request ID No. | Granted Exclusion Request No(s). for Identical Product |
|---|---|
| 341039 | 393027 |
| 324905 | 345165 |

| | |
|---|---|
| 324938 | 392021 |
| 338228 | 345165 |
| 338231 | 391493 |
| 355972 | 403586 |
| 338379 | 392022 |
| 339240 | 345165 |
| 339242 | 391493 |
| 339249 | 391977 403587 |
| 339250 | 392020 |
| 339256 | 392023 403591 |
| 346364 | 391493 |
| 346176 | 391977 403587 |
| 346185 | 392020 |
| 346215 | 392021 |
| 346220 | 392022 |
| 346225 | 392023 |
| 359427 | 393027 |
| 391496 | 403586 |
| 386011 | 391977 403587 |
| 334672 | 404488 |
| 334673 | 404494 |
| 334674 | 404496 |
| 334675 | 404499 |
| 334676 | 404501 |
| 334677 | 404504 |
| 339264 | 404488 |
| 339269 | 404494 |
| 339271 | 404496 |
| 339540 | 404499 |
| 339616 | 404501 |
| 339627 | 404504 |
| 342310 | 404504 |
| 390578 | 403592 |
| 390582 | 403593 |
| 390585 | 403801 |
| 390598 | 403804 |
| 390599 | 403805 |
| 390883 | 403806 |

| | |
|---|---|
| 390900 | 403807 |
| 386019 | 404192 |
| 390594 | 404192 |
| 357875 | 362763 |
| 356053 | 362724 |
| 356061 | 362715 |

BIS's approval of these exclusions based on the same facts is a strong indication that the denied exclusion requests at issue should have been granted and that the denials were arbitrary, capricious or contrary to law.

90.    BIS approved new exclusion requests where Outokumpu submitted objections covering #8 non-directional finish steel identical to that covered by denied exclusion nos. 324938, 355972, 338379, 339249, 339250, 339256, 346176, 346185, 346215, 346220, 346225, 386011, and 391496 and bright annealed steel identical to that covered by denied exclusion nos. 357875, 356053, and 356061. Mirror Metals and Outokumpu submitted the same arguments and claims in the respective new exclusion requests, objections, rebuttals, and surrebuttals as those submitted in the denied exclusions. Notably, Mirror Metals provided the same evidence on the record for the new exclusion requests that Outokumpu does not produce bright annealed steel in the United States.

91.    Although ITA recommended denial, BIS approved new exclusion nos. 392021, 392022, 391977, 392020, 392023, 362724, 362715, and 362763 and stated in its decision memos:

> In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings and recommends denying the request for an exclusion. ITA also noted that there is ambiguity, based on all of the evidence presented, on whether the product offered by the objector in response to the above-captioned exclusion request is manufactured in the United States. **BIS, based upon its review of the evidence provided in the**

> **record, finds sufficient evidence that the objector intends to manufacture its offered product outside the United States**. BIS therefore finds that this exclusion request should be granted for reasons separate from ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be otherwise denied.

(emphasis added). BIS's approval of these exclusions based on the record evidence demonstrating that Outokumpu does not manufacture in the United States bright annealed steel in 18 gauge or thinner (and accordingly does not manufacture the #8 finish steel in 18 gauge or thinner) clearly reflects that denied exclusion nos. 324938, 338379, 339249, 339250, 339256, 346176, 346185, 346215, 346220, 346225, 386011, 357875, 356053, and 356061 should have been granted for the same reason.

92.    In evaluating granted exclusion nos. 403586, 403587, and 403591, covering #8 finish steel, ITA determined that Outokumpu did not meet the quality criterion because it did not demonstrate that it could manufacture a suitable substitute product. Outokumpu did not "specifically mention #8 non-directional mirror finish and the annealed specification" and failed to "commit to the #8 mirror finish specification."

93.    BIS approved new exclusion requests where Outokumpu and NAS submitted objections covering #4 satin finish steel identical to that covered by denied exclusion nos. 334672, 334673, 334674, 334675, 334676, 334677, 339264, 339269, 339271, 339540, 339616, 339627, 342310, 390578, 390582, 390585, 390598, 390599, 390883, 390900, 386019, and 390594.

