## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE CLAIRE R. KELLEY

| | |
|---|---|
| MIRROR METALS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Court No. 24-00260 |
| | : |
| UNITED STATES; *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

## <u>ORDER</u>

      Upon consideration of Plaintiff Mirror Metals, Inc.'s Motion Pursuant to Rule 56.1 for Judgment on the Agency Record, and all other papers and proceedings herein, it is hereby:

      **ORDERED** that Plaintiff's Motion is GRANTED; and it is further

      **ORDERED** that the contested final determinations of the U.S. Department of Commerce denying Plaintiff's Exclusion Request nos. identified in **Exhibit 1** to the Complaint were arbitrary, capricious, an abuse of discretion, not supported by substantial evidence on the record, and otherwise not in accordance with law; and it is further

      **ORDERED** that Plaintiff's Section 232 tariff exclusion request nos. identified in **Exhibit 1** are remanded to the U.S. Department of Commerce ("Commerce") for reconsideration in accordance with the decision of this Court.

      **SO ORDERED.**


                                        _____

                                        Judge

Dated: _____, 2026
      New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HONORABLE CLAIRE R. KELLEY

| | | |
|---|---|---|
| MIRROR METALS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00260 |
| | : | |
| UNITED STATES; *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Pursuant to Rule 56.1 of the Rules of the U.S. Court of International Trade, Plaintiff Mirror Metals, Inc. ("Mirror Metals") respectfully moves for judgment on the administrative record. For the reasons set forth in the accompanying Memorandum of Law in support of its motion, incorporated herein by reference, Plaintiff requests that the Court determine that the Department of Commerce's ("Commerce") denials of Mirror Metals' requests for exclusion from the Section 232 tariffs in Exclusion Request nos. identified in **Exhibit 1** to the Complaint were arbitrary, capricious, an abuse of discretion, not supported by substantial evidence on the record, and otherwise not in accordance with law.

Plaintiff respectfully moves this Court to set aside Commerce's decisions denying Mirror Metals' Exclusion Requests as arbitrary and capricious, and not in accordance with law, and enter judgment granting the relief set forth more particularly in the Proposed Order accompanying this Motion, and any other relief the Court deems just and proper, including remanding Mirror Metals' Exclusion Requests to Commerce for reconsideration.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*/s/Sarah E. Raymond*
Erik D. Smithweiss
Sarah E. Raymond

707 Wilshire Blvd., STE 4150
Los Angeles, CA 90017
(213) 624-1970
-and-
599 Lexington Ave., 36th Fl.
New York, NY 10022
 (212) 557-4000


*Counsel for Plaintiff Mirror Metals Inc.*

Dated: January 14, 2025

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE CLAIRE R. KELLEY

| | |
|---|---|
| MIRROR METALS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Court No. 24-00260 |
| | : |
| UNITED STATES; *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Erik D. Smithweiss
Sarah E. Raymond

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

707 Wilshire Blvd., STE 4150
Los Angeles, CA 90017
(213) 624-1970
-and-
599 Lexington Ave., 36th Fl.
New York, NY 10022

(212) 557-4000
*Counsel for Plaintiff*
*Mirror Metals, Inc.*

Dated: January 14, 2026

4

# **Table of Contents**

TABLE OF AUTHORITIES ....................................................................................................... 6

GLOSSARY OF CASE-SPECIFIC ACRONYMS AND ABBREVIATIONS ........................... 9

STATEMENT PURSUANT TO RULE 56.1 ............................................................................ 9

STANDARD OF REVIEW ...................................................................................................... 11

STATEMENT OF FACTS ....................................................................................................... 13

I.      Statutory and Regulatory Background .......................................................................... 13

II.     Mirror Metals' Requests for Exclusion from the Section 232 Tariffs ........................ 16

    A.      #8 Non-Directional Steel .......................................................................................... 17

    B.      Bright Annealed Finish .............................................................................................. 18

    C.      #4 Satin Finish ........................................................................................................... 20

III.    Commerce's Denial of Mirror Metals' Exclusion Requests ......................................... 23

ARGUMENT ............................................................................................................................ 24

I.      Commerce Unlawfully Denied Mirror Metals' Exclusion Requests Contrary to the Evidence on the Record ........................................................................................................... 24

    A.      Commerce Failed to Consider Evidence Establishing that the Subject Steel Was Not "Reasonably Available" in the United States In a "Satisfactory Quality" or Quantity ......................... 24

        1.      Evidence on the Record Demonstrated that Objectors Could Not Produce the Subject Steel in a Satisfactory Quality ........................................................................... 26

            a.      #8 Non-Directional Steel ...................................................................................... 26

            b.      Bright Annealed Finish .......................................................................................... 30

            c.      #4 Satin Finish ....................................................................................................... 34

        2.      Commerce Failed to Consider the Evidence on the Record Establishing that the Objectors Could Not Provide the Subject Steel "Immediately" ......................................... 39

            a.      #8 Non-Directional Steel ...................................................................................... 40

            b.      Bright Annealed Finish .......................................................................................... 40

            c.      #4 Satin Finish ....................................................................................................... 41

    B.      Commerce Failed to Provide a Sufficiently Reasoned Basis for Each of Its Decisions ............ 44

    C.      The Objections Were Deficient Under the Regulations ............................................ 47

II.     BIS Granted Mirror Metals 232 Exclusions for Steel Identical to or Substantially Similar to the Subject Steel After Denying the Exclusions on the Subject Steel ..................... 49

CONCLUSION ......................................................................................................................... 56

CERTIFICATE OF COMPLIANCE ....................................................................................... 57

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
203 F. Supp. 3d 1256, 1284–86, 1285 n.41 (Ct. Int'l Trade 2017) ................................52

*AT&T Wireless Servs., Inc. v. F.C.C.*,
270 F.3d 959, 968 (D.C. Cir. 2001). .....................................................46, 47

*Bowman Transp., Inc. v. Ark.-Best Freight System, Inc.*,
419 U.S. 281, 285-86 (1974) .................................................................12

*Borlem S.A.-Empreedimentos Industriais v. United States*,
718 F. Supp. 41, 46 (Ct. Int'l Trade 1989) .......................................................52

*Butte County, Cal. v. Hogan*,
613 F.3d 190, 194 (D.C. Cir. 2010) .............................................................25

*City of Kansas City, Mo. v. Dep 't of Hous. & Urban Dev.*,
923 F.2d 188, 194 (D.C. Cir. 1991) ........................................................30, 44

*Consol. Edison Co. v. NLRB*,
305 U.S. 197, 229 (1938) .....................................................................12

*Dickinson v. Zurko*,
527 U.S. 150, 164, 119 S. Ct. 1816 (1999)) ....................................................12

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729, 744, 105 S. Ct. 1598, 1607 (1985) ...............................................12

*Friedler v. General Servs. Admin.*,
271 F. Supp. 3d 40, 61 (D.D.C. 2017) ........................................................49

*In re Sang Su Lee*,
277 F.3d 1338, 1342. (Fed. Cir. 2002).....................................................44, 46

*JSW Steel v. United States*,
466 F.Supp.3d 1320, 1330 (Ct. Int'l. Trade 2020) .............................................46

*Mizerak v. Adams*,
682 F.2d 374, 376 (2d Cir. 1982)..............................................................30

*Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29, 30 (1983)......................................................11, 12, 24, 39

*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*,
752 F.3d 999, 1009 (D.C. Cir. 2014)...........................................................49

*O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n,*
    92 F.3d 940, 942 (9th Cir. 1996) .................................................................11

*Policy & Research, LLC v. United States Dep 't of Health & Human Servs*.,
    313 F. Supp. 3d 62, 83 (D.D.C. 2018) .....................................................48

*Seneca Foods Corp. v. United States,*
    740 F. Supp. 3d 1336, 1354 (Ct. Int'l Trade 2024) ...........................34

*Shinn Fu Co. of Am., Inc. v. Tire Hanger Corp.,*
    701 F. App'x 942, 946 (Fed. Cir. 2017) .................................................25

*Tri Union Frozen Prods., Inc. v. United States,*
    161 F. Supp. 3d 1333, 1338-39 (Ct. Int'l Trade 2016).....................52

*Ultratec, Inc. v. Caption Call, LLC,*
    872 F.3d 1267, 1274 (Fed. Cir. 2017) .....................................................47

*UPS Customhouse Brokerage, Inc.,*
    575 F.3d 1376, 1383 (C.A.F.C. 2009) .....................................................49

*Water Quality Ins. Syndicate v. United States,*
    225 F. Supp. 3d 41, 63 (D.D.C. 2016) .............................................12, 25

*WelCom Prods., Inc. v. United States,*
    865 F. Supp. 2d 1340, 1344 (Ct. Int'l Trade 2012) ..........................11

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365, 1369 (Fed. Cir. 1998).....................................................12

*Yale Univ. v. U.S. Dept. of Commerce, Domestic & Int'l Bus. Admin., Office of Import Programs,*
    579 F.2d 626, 633 (C.C.P.A. 1977) .........................................................45

**Regulations**

15 C.F.R. pt. 705, supp.1 ............................................................................9, 13, 49

15 C.F.R. pt. 705, supp.1 §(c)(6) ..............................................................13, 26

15 C.F.R. pt. 705, supp.1 §(c)(6)(i) ....................10, 14, 15, 17, 18, 19, 21, 22, 26, 42, 43, 46, 49

15 C.F.R. pt. 705, supp.1 §(c)(6)(ii) .....................................................14, 33, 35

15 C.F.R. pt. 705, supp.1 §(d)(4)....................10, 15, 18, 19, 20, 22, 23, 24, 39, 41, 44, 47, 48, 49

15 C.F.R. pt. 705, supp.1 § (h)(1) ..............................................................48

15 C.F.R. pt. 705, supp.1 § (h)(1)(ii) .....................................................16, 18

15 C.F.R. pt. 705, supp.1 § (h)(2)(ii) .................................................................................17, 39

*Adjusting Imports of Steel into the United States*, Pres. Proc. No. 9705,
83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018) .......................................................................13

*Section 232 Steel and Aluminum Tariff Exclusions Process*,
85 Fed. Reg. 81,060 (Dec. 14, 2020) ........................................................13, 15, 18, 47

*Submissions of Exclusion Requests and Objections to Submitted Requests
for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018) ....................................13

8

Plaintiff Mirror Metals, Inc. ("Mirror Metals") submits this Memorandum of Law to support its Motion for Judgment on the Agency Record.

## GLOSSARY OF CASE-SPECIFIC ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| **BIS** | Bureau of Industry and Security |
| **ERID** | Exclusion Request Identification Number |
| **ITA** | International Trade Administration |
| **SME** | Subject Matter Expert |

## STATEMENT PURSUANT TO RULE 56.1

Pursuant to Rule 56.1(c)(1) of the Rules of this Court, Plaintiff states as follows**:**

**Administrative Determination to be Reviewed**

1.  The administrative determinations sought to be reviewed are the determinations by the U.S. Department of Commerce, Bureau of Industry and Security ("Commerce") denying Mirror Metals' requests for exclusions from the tariffs imposed under Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 (hereafter "Section 232"). These administrative determinations were issued in connection with Section 232 Exclusion Request nos. identified in **Exhibit 1** to the Complaint (collectively, "Exclusion Requests"), which is incorporated herein by reference, covering "architectural-grade," flat-rolled stainless steel in a variety of specialized textures and surface treatments (the "subject steel").