94.    Notably, Mirror Metals provided the same evidence on the record for the new exclusion requests as it did for the denied requests that Outokumpu does not produce steel with the required #4 satin finish and that NAS had extended lead times. However, in its surrebuttals relating to the granted exclusions Outokumpu explicitly admitted that if needed, Outokumpu

would use a domestic processor to achieve the desired surface finish. In evaluating granted exclusion nos. 404488, 404494, 404496, 404499, 404501, 404504, 404488, 403593, 403801, 403804, 403805, 403806, 403807, and 404192, covering #4 satin finish steel, ITA determined that Outokumpu did not meet the timeliness criterion because its statement that "[i]f needed, a domestic processor will provide desired surface finish" created ambiguity in delivery time. ITA determined it was unclear if Outokumpu's claimed lead time includes the time needed for a domestic processor to provide the requested surface finish. I

95.    In the ITA memos for the exclusions to which NAS also objected (granted exclusion nos. 404496, 404499, 404501, 404504, 403804, 403805, 403806, 403807, and 404192), ITA noted it was unable to evaluate NAS' claimed delivery time because that NAS' statement that it could only "potentially supply" the steel in its claimed lead times "depending on market conditions" created ambiguity.

96.    In evaluating granted exclusion no. 403592, covering #4 satin finish steel, ITA determined that Outokumpu did not meet the quality criterion because it did not demonstrate that it could manufacture a suitable substitute product. Outokumpu did not "specifically mention oil polished #4 satin finish, the annealed and the surface roughness specifications" and accordingly did not commit to the #4 satin finish specification.

97.    When BIS issued its decisions on the denied exclusion requests, BIS simply accepted the objectors' claims that they could produce and timely provide the subject steel in the quantities needed by Mirror Metals. ITA responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims?" with respect to quality, quantity, and timeliness despite the substantial conclusive evidence Mirror Metals submitted to contradict NAS and Outokumpu's claims.

98.     The ITA memos for the denied requests reflect that the ITA repeatedly accepted at face value Outokumpu's statement that "The product in the exclusion request is standard product" and "Outokumpu can meet all the specifications of the product in the exclusion request" as sufficient evidence that Outokumpu met the quality criterion despite substantial evidence on the record contradicting Outokumpu's claims. In contrast, when Mirror Metals subsequently refiled exclusions for the same products and Outokumpu objected, the ITA determined that Outokumpu's failure to identify the required surface finish specifications reflected that "Outokumpu cannot manufacture a suitable substitute product." *See* granted exclusion nos. 403586, 403587, 403591, and 403592.

99.     The ITA memo also notes that Mirror Metals submitted information as Confidential Business Information ("CBI") to challenge Outokumpu's ability to meet the quality criterion. The ITA memo reflects that the ITA relied on the purported findings of a "Subject Matter Expert" ("SME") as to whether the product described in the confidentially submitted emails matches the product described in Mirror Metals' exclusion requests. The memos generally reflect that the SME found that the requested product was not the product described in the CBI or that it could not definitely connect the information in the CBI to the request. As a result, it appears the ITA did not consider the CBI submitted by Mirror Metals as pertinent evidence in evaluating Outokumpu's ability to meet the quality criterion. As described above, the CBI submitted by Mirror Metals clearly related to the subject steel covered by the exclusion requests. The SME incorrectly concluded that the products described in the confidential emails and the requests did not match, and the ITA improperly disregarded this evidence, which directly contradicted Outokumpu's assertions that it could produce the subject steel in the quality Mirror Metals required.

100.    The ITA did not provide sufficient reasoning to support its recommendations and clearly misinterpreted and improperly disregarded the evidence provided by Mirror Metals demonstrating that Outokumpu could not meet the exclusion criterion.

101.    The ITA did not evaluate NAS' ability to meet the quality, quantity, and timeliness criteria because it determined that Outokumpu met the criteria. The ITA failed to consider NAS' numerous admissions that it could not and may not be able to provide the subject steel in the quantities needed by Mirror Metals within the time required under the Regulations.