**Issue of Law Presented and Reasons for Contesting the Administrative Determination**

2. Whether Commerce's denials of Mirror Metals' Exclusion Requests were arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. Commerce was required to apply the standards set forth in Commerce's regulations, Supplement No. 1 to 15 C.F.R. Part 705, to the evidence in the record in reviewing the exclusion requests. The regulations adopted by Commerce specify that a domestic producer may object to a tariff exclusion request if that producer is capable of

"immediately" providing the imported product in the United States. A product is not available in a sufficient and reasonably available amount if it is not available immediately — either within eight weeks or by a date earlier than the time required by the requestor to obtain the entire quantity of the product from the requestor's foreign supplier. 15 C.F.R. pt. 705, supp.1 §(c)(6)(i). Commerce's regulations place the burden on an objector to demonstrate that it can produce the identical product or a "substitute product" within the requisite timeframe. The regulations require the objecting producers "to provide supplemental evidence supporting their claimed delivery times." 15 C.F.R. pt. 705, supp.1 §§(c)(6)(i), (d)(4). For each request, the objector failed to provide support or supplemental evidence that it could manufacture and deliver the subject product in the quality and quantity required within the time frame specified in the regulations.

Applying the standards in the regulations to the evidence in the record, the only reasonable conclusion that Commerce could properly have reached was that Mirror Metals could not obtain the subject steel in the U.S. market in a sufficient and reasonably available amount or satisfactory quality, within eight weeks or within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier. Commerce failed to properly consider record evidence that the objector is unable to produce the subject steel in the required timeframe and/or in a satisfactory quality. Commerce failed to provide a sufficiently reasoned basis for each of its decisions. Accordingly, Mirror Metals was and remains entitled to the requested tariff exclusions. Mirror Metals' reasons for contesting the denial of its requests for exclusions from the Section 232 steel tariffs are set out in further detail in this Memorandum.

**Request for Court Order and Relief Sought**

3. For the reasons set out more fully in this Memorandum, Plaintiff respectfully requests that this Court enter judgment as follows:

(1) Declaring that Commerce's denials of Mirror Metals' exclusion requests were arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 *et seq*.); and

(2) Remanding Mirror Metals' exclusion requests to Commerce with instructions for further consideration.

## STANDARD OF REVIEW

This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(1)(B). Actions brought under 28 U.S.C. § 1581 (i) are reviewed pursuant to the Administrative Procedures Act, which requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although a "court is not to substitute its judgment for that of an agency, the agency nevertheless must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983). In its review of an agency's explanation, the "court must consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." *Id.* The relevant factors that a court will consider in setting aside agency decisions are whether the "agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. at 43; *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors . . . ." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344 (Ct. Int'l Trade 2012) (citation omitted). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"[C]ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). Commerce, as any agency, must "cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfgrs.* 463 U.S. at 48. Commerce is obligated to "articulate a rational connection between the facts found and the choice made." *Bowman Transp., Inc. v. Ark.-Best Freight System, Inc.*, 419 U.S. 281, 285-86 (1974). "Moreover, when review of an agency's action is 'bound up with a record-based factual conclusion,' the reviewing court must determine whether that conclusion 'is supported by substantial evidence.'" *Water Quality Ins. Syndicate v. United States*, 225 F. Supp. 3d 41, 63 (D.D.C. 2016) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 164, 119 S. Ct. 1816 (1999)).

When a court is "tasked with reviewing a decision based on an agency record, and that record does not support the contested decision, the court must remand for further proceedings." The Supreme Court stated in *Florida Power & Light Co. v. Lorion* that:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

470 U.S. 729, 744, 105 S. Ct. 1598, 1607 (1985).

## STATEMENT OF FACTS

### I.  Statutory and Regulatory Background

Pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. §

1862), on March 8, 2018, President Trump issued Proclamation 9705, imposing additional duties

on imports of steel. The Proclamation directed the Secretary of Commerce to grant exclusions

from these tariffs if the Secretary determines that any steel product for which an exclusion is

requested is not "produced in the United States in a sufficient and reasonably available amount

or of a satisfactory quality." *Adjusting Imports of Steel into the United States*, Pres. Proc. No.

9705, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018).

On March 19, 2018, Commerce, through its Bureau of Industry and Security ("BIS"),

issued an interim final rule (codified at 15 C.F.R. pt. 705, supp. 1) setting forth the circumstances

in which BIS would grant a tariff exclusion to directly affected U.S. businesses. On September

11, 2018, Commerce supplemented the rules for tariff exclusion requests. *See Submissions of*

*Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg.

46,026 (Sept. 11, 2018). Commerce subsequently amended the rule several times, with the last

amendment in December 2020. *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85

Fed. Reg. 81,060 (Dec. 14, 2020).

These regulations set forth the procedures for affected parties to request tariff exclusions.

An exclusion will be granted if "any of the following three criteria" are met: (1) "the article is

not produced in the United States in a sufficient and reasonably available amount," (2) "is not

produced in the United States in a satisfactory quality," or (3) "for specific national security

considerations." 15 C.F.R. pt. 705, supp.1 § (c)(6).

The regulations permit a domestic producer to object to any such request if that producer

is capable of "immediately" providing the imported product in the United States in the quality and quantity required by the requestor. Commerce's regulations specify that a product is "not produced in the United States in a sufficient and reasonably available amount" if:

> the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities. Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks", or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier.

F.R. pt. 705, supp. 1 § (c)(6)(i).

BIS further defined when a steel product is "not produced in the United States in a satisfactory quality":

> The exclusion review criterion "not produced in the United States in a satisfactory quality" does not mean that the steel needs to be identical, but it does need to be equivalent as a substitute product. "Substitute product" for purposes of this review criterion means that the steel being produced by an objector can meet "immediately" . . . the quality (*e.g.*, industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S. produced steel to be used in that business activity in the United States by that end user.

15 C.F.R. pt. 705, supp. 1 § (c)(6)(ii).

"A credible objection [to a request for exclusion from Section 232 tariffs must state that the objector can produce the product being sought." 83 Fed. Reg. 46,026, 46,035 (BIS Response to Comment (f)(4)(i)). If the objector cannot produce and supply an identical product, the request must be granted, unless the objector can and will provide a sufficient and reasonable amount of a "substitute product." 15 C.F.R. pt. 705, supp. 1 § (c)(6)(ii).

BIS's regulations place the burden on an objector to demonstrate that it can produce the identical product or a suitable "substitute product" within the United States and within the

requisite timeframe. "It is incumbent upon both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times." *Id.* at § (c)(6)(i).

Objections to exclusion requests are provided for in Subsection (d) of Supplement No. 1. Subsection (d)(4) provides, in relevant part, as follows:

> The objection should clearly identify, and provide support for, its opposition to the proposed exclusion, with reference to the specific basis identified in, and the support provided for, the submitted exclusion request. If the objector is asserting that it is not currently producing the steel or aluminum identified in an exclusion request but can produce the steel or aluminum and make that steel or aluminum available "immediately" in accordance with the time required for the user of steel or aluminum in the United States to obtain the product from its foreign suppliers, the objector must identify how it will be able to produce and deliver the quantity of steel or aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product. *It is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times.* This requirement includes specifying in writing to Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting. For example, a summary timeline that specifies the steps that will occur over the weeks needed to produce that steel or aluminum would be helpful to include, not only for the Department of Commerce review of the objection, but also for the requester of the exclusion and its determination whether to file a rebuttal to the objection.

*Id*. at § (d)(4) (emphasis added).

BIS has stated that objectors "should be held to the standards set forth in the regulations," which are "specified in paragraph[] (d) . . . of supplement no. 1 to part 705." *Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt. 705) (BIS Response to Comment (d)(8)).

BIS regulations require BIS to disregard objections that do not comply with subsection (d)(4) of supplement no. 1 to 15 C.F.R. Part 705. The regulations specify that "objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) [of the regulations] will not be

considered." 15 C.F.R. pt. 705, supp.1 § (h)(1)(ii).

## II. <u>Mirror Metals' Requests for Exclusion from the Section 232 Tariffs</u>

Mirror Metals is a California-based provider of "architectural-grade," flat-rolled stainless steel in a variety of specialized textures and surface treatments such as # 8 non- directional, bright annealed steel and # 4 satin finish (the "subject steel"). The subject steel is considered "specialty steel" because of its unique reflective qualities and high gloss, non-directional finishes that are not available in standard flat-rolled stainless steel. Mirror Metal's operation depends upon a reliable, timely and continuous supply of substantial amounts of the subject steel in order to meet the requirements of its varied customers, each of which has its own unique project with specific timeframes.

Mirror Metals has consistently sought to source the subject steel from the domestic market; however, domestic producers either do not produce the subject steel or cannot provide the subject steel with the type and/or quality of finish required by Mirror Metal's customers. The subject steel's finish is of particular importance to Mirror Metals because it provides the steel with a high-gloss and reflective finish that is distinct from standard flat-rolled stainless steel.

This case concerns 63 exclusion requests submitted by plaintiff that were denied by Commerce. The exclusion requests covered primarily three categories of stainless steel products: (1) #8 Non Directional, (2) 430 Bright Annealed, and (3) #4 Satin Finish. The 63 exclusion requests are listed in Exhibit 1 to the Complaint.   Exhibit 1 identifies the products under one of the foregoing three categories. These products are hereafter referred to as "the subject steel."

Mirror Metals' submissions to Commerce demonstrated that the subject steel was not sufficiently available in the United States because no domestic producer could supply Mirror Metals the subject steel in a sufficient quantity or quality. In the absence of an objection,

Commerce would have granted the exclusion requests in accordance with Subsection (h)(2)(ii) to the regulations ("The U.S. Department of Commerce will grant properly filed exclusion requests which meet the requisite criteria, receive no objections, and present no national security concerns.") 15 C.F.R. pt. 705, supp.1 § (h)(2)(ii). 40.          .

After BIS accepted Mirror Metal's exclusion requests, a combination of primarily two companies – Outokumpu Stainless USA ("Outokumpu") and North American Stainless ("NAS") – filed similar and cursory objections. Cleveland-Cliffs Steel Inc. ("Cleveland-Cliffs") also filed two objections. Outokumpu, NAS, and Cleveland-Cliffs are collectively referred to as "the Objectors." The Objectors claimed without any support that they could manufacture the subject steel or "similar" steel in the quality and quantity Mirror Metals needed within the time provided for in subsection (c)(6)(i) of the regulations – within eight weeks or, if not possible, within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier.