102.    BIS's decision is based on flawed reasoning and is in error. In adopting the ITA's recommended findings, BIS blatantly disregarded evidence on the record that the Objectors could not produce the subject steel to the requirements that Mirror Metals requires – either in terms of quality or timeliness - or produce the steel in the United States, Accordingly,  BIS made a glaring error in accepting these  unfounded objections.

103.    Outokumpu, Cleveland Cliffs and NAS both failed to provide in their objections or surrebuttals any support or supplemental evidence, such as purchase orders, invoices, and/or shipping documents, that they were capable of producing and delivering the requested quantities of the subject steel in the time frames asserted, which is required under subsections (c)(6)(i) and (d)(4) of the Regulations.

104.    BIS is required under subsection (h)(1)(ii) of the Regulations to disregard objections that do not satisfy the requirements specified in subsection (d)(4). BIS therefore improperly accepted Outokumpu's and NAS' deficient objections.

105.    Accordingly, BIS's decision to deny each of the exclusion requests is based on flawed reasoning, lacks substantial evidence, and is in error.

## STATEMENT OF CLAIMS

### COUNT I
**(APA, 5 U.S.C. §§ 701-706)**

106.    Mirror Metals hereby incorporates Paragraphs 1-105 of this Complaint.

107.    Mirror Metals submitted 63 requests for exclusion from the Section 232 tariffs for flat rolled stainless steel products as summarized in Exhibit 1. Commerce denied each of the exclusion requests.

108.    Applying the standards set forth in BIS's regulation (Supplement 1 to 15 C.F.R. pt. 705) to the evidence in the record, the only reasonable conclusion that BIS could properly have reached with regard to these exclusion requests was that Mirror Metals cannot obtain the subject steel in the U.S. market in a sufficient quantity or quality, on a timely basis to replace the steel it currently imports. Accordingly, Mirror Metals was and remains entitled to the requested tariff exclusions.

109.    BIS's decisions denying Mirror Metal's requests for exclusions from the Section 232 steel tariffs, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.  They were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court.  *Id*. §§ 702, 706.

## **REQUEST FOR RELIEF**

WHEREFORE, Mirror Metals respectfully requests that this Court enter judgment as follows:

(i)     Declaring that BIS's denials of Mirror Metal's exclusion requests were arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 *et seq.*);

(ii)    Declaring that Mirror Metals is entitled to the requested exclusions from the Section 232 steel tariffs, in accordance with Proclamation 9705 and Supplement No. 1 to 15 C.F.R. Part 705

(iii)   Directing U.S. Customs and Border Protection to refund the Section 232 tariffs previously paid by Mirror Metals on all entries for consumption of the subject steel products;

(iv)   Award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(v)    Grant such additional relief as the Court may deem just and proper.


Dated: December 20, 2024

Respectfully submitted:

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

/s/ Katherine A. Dobscha

Katherine A. Dobscha

Erik D. Smithweiss*

599 Lexington Ave., Flr. 36
New York, NY. 10022
(212) 557-4000
  -and-
*707 Wilshire Blvd., Suite 4150 Los Angeles, CA 90017
(213) 624-1970

*Counsel for Plaintiff Mirror Metals, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to USCIT R. 4(b) and (h), I hereby certify that on December 20, 2024, I caused copies of Plaintiffs' Summons and Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice 26 Federal Plaza
New York, NY 10278

Director, Civil Division Commercial Litigation Branch
U.S. Department of Justice 1100 L Street, NW Washington, DC 20530

Chief Counsel Frederick B. Smith
Office of Chief Counsel
U.S. Customs & Border Protection 26 Federal Plaza
New York, NY 10278

Office of General Counsel
Trade Enforcement and Compliance
U.S. Department of Commerce
14th Street & Pennsylvania Ave., NW
Washington, D.C. 20230

General Counsel
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, D.C. 20230

Respectfully submitted,

*/s/ Katherine A. Dobscha*
Katherine A. Dobscha

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP
599 Lexington Ave., Flr. 36
New York, NY 10022
(212) 557-4000