## A.    #8 Non-Directional Steel

Outokumpu objected to Mirror Metal's exclusion requests for the subject steel with a #8 non-directional finish even though it does not manufacture the subject steel. As demonstrated, *infra*, evidence on the record demonstrated that, while Outokumpu in some cases can produce the substrate steel, it cannot polish the steel to the #8 non-directional finish required by Mirror Metals.  Thus, Outokumpu itself does not produce #8 non-directional finish stainless steel.

Outokumpu claimed without providing any support that it could manufacture and deliver the subject steel in the quality and quantity Mirror Metals needed within the time provided for in subsection (c)(6)(i) of the regulations – within eight weeks or within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier. 15 C.F.R. pt. 705, supp.1 § (c)(6)(i). Outokumpu failed to provide any supplemental evidence, such as purchase

orders, invoices, and/or shipping documents, demonstrating that Outokumpu was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections. Thus, Outokumpu's objections were insufficient under subsection (d)(4) of the regulations and should have been disregarded by Commerce. *See* 15 C.F.R. pt. 705, supp.1 § (h)(1)(ii) ("Objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) will not be considered."); *see also Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt. 705) (BIS Response to Comment (d)(8)) (stating that objectors "should be held to the standards set forth in the regulations," which are "specified in paragraph[] (d) . . . of supplement no. 1 to part 705.").

Mirror Metals filed rebuttals to each of Outokumpu's objections.  Each rebuttal included information demonstrating that Outokumpu is not capable of producing the subject steel with the required finish.

Outokumpu filed surrebuttals to Mirror Metals' rebuttals. In these surrebuttals, Outokumpu again failed to provide Commerce any supporting documentation evidencing its actual ability to produce and deliver the subject steel with #8 non-directional finish in the quantities and time frames required by Mirror Metals.

### B.     Bright Annealed Finish

Outokumpu filed objections to Mirror Metals' exclusion requests for the subject steel with a Bright Annealed ("BA") finish even though Outokumpu does not manufacture the subject steel with a BA finish in the United States.

Outokumpu also failed to provide any support that it could manufacture and deliver the subject steel in the quality and quantity Mirror Metals needed within eight weeks or within the time required for Mirror Metals to obtain the entire quantity from its' foreign supplier. Thus,

Outokumpu's objections were insufficient under subsection (d)(4) of the regulations and should have been disregarded by Commerce.

Mirror Metals filed rebuttals to each of Outokumpu's objections regarding the exclusion requests for the BA finish. Each rebuttal included an e-mail communication from Outokumpu to Mirror Metals stating that it does not produce BA steel in the United States.

Outokumpu filed a surrebuttal to Mirror Metals' rebuttals. Outokumpu again failed to provide BIS any objective evidence of its actual ability to produce the subject steel with the required BA finish. Outokumpu also failed to provide any supporting documentation to support its claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. Outokumpu's surrebuttal did not establish "immediate" availability of the subject product in the United States.

NAS filed objections to Mirror Metals' exclusion requests for the subject steel with a BA finish. NAS indicated that it can "immediately" produce and provide the exact steel that Mirror Metals requires. However, NAS contradicted this assertion in its objections by stating that it "has the capability to produce a product **similar** to this product [covered by the exclusion request] [emphasis added]." *E.g.*, Appx1235. NAS failed to specify that its "similar" product could meet the quality and specifications Mirror Metals' customers require. Further, NAS also failed to indicate in its objection form that it can produce a "substitute product for the [product covered by the corresponding exclusion request] that has similar form, fit, function, and performance." *Id.*

NAS's objections admitted it is not capable of manufacturing and delivering the subject steel within either eight weeks or within the time that Mirror Metals' foreign supplier requires to manufacture the subject steel. Instead, NAS stated that it "could ***potentially*** supply in 90 days ***depending on market conditions*** [emphasis added]." *E.g.*, Appx1290. The 90 days was beyond

both eight weeks and the timeframe in which Mirror Metals could get the steel from its overseas suppliers. Even so, NAS failed to provide any support or supplemental evidence that it was capable of delivering the requested quantities of the subject steel in the time frames asserted in its objection. Thus, NAS' objections were insufficient under the Regulations and should have been disregarded by BIS.

Mirror Metals filed rebuttals to each of these NAS objections. Each rebuttal included information demonstrating that NAS could only *potentially* produce and deliver the subject steel in the requested quantity but, in any event, could not do so within the required time frame. NAS filed a surrebuttal to only one of Mirror Metals' rebuttals. NAS again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish nor support its claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. NAS' surrebuttal did not establish "immediate" availability of the subject product in the United States.

C.    **#4 Satin Finish**

Outokumpu filed objections to Mirror Metals' exclusion requests for the subject steel with a # 4 Satin finish even though Outokumpu does not manufacture the subject steel to the standard Mirror Metals requires. In 26 of the 31 exclusion requests covering # 4 satin, Outokumpu failed to even mention #4 satin finish or identify any particular surface finish specifications.

Outokumpu failed to provide any support that it could manufacture and deliver the subject steel in the quality and quantity Mirror Metals needed within eight weeks or within the time required for Mirror Metals to obtain the entire quantity of the product from its' foreign supplier. Thus, Outokumpu's objections were insufficient under subsection (d)(4) of the

regulations and should have been disregarded by Commerce.

Mirror Metals filed rebuttals to Outokumpu's objections in which Mirror Metals provided information demonstrating that Outokumpu cannot produce the subject steel with the required #4 finish to the standard Mirror Metals requires. Mirror Metals provided information demonstrating that Outokumpu has extended lead times beyond eight weeks and the time required for Mirror Metals' suppliers to provide the subject steel.

Outokumpu filed surrebuttals to Mirror Metals' rebuttals. Outokumpu again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish and failed to provide any supporting documentation to support its claimed lead times.

NAS filed objections to Mirror Metals' exclusion requests for the subject steel with a BA finish. NAS admitted that it cannot "immediately" produce and provide the exact steel that Mirror Metals requires and failed to identify whether it could produce a substitute product. Accordingly, NAS itself indicated that it cannot "immediately" produce and provide the steel that Mirror Metals requires and, for that reason alone, the objection should be disregarded.

In other objections, NAS admitted that it is not capable of manufacturing and delivering the subject steel within either eight weeks or within the time that Mirror Metals' foreign supplier requires to manufacture the subject steel.  Accordingly, NAS admitted that it is not capable of manufacturing and delivering the subject steel within the time that Mirror Metals' foreign supplier requires to manufacture the subject steel because it claimed it can only potentially supply within this time frame, and NAS in any event failed to provide any evidentiary support to the contrary.

Mirror Metals filed rebuttals highlighting NAS's admission that it could not or could only

potentially produce and deliver the subject steel in the required time frame. These Rebuttals also identified NAS' inconsistent statements concerning its ability to make the subject steel in the required finish. *Id*.

NAS did not file surrebuttals to many of Mirror Metals' rebuttals. Where it did, NAS again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish and failed to provide any supporting documentation to support its claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. NAS' surrebuttals did not establish "immediate" availability of the subject product in the United States.

Cleveland Cliffs filed objections on two of Mirror Metals' exclusion requests for the subject steel with a # 4 Satin finish. Cleveland Cliffs does not manufacture the subject steel to the standard Mirror Metals requires. Cleveland Cliffs simply claimed without support that it can "produce this material to the requirements outlined in the Exclusion Request." *See* Appx2843; Appx2893. However, Cleveland Cliffs then failed to provide its shipping, manufacturing, and delivery lead times in the required fields. The regulations require that an objection "should clearly identify and provide support for, its opposition to the proposed exclusion" and that "[i]t is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times. 15 C.F.R. pt. 705, supp.1 § (d)(4). This requirement includes specifying in writing the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting." Cleveland Cliffs also failed to provide any evidence that it could produce and deliver the requested quantities of the subject steel in the time frames asserted in its objections. Thus, Cleveland Cliffs has not met its burden under subsection (d)(4) of the regulations.

Mirror Metals filed rebuttals to Cleveland Cliffs' objections that provided information demonstrating that Cleveland Cliffs is not capable of producing the subject steel with the required #4 finish. Mirror Metals confidentially submitted information from May 31, 2024 in which Cleveland Cliffs states that it outsources polishing operations and that this outside processer can only provide "coil-to-coil" finish polishing and that it does not apply the sheet-to-sheet polishing that Mirror Metals requires. Thus, Cleveland Cliffs cannot meet Mirror Metals' quality standards of sheet-to-sheet polishing and cannot produce an identical or substitute product of satisfactory quality.

### III.  Commerce's Denial of Mirror Metals' Exclusion Requests

Commerce issued Decision Memorandums denying each of the 63 exclusion requests despite substantial evidence documenting the lack of a sufficient quantity or quality of the subject steel in the domestic market, and despite the Objectors' failure to provide any support or supplemental evidence for their claimed delivery times, as required by subsection (d)(4) of the regulations. 15 C.F.R. pt. 705, supp.1 § (d)(4).

For each decision memo, Commerce stated that it was relying on the recommendations ("ITA Recommendation Memoranda") from another entity within Commerce, the International Trade Administration ("ITA"). Although the ITA Recommendation Memoranda issued by the ITA include sections purportedly addressing objector's claimed quality, quantity, and timeliness criteria, the ITA Recommendation Memoranda do not include a complete analysis of the record before it.

BIS simply accepted the objectors' claims that they could produce and timely provide the subject steel in the quantities needed by Mirror Metals. ITA responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to

contradict the objector's claims?" despite substantial evidence Mirror Metals submitted to contradict NAS, Outokumpu and Cleveland Cliff's statements in the objection forms. Notably, Mirror Metals subsequently re-filed new exclusion requests for products identical to those in nearly all of these denied requests, and BIS thereafter approved the exclusions.

As a result of the denial of the exclusion requests, Mirror Metals paid substantial amounts in Section 232 steel tariffs from which it should have been exempt.

## ARGUMENT

### I. Commerce Unlawfully Denied Mirror Metals' Exclusion Requests Contrary to the Evidence on the Record

Commerce's denials of Mirror Metals' Exclusion Requests ran "counter to the evidence" before the agency because Commerce ignored substantial evidence that the objectors were unable to produce the subject products in a sufficient quantity or quality in the timeframe required by Mirror Metals, including statements made by the objectors in the objections themselves; failed to recognize the objections as insufficient under Commerce's regulations; and undertook no effort to verify the objector's respective claims. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Commerce's denials of Mirror Metals' exclusion requests without giving any real consideration to the actual record evidence constitutes a blatant disregard of its obligation to engage in fair, reasoned decision-making. Further, Commerce failed to provide a sufficiently reasoned basis for each of its determinations. Accordingly, Commerce's determinations denying Mirror Metals' exclusion requests were arbitrary, capricious, an abuse of discretion, not supported by substantial evidence on the record, and otherwise not in accordance with law.

#### A. Commerce Failed to Consider Evidence Establishing that the Subject Steel Was Not "Reasonably Available" in the United States In a "Satisfactory Quality" or Quantity

24

Commerce failed to consider relevant evidence on the record establishing that the subject steel was not produced in the United States in a sufficient and reasonably available amount. Agency decisions that ignore "critical context" provided in the record "amount[] to cherry-picking of evidence, that, when considered as a whole, raise[] significant doubt about the ultimate conclusion reached." *Water Quality Ins.*, 225 F. Supp. 3d at 69. "[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706." *Butte County, Cal. v. Hogan*, 613 F.3d 190, 194 (D.C. Cir. 2010). The Court of Appeals for the Federal Circuit has found an agency decision was arbitrary and capricious where it failed to "address the arguments the parties present[ed] to it." *Shinn Fu Co. of Am., Inc. v. Tire Hanger Corp.*, 701 F. App'x 942, 946 (Fed. Cir. 2017).

The regulations adopted by Commerce setting forth the procedures for affected parties to request tariff exclusions state that an exclusion will be granted if "the article is not produced in the United States in a sufficient and reasonably available amount" or the article "is not produced in the United States in a satisfactory quality." 15 C.F.R. pt. 705, supp.1 § (c)(6). In each of its ERIDs, Mirror Metals demonstrated that the subject steel was not produced in the United States in a "sufficient and reasonably available amount" or in a "satisfactory quality." Further, the subject steel was not available "immediately" in the U.S. (it could not be delivered by a U.S. producer within eight weeks or by a date earlier than the time required to obtain the entire quantity requested from a foreign supplier). *Id.* at § (c)(6)(i). In its exclusion requests, Mirror Metals advised Commerce that no domestic producers were capable of manufacturing the subject steel to the necessary specifications and that accordingly, the subject steel is not available in the U.S. in sufficient quantity and quality. Additionally, Mirror Metals provided information in the rebuttals it filed to each objection demonstrating that the respective objectors

25

would not be able to produce and deliver the requested quantity in the required quality within eight (8) weeks or within the time required for Mirror Metals to obtain the entire quantity from its foreign supplier.

### 1. Evidence on the Record Demonstrated that Objectors Could Not Produce the Subject Steel in a Satisfactory Quality

#### a. #8 Non-Directional Steel

Mirror Metals filed exclusion requests covering stainless steel with a #8 non-directional, mirror finish. *See* Exhibit 1 to the Complaint; Appx0009-0023; Appx0045-0061; Appx0084-0099; Appx0122-0137; Appx0157-0173; Appx0198-0214; Appx0239-0255; Appx0281-0294; Appx0318-0334; Appx0359-0375; Appx0400-0416; Appx0445-0458; Appx0487-0503; Appx0532-0548; Appx0577-0599; Appx0622-0636; Appx0664-0678; Appx0703-0719; Appx0743-0759; Appx0783-0799; Appx0823-0839; Appx0863-0879; Appx0904-0920; Appx0946-0962; Appx0987-1003; Appx1030-1046; Appx1073-1089; Appx1116-1132; Appx1159-1175. This product requires a base steel that is annealed and then highly polished so that there is a smooth and highly reflective finish with no grit lines. Mirror Metals' exclusion requests for the subject steel state that "The mirror finish is created by polishing. It is not applied to the material, rather the raw material is polished to a mirror finish." *See*, *e.g.*, Appx0011. Furthermore, in 14-26 gauge steel, the underlying steel must be brightly annealed (known as "BA" or bright annealed steel). *E.g.*, Appx0224; Appx0265. BIS denied all of these exclusions based on Outokumpu's objections alone without addressing those filed by NAS.

Outokumpu objected to Mirror Metal's exclusion requests for the subject steel with a #8 non-directional finish even though it does not manufacture the subject steel. Nonetheless, Outokumpu responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately

be made (within 8 weeks) by your organization, in a company-owned plant in the United

States?" *See, e.g.*, Appx0215-0220; Appx0412-0422; Appx1004-1009. However, evidence on

the record demonstrated that, while Outokumpu in some cases can produce the underlying steel,

it cannot polish the steel to the #8 non-directional finish required by Mirror Metals. Thus,

Outokumpu itself does not produce the #8 non-directional finish.

In 27 of the 29 exclusions covering # 8 non-directional steel, Outokumpu's objections do

not even mention #8 non-directional finish or identify any particular surface finish specifications.

Outokumpu simply claimed without support that it can "meet all of the specifications of the

product in [the] exclusion request." See, *e.g.*, Appx0679-0684. These exclusions are noted with

an asterisk (*) on Exhibit 1 to the Complaint.  As noted in Section II, *infra*, in other exclusions

requests filed by Mirror Metals that were approved, Commerce cited this omission as proof that

Outokumpu does not produce the subject steel.

Mirror Metals filed rebuttals to each of Outokumpu's objections, all of which included

documentation demonstrating that Outokumpu is not capable of producing the subject steel with

the required finish. *See, e.g.*, Appx0221-0227; Appx0423-0430; Appx1010-1017. These rebuttals

provided evidence that Outokumpu informed Mirror Metals in September 2022 that Outokumpu

did not have the capability to produce the subject steel with a #8 non-directional finish. *See*, *e.g.*,

Appx0689. Outokumpu stated it can only apply a gloss to base steel that adds a reflective quality

to mimic the #8 finish. *E.g.*, *id.* An added gloss is distinct from polishing the steel to a mirror

finish. *E.g.*, *id.* Moreover, Outokumpu's representatives directed Mirror Metals to the Deco 2R

portion of Outokumpu's website, which is both quoted and linked in Mirror Metals' rebuttal

attachment. *E.g.*, *id*. The website clearly states that the Deco 2R finish is not the result of

polishing. *See, e.g., id*. at note 1. Accordingly, steel with an added gloss rather than a polished

finish does not constitute a "substitute product" as defined in the regulations for the subject steel. Outokumpu's website does not even reference a #8 non-directional finish.

Mirror Metal's rebuttals also included e-mails from November 14, 2022 in which Outokumpu unequivocally stated that it can only produce steel with a #8 finish using outside processors. ("[i]n terms of #8, we can produce it via outside processors.") *E.g.*, Appx0689. Thus, Outokumpu itself stated it cannot produce the subject steel because it relies on third-party processors.

Outokumpu stated in the same email that it would rely on foreign made steel for all products 18 gauge and thinner. It stated that the base steel in those cases is "produced at [Outokumpu's] mill in Mexico." *E.g.*, Conf.Appx0693. As noted by Mirror Metal's rebuttals, Outokumpu's website states that it sources bright annealed steel, which is required to produce the subject steel in gauges 18 and thinner, from just one affiliate (Mexinox) in Mexico. Mirror Metals' rebuttals include either a link to Outokumpu's website or both a screenshot from Outokumpu's website and a link. *See e.g.*, Appx0067-0072; Appx0180-0186; Appx0221-0227. Accordingly, in these cases, Outokumpu admitted it cannot even produce the underlying steel let alone the subject steel with the required #8 non-directional finish.    Valid objections can only be filed by companies that produce the product ***in the United States***, and by its own admission, as corroborated by Outokumpu's website, the company does not produce the base steel for the #8 Non-Directional in the United States.

As noted in several rebuttals, Outokumpu provided Mirror Metals with a purported sample of a #8 finish. *See, e.g.,* Appx0685-0691; Appx0927-0933; Appx0382-0388; Appx0262-0269. The sample contained several flaws and was far below the flawless finish required by Mirror Metals. *See*, *e.g.*, Appx0648. The poor-quality sample demonstrates that Outokumpu

cannot produce an identical, substitute, or equivalent product to the steel Mirror Metals requires.

Mirror Metals also noted in its rebuttals that Outokumpu explicitly stated in previous objections that it could not produce the #8 finish steel Mirror Metals requires. For example, Outokumpu previously stated in several objections not currently begin litigated that "Outokumpu melts and pours steel in its U.S. mill in Calvert, AL and contracts with other domestic steel manufacturers to achieve certain finishes [emphasis added]." *See, e.g.*, Appx0647.

In denying the ERIDs, BIS simply accepted the objectors' claims that they could produce and timely provide the subject steel in the quality needed by Mirror Metals. ITA responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims?" with respect to quality and quantity despite the substantial evidence Mirror Metals submitted to contradict NAS and Outokumpu's claims. *E.g.*, Appx0081.

The ITA memos note that Mirror Metals submitted information as Confidential Business Information ("CBI") to challenge Outokumpu's ability to meet the quality criterion. *See*, *e.g.*, *id.* The ITA relied on the purported findings of a "Subject Matter Expert" ("SME") as to whether the product described in the confidentially submitted emails matches the product described in Mirror Metals' exclusion requests. *See*, *e.g.*, *id.* The ITA memos generally reflect that the SME found that the requested product was not the product described in the CBI or that it could not definitely connect the information in the CBI to the request. *See*, *e.g.*, *id.* As a result, it appears the ITA did not consider the CBI submitted by Mirror Metals as pertinent evidence in evaluating Outokumpu's ability to meet the quality criterion. As described above, the CBI submitted by Mirror Metals clearly related to the subject steel covered by the exclusion requests. *See*, *e.g.*, *id.* The SME incorrectly concluded that the products described in the confidential emails and the

requests did not match, and the ITA improperly disregarded this evidence that directly contradicted Outokumpu.

Commerce refused to consider undisputed evidence and acted based on assertions directly contradicted by the evidence in the record that it failed to address. *See City of Kansas City, Mo. v. Dep 't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decision making and cannot survive review under the arbitrary and capricious standard."); *Mizerak v. Adams*, 682 F.2d 374, 376 (2d Cir. 1982) ("[A]n agency decision is arbitrary and must be set aside when it rests on a critical factual premise shown by the agency's records to be indisputably incorrect.").

### b. Bright Annealed Finish

Mirror Metals filed exclusion request nos. 357875, 356053, and 356061 covering stainless steel in 18, 20, and 24 gauge with a bright annealed ("BA") finish, which is steel that is annealed to have a reflective, mirror-like appearance. *See* Exhibit 1 to the Complaint; Appx1200-1218; Appx1255-1272; Appx1307-1325.

Outokumpu filed objections nos. 151213, 150296, and 150344 to Mirror Metals' exclusion requests for the subject steel with a BA finish. Appx1219-1224; Appx1273-1277; Appx1326-1330. As established below, Outokumpu does not manufacture the subject steel with a BA finish in the United States. However, Outokumpu responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" Appx1219-1224; Appx1273-1277; Appx1326-1330. Accordingly, Outokumpu asserted that it can produce and provide the exact steel that

Mirror Metals requires, which is an inaccurate and unsupported claim.

In its objection to exclusion request nos. 356053 and 356061, Outokumpu failed to specifically mention bright annealed steel or identify any particular surface finish specifications. Appx1219-1224; Appx1273-1277. Outokumpu simply claimed without support that it can "meet all of the specifications of the product in [the] exclusion request." Appx1223; Appx1276.

In its objection to exclusion request no. 357875, Outokumpu stated in various "comments" sections that it "produces *some* of the product in the exclusion request description [emphasis added]." Appx1329. This statement contradicts Outokumpu's blanket assertion in the objection that it can produce "100%" of the quantity requested, thereby undermining the reliability of Outokumpu's assertions. Appx1329.

In its objections, Outokumpu identified the number of days it requires to manufacture, ship, and deliver the subject steel in BA finish. However, Outokumpu does not manufacture the subject BA finish steel in the United States. Thus, the objections were insufficient under the Regulations and should have been disregarded by BIS.

Mirror Metals filed rebuttals in which it provided information demonstrating that Outokumpu is not capable of producing the subject steel with the required finish. Appx1225-1230; Appx1278-1283; Appx1331-1336. Outokumpu's West Coast Sales Manager directly advised Mirror Metals in a November 14, 2022 email that "BA is produced at our mill in Mexico" in response to Mirror Metals' request for a quote on polished steel. Conf.Appx1316-1317; Conf.Appx1373-1377; Conf.Appx1436-1437. The email was submitted confidentially to BIS. The same Sales Manager confirmed in a teleconference with Mirror Metals that Outokumpu's domestic facilities cannot produce the BA finish steel and stated that Outokumpu can only produce the BA steel at Mexinox, Outokumpu's affiliate in Mexico. Appx1229;

31

Appx1282; Appx1335. Outokumpu's website confirms that BA finish steel is produced only by Mexinox, Outokumpu's Mexican affiliate mill. *Id*. Mirror Metals' rebuttals include both a link to Outokumpu's website and a screenshot from Outokumpu's website. *Id.* Valid objections can only be filed by companies that produce the product in the United States, and Outokumpu does not produce the BA finish steel in the United States.

NAS also objected to the Exclusion Request nos. 357875, 356053, and 356061. Appx1234-1239; Appx1287-1291; Appx1339-1344. NAS indicated that it can "immediately" produce and provide the steel that Mirror Metals requires. Appx1235; Appx1288; Appx1340. However, NAS contradicted this assertion by stating in a comments section that it "has the capability to produce a product *similar* to this product [covered by the exclusion request] [emphasis added]." *Id.* A "substitute product" means that the steel produced by the objector "can meet 'immediately; . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user." 19 C.F.R. Part 705, Suppl. No. 1 (c)(6)(ii). NAS failed to specify that its "similar" product could meet the quality and specifications Mirror Metals' customers require. Further, NAS also failed to indicate in its objection form that it can produce a "substitute product for the [product covered by the corresponding exclusion request] that has similar form, fit, function, and performance." *Id*.

Mirror Metals rebuttals to NAS' objections noting that NAS could only *potentially* produce and deliver the subject steel in the requested quantity and, in any event, could not do so within eight (8) weeks or within the time required for Mirror Metals to obtain the entire quantity from its foreign supplier. Appx1240-1248; Appx1292-1300; Appx1345-1351. Mirror Metals also identified NAS' inconsistent statements concerning its ability to make the subject steel in

the required finish. *Id.* Further, Mirror Metals stated that NAS had been unable to provide an acceptable sample of steel with a BA finish meeting Mirror Metals' requirements. *Id.* The rebuttal letters include images of BA steel from Mirror Metals' foreign supplier compared to the steel supplied by NAS, clearly demonstrating that NAS' product does not meet the standard Mirror Metals requires. *See Id.*

NAS filed a surrebuttal to only one of Mirror Metals' rebuttals. *See*, Appx1352-1356. NAS again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish.

BIS' decisions improperly accepted the objectors' claims that they could produce and provide the subject steel in a satisfactory quality. ITA's memos stated "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims?" with respect to quality and quantity. Appx1196; Appx1251; Appx1303. ITA's statement disregarded the substantial evidence Mirror Metals submitted to contradict NAS and Outokumpu's claims. The ITA Recommendation Memoranda also notes that Mirror Metals submitted CBI information to challenge Outokumpu's ability to meet the quality criterion but stated it would not consider this CBI evidence because it was dated more than 90 days prior to the exclusion request submission date. *Id.* The CBI demonstrated that Outokumpu was unable to produce BA steel ***in the United States***, which BIS requires for the quality criterion. *See* 15 C.F.R. Part 705, Supp.1(c)(6)(ii) (stating "Not produced ***in the United States*** in a satisfactory quality" [emphasis added]).

The ITA's refusal to consider this probative evidence is arbitrary, capricious and contrary to law. The regulations in Part 705 Supp. 1 do not place any temporal restriction on evidence that parties may place on the record, even though BIS amended this regulation numerous times

with other requirements on submission of record evidence.  Furthermore, a rigid limitation to 90-days window is arbitrary on its face if the evidence is actually probative of relevant facts. The court has accepted BIS's temporal limitation concerning sales orders, given the fluid market for steel. *Seneca Foods Corp. v. United States*, 740 F. Supp. 3d 1336, 1354 (Ct. Int'l Trade 2024). Here, however, the CBI addressed a static condition: the site at which Outokumpo manufactured BA steel. Furthermore, Mirror Metals' rebuttal provided screenshots taken from Outokumpu's own website *at the time of the rebuttal* that it used its Mexican mill to make BA steel, thereby corroborating the e-mail that BIS summarily dismissed as too old.  Thus, ITA improperly disregarded key evidence, which directly contradicted Outokumpu's assertions that it could produce the subject steel in the United States.

    Commerce therefore acted arbitrarily when it denied Mirror Metals' exclusion requests.

### c.   #4 Satin Finish

    Mirror Metals filed exclusion requests covering stainless steel with a #4 Satin Oil Polished finish in various alloys. *See* Exhibit 1; Appx1363-1377; Appx1413-1426; Appx1462-1475; Appx1511-1524; Appx1560-1574; Appx1610-1624; Appx1661-1675; Appx1711-1725; Appx1758-1772; Appx1805-1819; Appx1852-1866; Appx1899-1913; Appx1945-1963; Appx1999-2013; Appx2048-2062; Appx2100-2114; Appx2152-2166; Appx2204-2218; Appx2256-2270; Appx2308-2322; Appx2360-2374; Appx2412-2426; Appx2464-2478; Appx2516-2530; Appx2568-2582; Appx2620-2634; Appx2669-2682; Appx2721-2734; Appx2773-2786; Appx2825-2838; Appx2875-2888. Mirror Metals' exclusion requests specified that the #4 Satin finish is an architectural grade unidirectional (or "satin") finish that must be manufactured using a "320 grit abrasive" belt. *Id.* The steel is characterized by short, parallel finely polished grit lines obtained by mechanically polishing the steel sheet using a belt with a

high-grit (320 grit to 1,000 grit) abrasive. *Id.*; E.g., Appx1371. Steel manufactured with an abrasive grade below 320 grit does not meet Mirror Metals' requirements. The steel must be polished using "sheet-to-sheet" polishing as opposed to "coil-to-coil" polishing which results in lower quality steel. See, e.g., *id.*

Outokumpu filed objections to Mirror Metals' exclusion requests for the subject steel with a # 4 Satin finish. Appx1378-1383; Appx1427-1431; Appx1476-1480; Appx1536-1540; Appx1575-1579; Appx1636-1640; Appx1676-1680; Appx1735-1739; Appx1773-1777; Appx1829-1833; Appx1876-1880; Appx1914-1918; Appx1964-1968; Appx2014-2018; Appx2077-2081; Appx2115-2119; Appx2181-2185; Appx2219-2223; Appx2285-2289; Appx2337-2341; Appx2389-2393; Appx2441-2445; Appx2479-2483; Appx2531-2535; Appx2597-2601; Appx2635-2639; Appx2697-2701; Appx2749-2753; Appx2801-2805; Appx2851-2855; Appx2901-2905.  Evidence on the record indicates that Outokumpu does not manufacture the subject steel to the standard Mirror Metals requires.

In 26 of the 31 Exclusion Requests covering # 4 satin, Outokumpu failed to even mention #4 satin finish or identify any particular surface finish specifications. Outokumpu simply claimed without support that it can "meet all of the specifications of the product in [the] exclusion request." *See*, *e.g.*, Appx2077-2081.  These exclusion requests are denoted with an asterisk (*) on Exhibit 1 to the Complaint.  The objections' failure to reference the specific product finish should have caused BIS to disregard Outokumpu's objections.  *E.g.*, *see* Section II, *infra*.

Mirror Metals filed rebuttals demonstrating that Outokumpu is not capable of producing the subject steel with the required #4 finish to the standard Mirror Metals requires. Appx1384-1391; Appx1432-1439; Appx1481-1488; Appx1541-1548; Appx1580-1587; Appx1641-1648; Appx1681-1868; Appx1740-1745; Appx1778-1783; Appx1834-1839; Appx1881-1886;

Appx1919-1924; Appx1969-1974; Appx2019-2024; Appx2082-2087; Appx2120-2125; Appx2186-2191; Appx2224-2229; Appx2290-2295; Appx2342-2347; Appx2394-2399; Appx2446-2451; Appx2484-2489; Appx2536-2541; Appx2602-2607; Appx2640-2645; Appx2702-2708; Appx2754-2760; Appx2806-2812; Appx2856-2862; Appx2906-2912.   As noted in these Rebuttals, Outokumpu directly advised Mirror Metals in an email that it applies its finishes "coil-to-coil" and that it does not apply the sheet-to-sheet polishing that Mirror Metals requires. *See*, *e.g.*, Appx1391. Further, the email from the Outokumpu sales representative states that, "I believe it's 180 grit for #4." *Id.* Thus, Outokumpu cannot meet Mirror Metals' quality standards of sheet-to-sheet polishing and a 320 grit abrasive. *E.g.*, Appx2100-2114.

Outokumpu filed surrebuttals, but failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish. Appx1392-1393; Appx1440-1442; Appx1489-1491; Appx1549-1553; Appx1588-1590; Appx1649-1653; Appx1687-1689; Appx1746-1750; Appx1784-1786; Appx1840-1844; Appx1887-1891; Appx1925-1927; Appx1975-1977; Appx2025-2027; Appx2088-2092; Appx2126-2128; Appx2192-2196; Appx2230-2232; Appx2296-2300; Appx2348-2352; Appx2400-2404; Appx2452-2456; Appx2490-2492; Appx2542-2544; Appx2608-2610; Appx2646-2648; Appx2709-2711; Appx2761-2763; Appx2813-2815; Appx2863-2865; Appx2913-2915.

NAS also objected to Mirror Metals' Exclusion Requests covering the subject steel in #4 Satin finish. Appx1394-1398; Appx1443-1447; Appx1492-1496; Appx1525-1529; Appx1591-1595; Appx1625-1629; Appx1690-1694; Appx1726-1730; Appx1787-1791; Appx1820-1824; Appx1867-1871; Appx1928-1932; Appx1978-1982; Appx2028-2032; Appx2063-2067; Appx2129-2133; Appx2167-2171; Appx2233-2237; Appx2271-2275; Appx2323-2327; Appx2375-2379; Appx2427-2431; Appx2493-2498; Appx2545-2549; Appx2583-2587;

Appx2649-2653; Appx2683-2687; Appx2735-2739; Appx2787-2791. NAS conceded in almost all objections that it could not produce the product "in a company-owned plant in the United States" and also failed to indicate that it could produce a substitute product. *E.g.*, Appx1626; Appx2064; Appx2130; Appx2168. For these reasons alone the objection should be disregarded.

NAS failed to provide any support or supplemental evidence that it was capable of producing the subject steel in the required finish. Mirror Metals filed rebuttals to NAS' objections with a letter supplement in which Mirror Metals identified NAS' inconsistent statements concerning its ability to make the subject steel in the required finish. Appx1399-1406; Appx1448-1455; Appx1497-1504; Appx1530-1535; Appx1596-1603; Appx1630-1635; Appx1695-1698; Appx1731-1734; Appx1792-1797; Appx1825-1828; Appx1872-1875; Appx1933-1938; Appx1983-1986; Appx2033-2040; Appx2068-2073; Appx2134-2139; Appx2172-2177; Appx2238-2243; Appx2276-2281; Appx2328-2333; Appx2380-2385; Appx2432-2437; Appx2498-2503; Appx2550-2555; Appx2588-2593; Appx2654-2659; Appx2688-2693; Appx2740-2745; Appx2792-2797. NAS then failed to file surrebuttals to many of Mirror Metals' rebuttals. For exclusion requests in which NAS filed surrebuttals, NAS again failed to provide BIS any objective evidence of its actual ability to produce the subject steel in the required finish. Appx1699-1703; Appx1987-1991; Appx2088-2092; Appx2140-2044; Appx2178-2180; Appx2244-2248; Appx2282-2284; Appx2334-2336; Appx2386-2388; Appx2438-2440; Appx2504-2508; Appx2556-2558; Appx2594-2596; Appx2694-2696; Appx2746-2748; Appx2798-2800.

Cleveland Cliffs filed objections to Mirror Metals' exclusion request numbers 452856 and 452861 for the subject steel with a # 4 Satin finish. Appx2839-2843; Appx2889-2893. Cleveland Cliffs does not manufacture the subject steel to the standard Mirror Metals requires.

However, Cleveland Cliffs responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" Appx2839; Appx2889.

Mirror Metals filed rebuttals that provided information demonstrating that Cleveland Cliffs is not capable of producing the subject steel with the required #4 finish. Appx2844-2850; Appx2894-2900. Mirror Metals confidentially submitted information in which Cleveland Cliffs states that it outsources polishing operations and that this outside processer can only provide "coil-to-coil" finish polishing and that it does not apply the sheet-to-sheet polishing that Mirror Metals requires. Appx3014; Appx3068. Thus, Cleveland Cliffs cannot meet Mirror Metals' quality standards of sheet-to-sheet polishing and cannot produce an identical or substitute product of satisfactory quality.

The record established that Outokumpu, NAS and Cleveland Cliffs do not have the ability to produce the subject steel in the #4 Satin finish to the standard Mirror Metals requires.

The BIS decisions improperly accepted the objectors' claims that they could produce and provide the subject steel in a satisfactory quality. All of ITA's memos stated "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims?" with respect to quality and quantity. *See*, *e.g.*, Appx1411; Appx2768.  ITA's statement disregarded the substantial evidence Mirror Metals submitted to contradict the Objectors' assertions. The ITA again incorrectly disregarded CBI submitted by Mirror Metals that demonstrated Outokumpu – and the other objectors – could not meet the quality criterion. In adopting the ITA's recommended findings, BIS blatantly disregarded evidence on the record that the Objectors could not produce the subject steel to

Mirror Metal's requirement. Commerce acted arbitrarily when it denied Mirror Metals' exclusion requests.

2. **Commerce Failed to Consider the Evidence on the Record Establishing that the Objectors Could Not Provide the Subject Steel "Immediately"**

While a domestic producer may object to exclusion requests if the producer is capable of "immediately" providing the imported product in the United States, filing an objection is no insignificant matter. In the absence of an objection, Commerce will grant a properly filed exclusion request. *See* 15 C.F.R. pt. 705, supp.1 § (h)(2)(ii). Commerce regulations accordingly place a significant burden on objectors to provide actual evidence to support an objector's contention regarding delivery times. *Id.* at § (d)(4).

The Objectors asserted that they were capable of providing the product covered by each respective exclusion request in a satisfactory quality and within eight weeks or within the time Mirror Metals could obtain the entire requested quantity from its foreign supplier. The Objectors did not, however, submit any documentation or other evidence beyond unsubstantiated and self-serving statements that they could provide the subject steel within the claimed lead times. Commerce's decision memos and the ITA recommendation memos do not acknowledge the Objectors' failure to provide support or supplemental evidence concerning claimed lead times, which reflects a clear failure to properly evaluate the record.

Commerce is obligated to consider all relevant data in the record to arrive at a reasoned decision. *See Motor Vehicle Mfrs.*, 463 U.S. at 43. (Commerce is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."). Yet, none of the ITA memos properly consider the substantial evidence submitted by Mirror Metals; nor mention of the absence of any documentation from the Objectors. The conclusory ITA recommendation

39

memos upon which Commerce relied in denying Mirror Metals' exclusion requests assert –
without supporting evidence on the record - that the Objectors' respective claimed delivery times
meet the "timeliness" criterion. The ITA recommendation memos do
not address probative evidence on the record for the respective requests.

### a.  #8 Non-Directional Steel

The ITA memos recommending denial of the exclusions similarly did not mention the
objector's failure to provide documentation supporting delivery timeframes.   ITA simply stated
"no" in a field on the analysis form that reads "[d]oes anything in the request, objection, rebuttal,
or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to
the objector's delivery time information?" Thus, ITA again accepted the objectors unsupported
claims at face value, in contradiction to the regulations.

### b.  Bright Annealed Finish

In its objections, Outokumpu identified the number of days it requires to manufacture,
ship, and deliver the subject steel in BA finish. However, by its own admission in the Nov. 2022
e-mail cited above, Outokumpu does not manufacture the subject BA finish steel in the United
States.  Appx1229; Appx1282; Appx1335.

NAS also admitted it is not capable of manufacturing and delivering the subject steel
within eight weeks or the time that Mirror Metals' foreign supplier requires to manufacture the
subject steel.  Instead, NAS stated that it "could ***potentially*** supply in 90 days ***depending on
market conditions*** [emphasis added]." Appx1238; Appx 1290; Appx1343. The 90 days was
beyond both eight weeks and the timeframe in which Mirror Metals could get the steel from its
overseas suppliers. Even so, NAS failed to provide any support or supplemental evidence that it
was capable of producing and delivering the requested quantities of the subject steel in the time
frames asserted in its objection. Thus, NAS' objections were insufficient under the Regulations

and should have been disregarded by BIS.

NAS filed a surrebuttal to only one of Mirror Metals' rebuttals and again failed to provide any supporting documentation to support its claimed lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations. *See* Appx1352-1356.

The ITA memos recommending denial of the ERIDs did not mention the Objectors' failure to provide documentation supporting their delivery timeframes.   ITA simply stated "no" in a field on the analysis form that reads "[d]oes anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information?" Further, NAS plainly admitted that it is not capable of manufacturing and delivering the subject steel within either eight weeks or within the time that Mirror Metals' foreign supplier requires to manufacture the subject steel.

In denying the exclusion requests, Commerce turned a blind eye to the fact that Outokumpu and NAS failed to provide evidence substantiating their lead times, as required under subsection (c)(6)(i) and (d)(4) of the regulations.  The ITA did not evaluate NAS' ability to meet the quality, quantity, and timeliness criteria because it determined that Outokumpu met the criteria. The ITA failed to consider NAS' numerous admissions that it could not and may not be able to provide the subject steel in the quantities needed by Mirror Metals within the time required under the Regulations.

The evidence submitted by Mirror Metals clearly demonstrated that the Objectors could not supply the subject steel in the required finish within eight weeks or the time required by Mirror Metals' supplier.

### c.   #4 Satin Finish

In its objections, Outokumpu asserted that it required 50 days to ship from receipt of purchase order and 5 days to deliver from the time of shipment from its facility to Mirror Metals' loading dock. *See*, *e.g.*, Appx2115-2119; Appx2531-2535; Appx2285-2289.  Outokumpu failed to provide any support or supplemental evidence that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections. Thus, Outokumpu's objections were insufficient under the Regulations and should have been disregarded by BIS.

Mirror Metals provided with its rebuttals an email from Outokumpu evidencing that Outokumpu had a total lead time of 81 days, which is well beyond the 55-day delivery lead time Outokumpu identified in its objections. *See, e.g.,* Appx2120-2125; Appx2446-2451; Appx2224-2229. Accordingly, Mirror Metals provided information demonstrating that Outokumpu has extended lead times beyond eight weeks and the time required for Mirror Metals' suppliers to provide the subject steel.

Outokumpu filed surrebuttals that again failed to provide any supporting documentation to support its claimed lead times. Thus, Outokumpu's surrebuttal did not establish "immediate" availability of the subject product in the United States.

In several of its objections, NAS plainly admitted that it could not provide the subject steel to Mirror Metals within eight (8) weeks or within the time required for Mirror Metals to obtain the entire quantity from its foreign supplier. NAS claimed it required 90 days to ship from receipt of purchase order, 90 days to manufacture from receipt of purchase order, and 2 days to deliver from the time of shipment from NAS' facility to Mirror Metals' loading dock. However, in the "comments" section NAS stated that "current market conditions will not allow NAS to meet the shipping requirements in this exclusion request," but it could "potentially supply in 180

days given market conditions change." *See* Appx1394-1398; Appx1443-1447; Appx1492-1496; Appx1525-1529; Appx1591-1595; Appx1625-1629.

In other objections, NAS admitted that it might not be able to provide the subject steel to Mirror Metals within eight (8) weeks or within the time required for Mirror Metals to obtain the entire quantity from its foreign supplier. NAS stated that it required either 60 or 90 days to ship from receipt of purchase order, 60 or 90 days to manufacture from receipt of purchase order, and 2 days to deliver from the time of shipment from NAS' facility to Mirror Metals' loading dock. Importantly, however, in the "comments" section NAS conceded that it "could ***potentially*** supply in 90 [or 60] days ***depending on market conditions*** [emphasis added]." *See* Appx1690-1694; Appx1726-1730; Appx1787-1791; Appx1820-1824; Appx1867-1871; Appx1928-1932; Appx1978-1982; Appx2233-2237; Appx2271-2275; Appx2323-2327; Appx2375-2379; Appx2427-2431; Appx2493-2498; Appx2583-2587.

Accordingly, NAS admitted that it is not capable of manufacturing and delivering the subject steel within the time that Mirror Metals' foreign supplier requires to manufacture the subject steel because it claimed it can only potentially supply within this time frame.

Mirror Metals filed rebuttals to NAS' objections noting NAS' inconsistent statements concerning its ability to make the subject steel in the required finish. Appx1399-1406; Appx1448-1455; Appx1497-1504; Appx1530-1535; Appx1596-1603; Appx1630-1635; Appx1695-1698; Appx1731-1734; Appx1792-1797; Appx1825-1828; Appx1872-1875; Appx1933-1938; Appx1983-1986; Appx2033-2040; Appx2068-2073; Appx2134-2139; Appx2172-2177; Appx2238-2243; Appx2276-2281; Appx2328-2333; Appx2380-2385; Appx2432-2437; Appx2498-2503; Appx2550-2555; Appx2588-2593; Appx2654-2659; Appx2688-2693; Appx2740-2745; Appx2792-2797.

The ITA memos recommending denial of the exclusions did not mention the Objectors'
failure to provide documentation supporting their delivery timeframes.   ITA simply stated "no"
in a field on the analysis forms that read "[d]oes anything in the request, objection, rebuttal, or
surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to
the objector's delivery time information?" The evidence on the record directly contradicts the
ITA conclusion.

Commerce again turned a blind eye to the fact that Outokumpu and NAS failed to
provide evidence substantiating its lead times, as required under subsection (c)(6)(i) and (d)(4) of
the regulations.  The ITA did not evaluate NAS' ability to meet the quality, quantity, and
timeliness criteria because it determined that Outokumpu met the criteria. The ITA failed to
consider the substantial industry information Mirror Metals submitted demonstrating that
Outokumpu had extended lead times. Commerce flatly ignored the evidence in the record
undermining Outokumpu's claims that it could timely deliver the subject steel. *See City of
Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency
action based on a factual premise that is flatly contradicted by the agency's own record does not
constitute reasoned administrative decision making and cannot survive review under the arbitrary
and capricious standard.").

### B.  Commerce Failed to Provide a Sufficiently Reasoned Basis for Each of Its Decisions

An agency must "cogently explain why it has exercised its discretion in a given manner."
*Id*. at 48. The agency must "not only have reached a sound decision but have articulated the
reasons for that decision." *In re Sang Su Lee*, 277 F.3d 1338, 1342. (Fed. Cir. 2002).  Agency
action is arbitrary and capricious where the agency fails to "present a full and reasoned

explanation of its decision." *Id.* at 1344. "Conclusory statements . . . do not fulfill [an] agency's obligation" to articulate reasoned findings. *Id*. at 1342.

As identified above, Commerce issued a conclusory Decision Memorandum denying each of Mirror Metals' exclusion requests in which Commerce stated it had accepted and was relying upon ITA's recommended findings. The recommendation memorandums issued by ITA simply accepted and parroted Outokumpu's claims and, as set forth above, disregarded significant probative evidence on the record demonstrating that the subject steel was not produced in the United States in the quality Mirror Metals required or within the required timeframes. Accordingly, neither Commerce's Decision Memorandums nor ITA's Recommendation Memos explained how the evidence on the record was weighed, and how it supported a finding that Outokumpu was able to meet the quality, quantity and time criterion warranting a denial of Mirror Metals' exclusion requests.

Furthermore, Commerce's reliance on and adoption of ITA's conclusory recommendations that ignored and misinterpreted relevant data in the record, without providing its own analysis, evidences a clear failure to engage in reasoned decision-making and a failure to present a reasoned explanation of its decisions.  Decisions which "merely refer to" and summarily adopt "recommendations [which] themselves do not present any discussion of the evidence which supports the conclusory statements therein" are insufficient and do not constitute the reasoned analysis required under the APA. *Yale Univ. v. U.S. Dept. of Commerce, Domestic & Int'l Bus. Admin., Office of Import Programs*, 579 F.2d 626, 633 (C.C.P.A. 1977) (reversing denials of duty exemptions for imported scientific equipment where the denials were based on conclusory recommendations given by the Florence Agreement Committee of the National Institutes of Health).

Commerce's denials of Mirror Metals' exclusion requests were arbitrary and capricious, in violation of the APA, because Commerce did not articulate a sufficient, reasoned basis for each of its decisions.

In the ITA recommendation memos adopted by Commerce, and as more fully set forth above, ITA also failed to analyze the industry information Mirror Metals submitted evidencing that Outokumpu's lead times were extended beyond eight weeks and the time required for Mirror Metals' foreign supplier to provide the subject steel. The ITA did not evaluate NAS' ability to meet the quality, quantity, and timeliness criteria because it determined that Outokumpu met the criteria.

A full and cogent explanation of Commerce's decisions should have included an accurate analysis of the record, including a detailed analysis of the information supplied by Mirror Metals relating to Outokumpu's inability to produce the subject steel, and why Commerce determined this critical information did not support a finding that Outokumpu could not meeting the quality and timeliness criteria. *See JSW Steel v. United States*, 466 F.Supp.3d 1320, 1330 (Ct. Int'l. Trade 2020) (remanding denials of 232 exclusion requests because "the court [could not] be certain what record evidence, if any, Commerce relied upon when both the BIS decision memoranda and ITA recommendation memoranda [did]not explain what information the sub-agencies considered, how it was weighed, or why the evidence compelled denial."). Thus, Commerce did not articulate "a rational connection between the facts found and the choice made." *AT&T Wireless Servs., Inc. v. F.C.C.*, 270 F.3d 959, 968 (D.C. Cir. 2001). The explanation Commerce did provide evidenced both a disregard and misinterpretation of the record and simply repeated Outokumpu's claims and thus did not "present a full and reasoned explanation of its decision." *In re Sang Su Lee*, 277 F.3d at 1344.

This unreasoned denial of Mirror Metals' exclusion requests without sufficient explanation or actual consideration of the evidence is, on its face, arbitrary and capricious.

In sum, Commerce failed to provide a reasoned basis for each of its determinations and instead simply accepted ITA's recommendations, which in turn disregarded the actual record evidence regarding Mirror Metals' requests. *AT&T Wireless Servs.,* 270 F.3d at 968; *See Ultratec, Inc. v. Caption Call, LLC*, 872 F.3d 1267, 1274 (Fed. Cir. 2017) (stating that for judicial review to be meaningful, "an agency must present a full and reasoned explanation of its decision" and that "the agency does not have unfettered discretion, and [the court] cannot affirm agency decision-making where the agency fails to provide a reasoned basis for its decision." (quotations omitted)). Commerce's disregard of its obligation to engage in fair, reasoned decision-making is arbitrary and capricious, mandating reversal. Applying the standards set forth in Commerce's regulations (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that Commerce could properly have reached with regard to these exclusion requests was that Mirror Metals cannot obtain the subject steel in the U.S. market in a sufficient quality on a timely basis.

## C. The Objections Were Deficient Under the Regulations

A domestic producer may object to a request for exclusion from Section 232 tariffs if the producer is capable of "immediately" providing the product or a suitable "substitute product" for which the exclusion is sought in the quality and quantity the requestor requires. Commerce regulations required the Objectors to provide support or supplemental evidence for its claimed delivery times. *See* 15 C.F.R. pt. 705, supp.1 §§ (c)(6)(i), (d)(4); *see also Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt. 705) (including BIS' response to a comment in which BIS stated

"Commerce agrees that all parties, both objectors and requesters, should be held to the standards set forth in the regulations . . . . These standards are specified on the objection [] forms, [and] in the criteria specified in paragraph[] (d) . . . of supplement no. 1 to part 705.").

Commerce regulations also required Commerce to disregard objections that do not comply with subsection (d)(4). "Objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) will not be considered." 15 C.F.R. pt. 705, supp.1 § (h)(1). Under the APA, Commerce was required to identify whether the Objectors' respective objections were sufficient under the regulations in order to engage in reasoned decision making and to act in accordance with its own regulations. "[A]n agency has no choice but to provide a reasoned explanation for its actions, and it cannot undertake to act in a manner that is contrary to its own regulations." *Policy & Research, LLC v. United States Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 83 (D.D.C. 2018), *appeal dismissed*, 2018 WL 6167378 (D.C. Cir. Oct. 29, 2018).

The Objectors failed to provide in any of the objections or surrebuttals any support or supplemental evidence, such as purchase orders, invoices, and/or shipping documents, that they were capable of producing and delivering the requested quantities of the subject steel in the time frames asserted. Thus, the Objectors could not establish "immediate" availability of the subject product in the United States. Further, Cleveland Cliffs failed to provide its shipping, manufacturing, and delivery lead times in the required fields, stating that this information is "proprietary information that will be provided confidentially upon request."

Subsection (d)(4) of the Supplement to 15 C.F.R. Part 705 specifies that an objection "should clearly identify and provide support for, its opposition to the proposed exclusion" and that "[i]t is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times." Guidance issued by BIS states

that "[f]or an objection filing to be considered, organizations must provide factual information on: . . . 2) The production capabilities at steel manufacturing facilities that they operate in the United States; and 3) The availability and delivery time of the products that they manufacture relative to the specific steel product that is subject to an exclusion request." *232 Exclusions Portal: External User Guide*, Department of Commerce (available at

https://www.commerce.gov/sites/default/files/2019-12/232%20Portal%20External%20User%20Guide%20Version%2007_02_2019.pdf); Section 232 National Security Investigation of Steel Imports Information on the Exclusion Process, Department of Commerce, Bureau of Industry and Security (available at

https://www.bis.doc.gov/index.php/232-steel). Thus, Cleveland Cliffs has not met its burden under subsection (d)(4) of the regulations and failed to provide the information required for a complete objection under BIS' guidance.

Commerce's blatant disregard for 15 C.F.R. pt. 705, supp.1 § (d)(4) constitutes unlawful agency action. *See UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1383 (C.A.F.C. 2009) ("An agency must follow its own regulations"); *Friedler v. General Servs. Admin.*, 271 F. Supp. 3d 40, 61 (D.D.C. 2017) ("It is clear beyond cavil that "**an agency is bound by its own regulations**." (quoting *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014). Commerce abandoned the standards established by Proclamation 9705 and the Department's own regulations. Commerce's denials of Mirror Metals' exclusion requests were therefore arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the APA.

## II. **BIS Granted Mirror Metals 232 Exclusions for Steel Identical to or Substantially Similar to the Subject Steel After Denying the Exclusions on the Subject Steel**

Subsequent to the denial of the ERID's at issue in this case, Mirror Metals re-filed new

exclusion requests for products identical to those in nearly all of these denied requests, and BIS

thereafter approved the exclusions.  Specifically, BIS approved new exclusion requests for

products identical to the denied exclusion requests identified in the below table:

| Denied Exclusion Request ID No. | Granted Exclusion Request No(s). for Identical Product | Link to Public Record of Exclusion Request |
|---|---|---|
| 341039 | 393027 | https://232app.azurewebsites.net/exclusionrequests/393027 |
| 324905 | 345165 | https://232app.azurewebsites.net/exclusionrequests/345165 |
| 324938 | 392021 | https://232app.azurewebsites.net/exclusionrequests/392021 |
| 338228 | 345165 | https://232app.azurewebsites.net/exclusionrequests/345165 |
| 338231 | 391493 | https://232app.azurewebsites.net/exclusionrequests/391493 |
| 355972 | 403586 | https://232app.azurewebsites.net/exclusionrequests/403586 |
| 338379 | 392022 | https://232app.azurewebsites.net/exclusionrequests/392022 |
| 339240 | 345165 | https://232app.azurewebsites.net/exclusionrequests/345165 |
| 339242 | 391493 | https://232app.azurewebsites.net/exclusionrequests/391493 |
| 339249 | 391977 403587 | https://232app.azurewebsites.net/exclusionrequests/391977 https://232app.azurewebsites.net/exclusionrequests/403587 |
| 339250 | 392020 | https://232app.azurewebsites.net/exclusionrequests/392020 |
| 339256 | 392023 403591 | https://232app.azurewebsites.net/exclusionrequests/392023 https://232app.azurewebsites.net/exclusionrequests/403591 |
| 346364 | 391493 | https://232app.azurewebsites.net/exclusionrequests/391493 |
| 346176 | 391977 403587 | https://232app.azurewebsites.net/exclusionrequests/391977 https://232app.azurewebsites.net/exclusionrequests/403587 |
| 346185 | 392020 | https://232app.azurewebsites.net/exclusionrequests/392020 |

| | | |
|---|---|---|
| 346215 | 392021 | https://232app.azurewebsites.net/exclusionrequests /392021 |
| 346220 | 392022 | https://232app.azurewebsites.net/exclusionrequests /392022 |
| 346225 | 392023 | https://232app.azurewebsites.net/exclusionrequests /392023 |
| 359427 | 393027 | https://232app.azurewebsites.net/exclusionrequests /393027 |
| 391496 | 403586 | https://232app.azurewebsites.net/exclusionrequests /403586 |
| 386011 | 391977 403587 | https://232app.azurewebsites.net/exclusionrequests /391977 https://232app.azurewebsites.net/exclusionrequests /403587 |
| 334672 | 404488 | https://232app.azurewebsites.net/exclusionrequests /404488 |
| 334673 | 404494 | https://232app.azurewebsites.net/exclusionrequests /404494 |
| 334674 | 404496 | https://232app.azurewebsites.net/exclusionrequests /404496 |
| 334675 | 404499 | https://232app.azurewebsites.net/exclusionrequests /404499 |
| 334676 | 404501 | https://232app.azurewebsites.net/exclusionrequests /404501 |
| 334677 | 404504 | https://232app.azurewebsites.net/exclusionrequests /404504 |
| 339264 | 404488 | https://232app.azurewebsites.net/exclusionrequests /404488 |
| 339269 | 404494 | https://232app.azurewebsites.net/exclusionrequests /404494 |
| 339271 | 404496 | https://232app.azurewebsites.net/exclusionrequests /404496 |
| 339540 | 404499 | https://232app.azurewebsites.net/exclusionrequests /404499 |
| 339616 | 404501 | https://232app.azurewebsites.net/exclusionrequests /404501 |
| 339627 | 404504 | https://232app.azurewebsites.net/exclusionrequests /404504 |
| 342310 | 404504 | https://232app.azurewebsites.net/exclusionrequests /404504 |
| 390578 | 403592 | https://232app.azurewebsites.net/exclusionrequests /403592 |
| 390582 | 403593 | https://232app.azurewebsites.net/exclusionrequests /403593 |

| 390585 | 403801 | https://232app.azurewebsites.net/exclusionrequests/403801 |
| 390598 | 403804 | https://232app.azurewebsites.net/exclusionrequests/403804 |
| 390599 | 403805 | https://232app.azurewebsites.net/exclusionrequests/403805 |
| 390883 | 403806 | https://232app.azurewebsites.net/exclusionrequests/403806 |
| 390900 | 403807 | https://232app.azurewebsites.net/exclusionrequests/403807 |
| 386019 | 404192 | https://232app.azurewebsites.net/exclusionrequests/404192 |
| 390594 | 404192 | https://232app.azurewebsites.net/exclusionrequests/404192 |
| 357875 | 362763 | https://232app.azurewebsites.net/exclusionrequests/362763 |
| 356053 | 362724 | https://232app.azurewebsites.net/exclusionrequests/362724 |
| 356061 | 362715 | https://232app.azurewebsites.net/exclusionrequests/362715 |

Plaintiff respectfully requests that the Court take judicial notice of the above-referenced BIS determinations granting exclusion requests to plaintiff, in accordance with to 28 U.S.C. § 2641(a) and Fed. R. Evid. 201(b)(2).  Judicial precedent supports taking judicial notice of the existence and contents of subsequent agency decisions. *See Borlem S.A.-Empreedimentos Industriais v. United States*, 718 F. Supp. 41, 46 (Ct. Int'l Trade 1989), *aff'd and remanded*, 913 F.2d 933 (Fed. Cir. 1990) ("[T]his Court must take judicial notice of decisions of federal executive departments when requested by a party"); *Tri Union Frozen Prods., Inc. v. United States*, 161 F. Supp. 3d 1333, 1338-39 (Ct. Int'l Trade 2016) ("While one might have contested that Commerce reached the correct result [in the amended final determination], one could not dispute that Commerce reached the result it did"); *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 203 F. Supp. 3d 1256, 1284–86, 1285 n.41 (Ct. Int'l Trade 2017).

The fact that BIS approved the referenced exclusions, and the contents of the record of

those exclusion requests, are a matter of public record that can be accurately and readily

determined from the BIS docket in each such proceeding.  These decisions and their record can

be accessed at the links referenced above.

BIS's approval of these exclusions based on the same facts as the denied ERIDs at issue

in this case is a strong indication that the denials were arbitrary, capricious or contrary to law.

BIS approved new exclusion requests where Outokumpu submitted objections

covering #8 non-directional finish steel identical to that covered by denied ERIDs 324938,

355972, 338379, 339249, 339250, 339256, 346176, 346185, 346215, 346220, 346225,

386011, and 391496; and bright annealed steel identical to that covered by denied ERIDs

357875, 356053, and 356061. Mirror Metals and Outokumpu submitted the same arguments

in the respective new exclusion requests, objections, rebuttals, and surrebuttals as those

submitted in the denied exclusions. Notably, Mirror Metals provided the same evidence on

the record for the new exclusion requests that Outokumpu does not produce bright annealed

steel in the United States.

Although ITA recommended denial, BIS approved new exclusion nos. 392021,

392022, 391977, 392020, 392023, 362724, 362715, and 362763 and stated in its decision

memos:

> In examining whether the relevant steel article is produced in the United States in
> a sufficient and reasonably available amount or of a satisfactory quality, ITA has
> provided the attached findings and recommends denying the request for an
> exclusion. ITA also noted that there is ambiguity, based on all of the evidence
> presented, on whether the product offered by the objector in response to the above-
> captioned exclusion request is manufactured in the United States. **BIS, based upon
> its review of the evidence provided in the record, finds sufficient evidence that
> the objector intends to manufacture its offered product outside the United
> States**. BIS therefore finds that this exclusion request should be granted for reasons
> separate from ITA's recommended findings and finds that no overriding national
> security concerns require that this exclusion request be otherwise denied.

(emphasis added). BIS's approval of these exclusions based on the record evidence demonstrating that Outokumpu does not manufacture in the United States bright annealed steel in 18 gauge or thinner (and accordingly does not manufacture the #8 finish steel in 18 gauge or thinner) clearly reflects that denied ERIDs 324938, 338379, 339249, 339250, 339256, 346176, 346185, 346215, 346220, 346225, 386011, 357875, 356053, and 356061 should have been granted for the same reason.

In evaluating granted exclusion nos. 403586, 403587, and 403591, covering #8 finish steel, ITA determined that Outokumpu did not meet the quality criterion because it did not demonstrate that it could manufacture a suitable substitute product. As stated in the ITA Recommendation Memoranda (*see* foregoing links to the public record of granted exclusions), Outokumpu did not "specifically mention #8 non-directional mirror finish and the annealed specification" and failed to "commit to the #8 mirror finish specification."

BIS approved new exclusion requests where Outokumpu and NAS submitted objections covering #4 satin finish steel identical to that covered by denied ERIDs 334672, 334673, 334674, 334675, 334676, 334677, 339264, 339269, 339271, 339540, 339616, 339627, 342310, 390578, 390582, 390585, 390598, 390599, 390883, 390900, 386019, and 390594.

Notably, Mirror Metals provided the same evidence for the new exclusion requests as it did for the denied requests. In its surrebuttals for the granted exclusions, Outokumpu explicitly admitted that, if needed, Outokumpu would use a domestic processor to achieve the desired surface finish. In evaluating granted exclusion nos. 404488, 404494, 404496, 404499, 404501, 404504, 404488, 403593, 403801, 403804, 403805, 403806, 403807, and 404192, covering #4 satin finish steel, ITA determined that Outokumpu did not meet the

timeliness criterion because its statement that "[i]f needed, a domestic processor will provide desired surface finish" created ambiguity in delivery time. ITA determined it was unclear if Outokumpu's claimed lead time includes the time needed for a domestic processor to provide the requested surface finish. *See* ITA Recommendation Memoranda in the foregoing links.

In the ITA memos for the exclusions to which NAS also objected (granted exclusion nos. 404496, 404499, 404501, 404504, 403804, 403805, 403806, 403807, and 404192), ITA noted it was unable to evaluate NAS' claimed delivery time because that NAS' statement that it could only "potentially supply" the steel in its claimed lead times "depending on market conditions" created ambiguity. *See* ITA Recommendation Memoranda in the foregoing links.

In evaluating granted exclusion no. 403592, covering #4 satin finish steel, ITA determined that Outokumpu did not meet the quality criterion because it did not demonstrate that it could manufacture a suitable substitute product. Outokumpu did not "specifically mention oil polished #4 satin finish, the annealed and the surface roughness specifications" and accordingly did not commit to the #4 satin finish specification. *See* ITA Recommendation Memoranda in the foregoing links.

In sum, BIS's decision to grant subsequent and largely identical exclusion requests on the same record as that before the agency in the 63 ERIDs at issue in this case is a strong indication that the denials of the 63 ERIDs at issue in this case were arbitrary, capricious, unreasonable and contrary to law.

**<u>CONCLUSION</u>**

For the foregoing reasons, Commerce's denials of the 63 ERIDs in Exhibit 1 to the

Complaint were arbitrary, capricious, an abuse of discretion, not supported by substantial

evidence on the record, and are otherwise not in accordance with law.


Dated: January 14, 2026

<div style="margin-left: 50%;">

Respectfully submitted:

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*/s/ Sarah E. Raymond*
Erik D. Smithweiss
Sarah E. Raymond
707 Wilshire Blvd., Suite 4150
Los Angeles, CA 90017
(213) 624-1970
  -and-
599 Lexington Ave., 36 Fl.
New York, NY. 10022
(212) 557-4000


*Counsel for Plaintiff Mirror Metals, Inc.*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Memorandum of Law In Support of its 56.1 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 13,249 words, within the 14,000 word limit.

*\_/s/ Sarah E. Raymond\_\_\_*

*Counsel to Plaintiff Mirror Metals*

Dated: January 14, 2026

15107656_1