IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| MIRROR METALS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, *et al.*, )<br><br>Defendants. ) | Court No. 24-00260 |

<u>ORDER</u>

On consideration of plaintiff's motion for judgment on the administrative record,

defendant's response, and all other pertinent papers, it is hereby

ORDERED that the 63 challenged determinations by the Department of Commerce,

identified in Exhibit 1 to the complaint, ECF No. 2, are sustained and judgment is entered for the

defendant United States.

Dated:_____, 2026
        New York, N.Y.                          _____
                                                                    JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| MIRROR METALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 24-00260 |
| v. | ) | |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
OF COUNSEL:                                    Assistant Director
                                                      Commercial Litigation Branch
B. KATHRYN DEBRASON                Civil Division
RACHEL MORRIS                            Department of Justice
Bureau of Industry & Security        P.O. Box 480, Ben Franklin Station
Department of Commerce               Washington, D.C. 20044
                                                      Tel.: (202) 616-2228
                                                      Email:  Tara.Hogan@usdoj.gov

April 17, 2026                                Attorneys for Defendants

## TABLE OF CONTENTS

STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1) ...........................................................1

    I.    The Administrative Determinations Under Review ....................................................1

    II.    Statement Of The Issues ............................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

    I.    The Section 232 Steel Investigation And The President's Proclamations................2

    II.    Commerce's Administrative Procedures For Requesting Product Exclusions.........3

    III.    Mirror Metals' Exclusion Requests, The Domestic Industry's Responses, And Commerce's Denials ...............................................................................................7

        A.  #8 Non-Directional Steel ..................................................................................7

        B.  Bright Annealed Finish Steel.............................................................................8

        C.  #4 Satin Finish Steel .........................................................................................9

SUMMARY OF THE ARGUMENT ........................................................................................11

ARGUMENT................................................................................................................................12

    I.    Standard Of Review...............................................................................................12

    II.    Commerce Reasonably Denied Mirror Metals' Exclusion Requests Based On The Domestic Availability Of The Relevant Products ...........13

        A.  #8 Non-Directional Steel ................................................................................13

            1.  Quality...................................................................................................13

            2.  Timing....................................................................................................17

        B.  Bright Annealed Finish.....................................................................................18

        C.  #4 Satin Finish Steel ........................................................................................20

    III.    None of Mirror Metals' Procedural Challenges Undermine Commerce's Decisions................................................................................................................21

IV.    Mirror Metals Cannot Demonstrate Reversible Error Using Commerce's
Treatment Of Other Exclusions ..................................................................25

CONCLUSION...........................................................................................................28

CERTIFICATE OF COMPLIANCE

ADDENDUM: 15 C.F.R. Part 705, Suppl. 1 (2022)

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Am. Farm Lines v. Black Ball Freight Service,*
  397 U.S. 532 (1970)..................................................................................................... 25

*Bader v. United States,*
  160 Fed. Cl. 529 (2022) ............................................................................................. 21

*Bowman Transp. Inc. v. Arkansas-Best Freight System,*
  419 U.S. 281 (1974).................................................................................................... 13

*Camp v. Pitts,*
  411 U.S. 138 (1973)..................................................................................................... 25

*Canadian Lumber Trade Alliance v. United States,*
  517 F.3d 1319 (Fed. Cir. 2008).................................................................................. 12

*Coal. for Fair Trade in Garlic v. United States,*
  437 F. Supp. 3d 1347 (Ct. Int'l Trade 2020) ....................................................... 16, 17

*Downhole Pipe & Equip., L.P. v. United States,*
  776 F.3d 1369 (Fed. Cir. 2015).................................................................................. 13

*F.C.C. v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009)..................................................................................................... 13

*Former Emps. of Alcatel Telecomm. Cable v. Herman,*
  24 CIT 655 (2000) ...................................................................................................... 12

*JSW Steel (USA) v. United States,*
  466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020) ...................................................... 22, 28

*Leslie v. Att'y Gen. of U.S.,*
  611 F.3d 171 (3d Cir. 2010)........................................................................................ 24

*Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.,*
  463 U.S. 29 (1983)........................................................................................... 12, 13, 21

*Nordstrom v. United States,*
  169 Ct. Cl. 632 (1965) ................................................................................................ 19

*Porter v. Sec'y of Health & Human Services,*
  663 F.3d 1242 (Fed. Cir. 2011)................................................................................... 13

*Prysmian Cables & Sys., USA, LLC v. United States*,
  Slip op. 26-20, 2026 Ct. Intl. Trade LEXIS 24 (Ct. Int'l Trade Feb. 23, 2026) ....................... 28

*QVD Food Co. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011) ................................................................................................ 25

*Rothe Dev. Corp. v. DOD*,
  545 F.3d 1023 (Fed. Cir. 2008) ................................................................................................ 18

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ................................................................................................................. 13

*Seneca Foods Corp. v. United States*,
  740 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) ..................................................... 15, 16, 18, 19, 22

*Siddiqui v. Holder*,
  670 F.3d 736 (7th Cir. 2012) ................................................................................................... 15

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954) ................................................................................................................. 23

*United States v. Great Am. Ins. Co.*,
  738 F.3d 1320 (Fed. Cir. 2013) ................................................................................................ 16

*United States v. Haymond*,
  672 F.3d 948 (10th Cir. 2012) ................................................................................................. 15

*United States Steel Corp. v. United States*,
  97 F.4th 1364 (Fed. Cir. 2024) ................................................................................................ 25

*United States v. Zannino*,
  895 F.2d 1 (1st Cir. 1990) ........................................................................................................ 24

*Van Hollen v. FEC*,
  811 F.3d 486 (D.C. Cir. 2016) ................................................................................................. 21

*Yale Univ. v. Dep't of Commerce, Domestic & Int'l Bus. Admin.., Office of Import Programs*,
  579 F.2d 626 (C.C.P.A. 1977) ............................................................................................ 22, 23

**Statutes**

5 U.S.C. § 706(2) ......................................................................................................................... 12

19 U.S.C. § 1862 ........................................................................................................................ 1, 2

28 U.S.C. § 1581(i) ................................................................................................ 12

28 U.S.C. § 2640(e) ............................................................................................... 12

**Rules**

Fed. R. Civ. P. 56(c)(1)(A) ................................................................................... 15

USCIT 56.1 ............................................................................................................. 1

**Regulations**

15 C.F.R. Pt. 705, Supp. 1 § (b) (2022) ............................................................. 4, 6

15 C.F.R. Pt. 705, Supp. 1 § (c) (2022) ........................................................ *passim*

15 C.F.R. Pt. 705, Supp. 1 § (d) (2022) ........................................................... 5, 23

15 C.F.R. Pt. 705, Supp. 1 § (f) (2022) ................................................................. 6

15 C.F.R. Pt. 705, Supp. 1 § (g) (2022) ................................................................ 6

15 C.F.R. Pt. 705, Supp. 1 § (h) (2022) ................................................. 6, 7, 23, 26

**Presidential Proclamations**

*Adjusting Imports of Steel Into the United States*, Proclamation 9705,
    83 Fed. Reg. 11625 (Mar. 8, 2018)................................................................. 2, 3

*Adjusting Imports of Steel Into the United States, Proclamation 9894,*
    84 Fed. Reg. 23987 (May 19, 2019)................................................................. 15

*Adjusting Imports of Steel Into the United States, Proclamation 10895,*
    90 Fed. Reg. 9807  (Feb. 10, 2025) ............................................................. 2, 28

**Regulations and Rulemaking**

*Requirements for Submissions Requesting Exclusions From the Remedies Instituted in
    Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting
    Imports of Aluminum Into the United States; and the Filing of Objections to Submitted
    Exclusion Requests for Steel and Aluminum*,
    83 Fed. Reg. 12106 (Dep't of Commerce Mar. 19, 2018)...................................... 3

*Revisions of the Section 232 Steel and Aluminum Tariff Exclusions Process*,
   88 Fed. Reg. 58525 (Dep't of Commerce Aug. 28, 2023) .......................................................... 26

*Section 232 Steel and Aluminum Tariff Exclusions Process*,
   85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020) .................................................. 3, 15

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and
   Aluminum*, 83 Fed. Reg. 46,026 (Dep't of Commerce Sept. 11, 2018) ...................................... 6

**Other Authorities**

U.S. Dep't of Commerce, *The Effects of Imports of Steel on the National Security* (Jan. 11,
   2018), *available at* https://2017-
   2021.commerce.gov/sites/default/files/the_effect_of_imports_of_steel_on_the_national_securi
   ty_-_with_redactions_-_20180111.pdf ........................................................................................ 2

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56.1 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record and supporting brief filed by plaintiff, Mirror Metals, Inc.  Mirror Metals challenges the Department of Commerce's decisions to deny 63 requests for exclusions from import measures imposed on certain steel articles by the President under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, as amended (Section 232).  The Court should deny Mirror Metals' motion because Commerce's decisions were not arbitrary, capricious, or contrary to law.

**STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1)**

I.      The Administrative Determinations Under Review

The administrative determinations under review are Commerce's denials of Mirror Metals' 63 requests to exclude certain imports of steel products from the Section 232 national security duties on steel articles.

II.      Statement Of The Issues

1.      Whether Mirror Metals has demonstrated that Commerce's decisions denying its requests, finding that #8 Non-Directional, Bright Annealed Finish, and #4 Satin Finish steel products were domestically available, were arbitrary, capricious, or contrary to law.

2.      Whether Mirror Metals' procedural challenges to Commerce's decisions fail to demonstrate harmful error.

3.      Whether Commerce's treatment of other, unrelated, exclusion requests fails to undermine the reasonableness of Commerce's denials of the 63 requests at issue in this case.

**STATEMENT OF FACTS**

I.    The Section 232 Steel Investigation And The President's Proclamations

Section 232 authorizes the President to adjust imports of an article and its derivatives if the President concurs with a finding by the Secretary of Commerce (the Secretary) that such imports threaten to impair the national security. *See generally* 19 U.S.C. § 1862.

The Secretary initiated an investigation to determine the effect of imports of steel and aluminum on the national security, which was conducted by the Bureau of Industry and Security (BIS), a Commerce sub-agency. *See generally* U.S. DEP'T OF COMMERCE, *The Effects of Imports of Steel on the National Security* (Jan. 11, 2018), *available at* https://commerce.gov/sites/default/files/the_effect_of_imports_of_steel_on_the_national_security_-_with_redactions_-_20180111.pdf.  The Secretary issued a report and recommendation to the President, finding that steel imports are "weakening {the United States'} internal economy" and "threaten to impair the national security as defined in Section 232." *Id*. at 5-6.

After considering the Secretary's report, the President issued *Proclamation 9705,* in which he concurred with the Secretary's finding that steel articles are being imported in such quantities and under such circumstances as to threaten to impair the national security of the United States, and announced measures on "adjusting imports of steel." *Adjusting Imports of Steel Into the United States*, *Proclamation 9705*, 83 Fed. Reg. 11,625 (Mar. 8, 2018) (*Proclamation 9705*).  The President established a 25 percent tariff on imports of certain steel articles, effective March 23, 2018.

Simultaneously, the President authorized the Secretary of Commerce to provide relief from the tariffs for products determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national

2

security considerations. *Proclamation 9705*, Cl. (3). The President explained that "relief shall be provided for a steel article only after a request for exclusion is made by a directly affected party located in the United States." *Id.* The President instructed Commerce to issue procedures for the requests for exclusion within 10 days after Proclamation 9705 was issued. *Id.* Cl. (4). In March 2018, Commerce promulgated regulations establishing the exclusion process envisioned in Proclamation 9705.

In 2025, the President revoked the Secretary's authority to grant new exclusions. *Adjusting Imports of Steel Into the United States, Proclamation 10896*, 90 Fed. Reg. 9,817 ¶ 17 (Feb. 10, 2025). Below describes Commerce's administrative procedures for requesting product exclusions, as they existed at the time Mirror Metals submitted its requests.

II.     Commerce's Administrative Procedures For Requesting Product Exclusions

On March 19, 2018, Commerce promulgated an interim final rule, establishing the exclusion process envisioned in *Proclamation 9705*. *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't of Commerce Mar. 19, 2018), previously codified at 15 C.F.R. Pt. 705, Supp. 1 (2022).[1]

Under its regulations, only directly affected individuals or organizations (*e.g.*, construction, manufacturing, or supplying steel product to users) located in the United States

---

[1] The version of the regulations effective December 14, 2020 applied to these exclusion requests, which Mirror Metals filed between 2022 and 2024. *See Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020). Because the relevant exclusion regulations have been rescinded, we include a courtesy copy of the 2022 version of the regulations as an addendum to this brief.

could submit an exclusion request. *Id.* § (c)(1). Commerce would approve exclusions on a product basis. The approvals are generally limited to the individual or organization that submitted the request. *Id.* § (c)(2).

Requestors completed and submitted a fillable form available on Commerce's website, *id.* § (b), as well as specified the business activities in the United States with which they are engaged that qualify the individual or organization to be directly affected and thus eligible to submit a request, *id.* § (c)(5)(i). "The request should clearly identify, and provide support for, the basis upon which the exclusion is sought." *Id.*

The fillable form required requestors to supply specific factual information, including: (1) the product type and class for which the exclusion is requested, (2) the 10-digit Harmonized Tariff Schedule Code of the United States (HTSUS) for the single product covered by the request, (3) the quantity of product required (stated in kilograms) under a one-year exclusion, (4) estimates of the number of days required to take delivery of, manufacture, and ship the product covered by the request, (5) a full description of the physical properties and chemical composition of the product the requestor seeks to import, (6) any standards organizations that have set specifications for the product, (7) the application for the product, (8) why similar products manufactured in the United States are not suitable, and (9) domestic product availability information. *See, e.g.*, AR009-013.[2]

Commerce reviewed each request to determine whether an article described in the request

---

[2] AR__ refers to pages of the <u>confidential</u> version of the administrative record, which contains all documents (both public and documents containing confidential business information) for each exclusion request. For example, AR0002 corresponds to the page of the confidential record Bates-stamped 24-00260-0002. For ease of reading, we have cited three representative exclusion records for #8 non-directional steel (no. 324905), bright annealed steel (no. 356053), and #4 satin finish steel (no. 334672). Unless otherwise noted, those citations are demonstrative of the other requests within the three product categories.

4

met one of three criteria: (1) the article is not produced in the United States in a sufficient and reasonably available amount, (2) the article is not produced in the United States in a satisfactory quality, or (3) specific national security considerations. 15 C.F.R. Pt. 705, Supp. 1, § (c)(6).

Not produced in the United States in a sufficient and reasonably available amount "means that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* § (c)(6)(i). "'{I}mmediately'" "means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer 'within eight weeks', or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." *Id.*

Not produced in the United States in a satisfactory quality "does not mean the steel or aluminum needs to be identical, but it does need to be equivalent as a substitute product." *Id.* § (c)(6)(ii). "'Substitute product'" "means that the steel or aluminum being produced by an objector can meet 'immediately' . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user." *Id.*

"Any individual or organization that manufactures steel or aluminum articles in the United States" could file objections to exclusion requests. *Id.* § (d)(1). An objection "should clearly identify, and provide support for, its opposition to the proposed exclusion." *Id.* § (d)(4). The fillable form instructed objectors to: (1) indicate whether the objector currently manufactures the product or is capable of immediately manufacturing the product, (2) explain the time period within which the objector can produce the product, if it does not currently manufacture the product, (3) state whether the objector manufactures, or can immediately

manufacture, a substitute product, (4) discuss the suitability of the objector's product compared to that identified in the request, (5) provide a full technical description of the physical properties and chemical composition of the product the objector manufactures relative to specifications cited in the request, (6) state what percentage of the total product tonnage requirement covered by the request that the objector can manufacture on a timely basis, and (7) the number of days required to ship, manufacture, and deliver the product. *See, e.g.*, AR0024-28.

Requestors and objectors could also submit rebuttals and surrebuttals. 15 C.F.R. Pt. 705, Supp. 1 § (f)-(g). Because information provided in the submissions is made available to the public, the regulations state that information not subject to public disclosure should not be submitted via the online portal; instead, confidential business information (CBI) could be submitted directly to Commerce. *Id.* § (b)(5)(ii)-(iii). "For persons seeking to submit CBI, the 232 submission available to the public must contain a summary of the CBI in sufficient detail to permit a reasonable understanding of the substance of the information." *Id.* § (b)(5)(iii).

Commerce reviewed an exclusion request based on the information included in the exclusion request, any objections to an exclusion request, any rebuttals to the objections made by an individual or organization that submitted the exclusion request, and any surrebuttals.[3] *See id.* § (h)(2)(i). For exclusion requests that received no objections, Commerce would grant the request if it identified no national security concerns. *Id.* § (h)(2)(ii).

Approved exclusions were effective five business days after publication of Commerce's

---

[3] Commerce utilized BIS and the International Trade Administration (ITA) to evaluate requests. BIS served as "the lead agency" in deciding whether to grant a request, and ITA "analyz{ed} requests and objections to evaluate whether there is domestic production available to meet the requestor's product needs." *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce Sept. 11, 2018). ITA, upon completion of its review, provided BIS with a recommendation as to whether an exclusion request should be granted.

response granting an exclusion, and, on that date, "the requester {was} able to rely upon the approved exclusion request in calculating the duties owed on the product imported in accordance with the terms listed in the approved exclusion request." *Id.* § (h)(2)(iii)(A).  Commerce further directed that exclusions were "generally . . . approved for one year." *Id.* § (h)(2)(iv).

III.    Mirror Metals' Exclusion Requests, The Domestic Industry's Responses, And Commerce's Denials

Mirror Metals is a California-based provider of "architectural-grade," flat-rolled stainless steel.  Compl. ¶ 3.  Between October 2022 and March 2024, Mirror Metals applied for 63 exclusions from the Section 232 tariffs on steel articles.  Compl. Exhibit 1.  These steel products fall into three categories, and the parties agree that the record evidence is largely the same for the requests in each category:  (1) #8 Non-Directional Steel, (2) Bright Annealed Finish Steel, and (3) #4 Satin Finish Steel.  Compl. ¶ 7; Pl. Br. at 16.

A.    #8 Non-Directional Steel

Mirror Metals submitted 29 exclusion requests for #8 non-directional steel products.  For each of them, Commerce concluded that at least one objector could meet the "quality, quantity, and timeliness criteria."  AR0004 (exclusion no. 324905).

Domestic manufacturer Outokumpu submitted objections to the requests.  Outokumpu's objection identified that it could manufacture the product in its Calvert, AL facility within 60 days.  AR0027.  Outokumpu described the products at issue as "standard product."  AR0028.  In its rebuttal, Mirror Metals argued that email correspondence demonstrated that Outokumpu could not manufacture the product.  AR0033.  Mirror Metals noted that Outokumpu stated that it used third-party domestic processors to finish the steel.  AR0033; *see* AR0035 (Nov. 14, 2022 email).  In later exclusion requests, Mirror Metals included a January 17, 2023 email from Outokumpu with a price quote.  AR118 (exclusion no. 338231).

Commerce concluded that Outokumpu's product offering met the quality criteria. AR0005. Commerce did not consider the later CBI submission, including both the November 2022 and January 2023 emails, because it found the product described in the emails is not the same as the requested product "as it does not define the alloy." AR0084 (exclusion no. 338231). Commerce also concluded that Outokumpu could deliver the product in less time than Mirror Metals' foreign supplier, thereby meeting the timeliness criterion. AR0006.

B.    Bright Annealed Finish Steel

Mirror Metals submitted 3 exclusion requests for bright annealed finish steel products. Outokumpu filed objections, explaining that it could produce a "mirror finished product with domestically melted steel" in its Calvert, AL facility. AR1305 (exclusion request no. 356053). Outokumpu reported that it could manufacture and deliver bright annealed finish products within 55 days. AR1307-08.

In its rebuttal, Mirror Metals argued that Outokumpu had previously advised Mirror Metals that its bright annealed finish steel was manufactured in Mexico. AR1313-14. In support of its argument, it submitted what it claimed to be a screenshot of Outukumpu's website, which stated "BA Mexinox only" for 18-28 gauge steel. AR1374. As confidential business information, Mirror Metals submitted a November 14, 2022 email from Outokumpu. *See* AR1316. Additionally, Mirror Metals submitted, as confidential business information, a customer letter dated January 12, 2021, in which a customer expressed a preference for Mirror Metals' imported product over domestically produced bright annealed finish steel. AR1317. Outokumpu's surrebuttal reiterated that "{t}he product in the exclusion request is standard product" and that it could "meet all of the specifications of the product in this exclusion request."

8

AR1320.  North American Steel (NAS) also filed objections to the exclusions.  AR0045-50.

Commerce denied the 3 exclusion requests, finding that "at least one objector meets the quality, quantity, and timeliness criteria."  AR1280 (cleaned up).  Commerce did not consider the CBI submitted by Mirror Metals, finding that it was dated more than 90 days from the submission of the exclusion requests in March 2023.  AR1281.  ITA determined that Outokumpu's certified statement that it "can meet all of the specifications of the product in this exclusion request" was sufficient to demonstrate that Outokumpu could produce the specific product at issue.  AR1281.  Commerce concluded that Outokumpu could deliver the product in 55 days, which was within eight weeks, and therefore met the regulatory criteria for timeliness. AR1282.  Because Commerce found Outokumpu met the quality, quantity, and timeliness criteria, Commerce did not evaluate NAS' submissions.  AR1282.

C.      #4 Satin Finish Steel

Mirror Metals submitted 31 requests for exclusions for #4 satin finish steel.  Mirror Metals described #4 satin finish as "unique" with a finish created using a "320 grit abrasive." AR1477 (exclusion no. 334672).  Mirror Metals explained that #4 satin finish products are used "in architectural products both inside and outside of buildings," as well as in "kitchen equipment" and "in the automotive industry for trim."  AR1474.  Mirror Metals stated that it would take 74 days for its foreign supplier to manufacture and deliver the steel.  AR1470. Outokumpu filed objections, stating that it "produces the product in the exclusion request," AR1485.  Outokumpu certified that it could manufacture and deliver the product within 55 days. AR1487-88.

In its rebuttal, Mirror Metals disputed that Outokumpu could produce the product using the abrasive grit required and using "sheet-to-sheet" (as opposed to "coil-to-coil") polishing.

9

AR1493-94.  Mirror Metals argued that Outokumpu could not manufacture the product because it used an outside processor for polishing.  AR1494.  Mirror Metals also disputed Outokumpu's statement that it could manufacture and deliver within 55 days.  AR1495.  Mirror Metals cited email correspondence dated October 3, 2022, from which Mirror Metals inferred that Outokumpu's timeline for manufacture and delivery was approximately 81 days.[4]  AR1495; *see* AR1497.  Mirror Metals also submitted a new email from its foreign supplier in which the supplier represented that manufacture and delivery of a particular product could be accomplished in 46 days.  AR1498.  In its surrebuttal, Outokumpu continued to assert that "{t}he product in this exclusion request is standard product.  Outokumpu can meet all of the specifications of the product in this exclusion."  AR1501.  NAS also filed an objection.  AR1502.

Commerce denied the exclusion requests, concluding that "{At least one} objector meets the quality, quantity, and timeliness criteria."  AR1464.  Commerce observed that although Outokumpu did not "specifically mention #4 satin finish oil polish and back pass" in its objection, it determined that Outokumpu's statement that it could produce the product at issue in the exclusion was sufficient.  AR1465.  Commerce also determined that the generic email response from Outokumpu did not match the precise product described in the exclusion request. AR1465.  It therefore did not consider the information.

Commerce determined that Outokumpu's objections met the timeliness criteria for showing that the #4 satin finish product was domestically available.  AR1466.  Commerce compared the 74 days reported in Mirror Metals' exclusion request to Outokumpu's representation that it could deliver in 55 days, and concluded that Outokumpu is "able to deliver

---

[4] The 81 days is not contained in the text of the email, but rather handwritten on the email, presumably by a Mirror Metals employee.

10

the product in a timely manner." AR1466. Commerce considered the correspondence from Mirror Metals' foreign supplier that was submitted with the rebuttal. AR1466. Commerce concluded that the product described in the email was a different product than that described in the exclusion request.[5] AR1466. Therefore, Commerce did not consider the email when analyzing the timeliness criterion. Because Commerce found Outokumpu could produce the #4 satin finish steel, it did not consider NAS' objection. AR1466.

## SUMMARY OF THE ARGUMENT

The Court should sustain Commerce's decisions to deny Mirror Metals' exclusion requests. Commerce complied with its regulations and its decisions were reasonable in light of the evidence presented by Mirror Metals and domestic objector Outokumpu. Outokumpu submitted certified statements that it could produce the steel products at issue in a timely manner. These certified statements were *prima facie* evidence supporting a finding of domestic availability. Mirror Metals' rebuttal information was considered by Commerce, which concluded that the rebuttal evidence was either stale or unrelated to the specific products at issue in the requests. At best, Mirror Metals describes an aesthetic preference for its imported products, but fails to provide developed and supported arguments that the domestic product available was not an adequate substitute product. Mirror Metals' mere preference does not entitle Mirror Metals to duty-free treatment.

Mirror Metals' complaints about Commerce's procedure and decision memoranda also fail to demonstrate reversible error.

---

[5] For example, the product described in the email had a 16-gauge thickness, whereas the product described in exclusion request no. 334672 had a 12-gauge thickness. *Compare* AR1471 *with* AR1498. The product described in the email also contained different dimensions from the three exclusion requests for 16-gauge thick #4 satin finish. Compare with dimensions described in AR1573(exclusion no. 334674), AR1882 (exclusion no. 339271), and AR2453 (390591).

11

**ARGUMENT**

I.    Standard Of Review

In a civil action brought under 28 U.S.C. § 1581(i), "the Court of International Trade shall review the matter as provided in section 706 of title 5."  28 U.S.C. § 2640(e).  "When reviewing a decision of the Court of International Trade in a suit brought pursuant to 28 U.S.C. § 1581(i)" the Court applies "the standard of review set forth by the Administrative Procedure Act, and will 'hold unlawful and set aside {agency} action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (quoting 5 U.S.C. § 706(2)).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).  Commerce "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Id.* (citations omitted).

As this Court has held,

> The arbitrary and capricious standard of review is narrower than the substantial evidence standard, and the court will therefore remand {Commerce's} . . . determination only if it finds that 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Former Emps. of Alcatel Telecomm. Cable v. Herman*, 24 CIT 655, 658–59 (2000) (quoting *Motor Vehicle Mfrs*, 463 U.S. at 43).

12

While the Court "{m}ay not supply a reasoned basis for the agency's action that the agency itself has not given, {it} will, however, 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs.*, 463 U.S. at 43 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), *and Bowman Transp. Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 286 (1974)); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (describing the arbitrary and capricious standard of review as "narrow").

II.    Commerce Reasonably Denied Mirror Metals' Exclusion
       Requests Based On The Domestic Availability Of The Relevant Products

For all of Mirror Metals' requests, Commerce concluded that at least one objector could meet the quality, quantity, and timeliness criteria, and thus the products were domestically available. Mirror Metals argues that Commerce failed to consider record evidence and did not provide reasoned bases for its decisions. As shown below, Commerce evaluated the relevant evidence and factors and provided a rational explanation for its decisions. Mirror Metals' disagreement with Commerce's weighing of the evidence is not a basis to overturn Commerce's decisions. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376-77 (Fed. Cir. 2015); *Porter v. Sec'y of Health & Human Services*, 663 F.3d 1242, 1249 (Fed. Cir. 2011) (applying arbitrary or capricious standard, courts do not "reweigh the factual evidence").

A.   #8 Non-Directional Steel[6]

1.   Quality

Mirror Metals argues that Commerce failed to consider record evidence that demonstrated that the objectors could not produce the quality of #8 non-directional steel at issue

---

[6] On appeal, Mirror Metals does not challenge Commerce's finding with respect to the quantity criterion.

in the exclusion requests.  Pl. Br. at 26-30.  None of Mirror Metals' arguments demonstrate that Commerce failed to consider record evidence or otherwise acted arbitrarily or capriciously.

First, Mirror Metals argues that Outokumpu's "objections do not even mention #8 non-directional finish" as evidence that Outokumpu cannot manufacture the products at issue in the exclusion requests.  Pl. Br. at 27.  The regulations contain no legal requirement that the objector recite or restate the precise product description in its objection.  Rather, Commerce reasonably concluded that Outokumpu's specific statement that "Outokumpu can produce the product in the exclusion request," *e.g.*, AR0025, referred to the precise steel product described in the exclusion request.  *See* AR0005.

Next, Mirror Metals contends that Outokumpu does not, itself, have the ability to polish the steel to a #8 finish, citing email correspondence from Outokumpu.  Pl. Br. at 27-29; *see* AR0035.  The cited November 2022 email states that Outokumpu can use "outside processors" to polish the steel and then asks Mirror Metals for information so that it can provide a price quote.  *See* AR0035.  In sur-rebuttals submitted for some of the exclusion requests, Outokumpu confirms that it "can finish the product in the United States by pairing with other domestic finishers," creating a "wholly U.S.-produced end product."  AR511 (exclusion no. 346815). Mirror Metals identifies no regulatory requirement that the objector be able or willing to perform every aspect of production in-house.  In fact, Outokumpu's offering is consistent with the regulatory requirement of a "U.S.-produced steel" product for use by the end user.  15 C.F.R., pt. 705, Suppl. § 1(c)(6)(ii).  Therefore, Outokumpu's use of outside vendors or tollers to polish the steel does not preclude it from satisfying the requirements for a successful objection.

Similarly, there is no requirement that every step of the supply chain occur in the United States.  Mirror Metals cites the fact that, to make #8 finish steel, Outokumpu obtains its base

14

steel from its manufacturing plant in Mexico.[7]  Pl. Br. at 28 (citing AR693).  The question

presented, however, is whether the *finished* product that is described in the exclusion request is

or can be manufactured in the United States.  Whether the article is comprised of U.S. origin

base steel was not a consideration for each article.  *See* 15 C.F.R., pt. 705, Suppl. 1 § (c)(5).

Mirror Metals complains that Commerce "simply accepted the objectors' claims."  Pl. Br.

at 29.  "Parties making submissions to Commerce {were} required to legally certify the veracity

of the submission."  85 Fed. Reg. at 81,067.  In the absence of contrary record evidence,

however, Commerce may consider an objector's statement, certified under penalty of perjury, to

be reliable evidence.  *See Seneca Foods Corp. v. United States*, 740 F. Supp. 3d 1336, 1346,

1348 (Ct. Int'l Trade 2024), appeal docketed, Fed. Cir. No. 25-1310.

A written statement made under penalty of perjury is considered reliable evidence in

situations with even more consequence than a non-prejudicial denial of an exclusion request.

*See, e.g.*, Fed. R. Civ. P. 56(c)(1)(A) (permitting parties in civil cases to cite written affidavits or

declarations in support of an assertion that a fact is not in genuine dispute); *United States v.*

*Haymond*, 672 F.3d 948, 959 (10th Cir. 2012) (FBI agent's affidavit provided sufficient evidence

of probable cause to search criminal defendant's home); *Siddiqui v. Holder*, 670 F.3d 736, 742-

743 (7th Cir. 2012) (amnesty applicants may satisfy their burden of proof by submitting

affidavits sufficient to establish the facts at issue).  Additionally, unlike antidumping or

---

[7] At the time Mirror Metals made its exclusion requests, Mexico was exempt from Section 232 tariffs on steel articles, when the President concluded that "imports of steel articles from Canada and Mexico {} no longer threaten to impair national security."  *Adjusting Imports of Steel Into the United States, Proclamation 9894*, 84 Fed. Reg. 23,987 (May 19, 2019).

countervailing duty proceedings, there is no statutory or regulatory requirement that Commerce "verify" the parties' submissions in Section 232 proceedings. *See* Pl. Br. at 24.

Mirror Metals contends that it found a sample product provided by Outokumpu to contain "several flaws" and be of "poor-quality." Pl. Br. at 28-29. Mirror Metals is not required to purchase Outokumpu's products and may elect to continue to import steel products from its preferred foreign vendor. There may be many business reasons (such as price, terms, customer preference, or preexisting relationships) that lead to a party's purchase of foreign, rather than domestic, steel products. That business choice, however, does not entitle Mirror Metals to duty-free treatment. *See Seneca Foods*, 740 F. Supp. 3d at 1348 n.7 (observing that exclusions are "warranted if an item 'is not produced in the United States in a sufficient, reasonably available amount . . . .' 15 C.F.R. pt. 705, supp. 1(c)(5)(i)" and not "merely on account of a buyer's preference for {certain sales terms}").

Finally, Mirror Metals infers, from a subject matter expert (SME) opinion that Commerce did not consider CBI that it submitted. Pl. Br. at 29. The SME "could not definitively connect the information in the emails to the requested product." AR0005. But other than its conclusory assertion that the generic email was "clearly related" to its requests for exclusions for #8 finish products, Mirror Metals offers no explanation to support its statement. The Court should find this "undeveloped argument" to be waived. *Coal. for Fair Trade in Garlic v. United States*, 437 F. Supp. 3d 1347, 1358 (Ct. Int'l Trade 2020) (citing *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013)). Moreover, Outokumpu's response to Mirror Metals' inquiry email does not contradict Outokumpu's certified statements that it can produce and deliver the requested products. Accordingly, the Court should sustain Commerce's determinations that the relevant #8 products are produced in the United States in a satisfactory quality.

16

2.  <u>Timing</u>

Mirror Metals challenges Commerce's findings that Outokumpu met the timing criterion. Mirror Metals complains that the objectors only submitted "unsubstantiated and self-serving statements," without documentary support.  Pl. Br. at 39.  Outokumpu's certifications concerning its proposed manufacture and delivery times were, however, *prima facie* evidence of its ability to meet the timing requirements of the regulation.  Mirror Metals argues that Commerce did not "properly consider" "probative evidence," Pl. Br. at 39-40, but does not describe the errors that it contends Commerce committed.  The Court should find this "undeveloped argument" to be waived.  *Coal. for Fair Trade in Garlic*, 437 F. Supp. 3d at 1358.

In any event, Commerce acted reasonably in its determination that Outokumpu could meet the timeliness requirement.  When Commerce evaluates exclusion requests, it determines, among other factors not challenged here, whether the article described in the requests "is not produced in the United States in an amount which can be delivered in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier."  15 C.F.R. pt. 705, Supp. 1 § (c)(6).  Commerce has provided guidance as to how it evaluates this factor:

> "Not produced in the United States in a sufficient and reasonably available amount" means that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities.  Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks", or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier.

*Id.* § (c)(6)(i).

Outokumpu certified that it could deliver the #8 products in 65 days, which is a length of

time both less than eight weeks and less than the 104 days Mirror Metals reported. AR0006.

Therefore, Commerce reasonably found that #8 non-directional steel was available

"immediately" as that term was defined in the regulation.

B.  <u>Bright Annealed Finish</u>

Commerce's decisions to deny the 3 requests for exclusions of bright annealed finish

steel products should be sustained. Mirror Metals repeats its argument that Outokumpu failed to

specifically repeat the precise product description in its objections. Pl. Br. at 31. Commerce

reasonably found Outokumpu's statements sufficient, AR1281, and we have more addressed that

argument, *supra*, p. 14.

Next, Mirror Metals challenges Commerce's decision to disregard correspondence

because it was dated more than 90 days before the submission dates of the exclusion requests.

Pl. Br. at 33; *see* AR1281. Mirror Metals observes that Commerce's regulations themselves do

not contain any time limits on evidence submissions. Pl. Br. at 33. In the absence of any

specific "temporal restriction," Pl. Br. at 33, a fact-finder may reasonably consider the timeliness

of evidence in evaluating its probative value. *See, e.g., Rothe Dev. Corp. v. DOD*, 545 F.3d

1023, 1047 (Fed. Cir. 2008) (noting that statistical evidence relating to the revenue and growth of

minority-owned businesses between 1997 and 2001 was "less probative of {racial}

discrimination" as it existed in 2006).

Here, Commerce explained that it did 'not find information dated outside this timeframe

to be informative due to the ever-changing nature of steel and aluminum production schedules

and industry." AR2821 (exclusion request no. 429045) (#4 satin finishsteel). This Court has

found Commerce's internal 90-day "cutoff" to be "reasonable." *Seneca Foods*, 740 F. Supp. 3d

at 1354.

18

Mirror Metals contrasts the "fluid" subject matter of the sales correspondence in *Seneca Foods* from the "static condition" at issue in the correspondence here: the location of Outokumpu's manufacturing of bright annealed finish products. Pl. Br. at 34. To be sure, the physical location of Outokumpu's plant may not be subject to frequent change. What products are manufactured at each plant, however, can change: the manufacturer might retool its existing facility to begin production of a particular product, or it might simply move existing equipment from its Mexican plant. Thus, the fact that Outokumpu might, at the time of objection or at rebuttal, only manufacture bright annealed finish steel at its Mexican plant does not mean that it is *unable* to do so at its Alabama facility within the estimated timeframe. *See* Pl. Br. at 33.

Outokumpu certified that it could produce bright annealed finish steel (described as a "standard product") at its Alabama plant within 8 weeks. AR1305. Commerce permissibly relied upon that certified statement, in the absence of contradictory evidence. *Seneca Foods*, 740 F. Supp. 3d at 1347; *see also Nordstrom v. United States*, 169 Ct. Cl. 632, 641 (1965) (accepting plaintiff's declaration "{i}n the absence of any contradictory assertion or evidence"). Finally, Mirror Metals identifies alleged deficiencies in NAS' objections. Pl. Br. at 32-33. Because Commerce did not rely upon NAS' submissions, *see* AR1282, the Court need not address these arguments.

Additionally, Mirror Metals challenges Commerce's determination as to the quantity criterion for one of its exclusion requests. Pl. Br. at 31. It cites Outokumpu's response to exclusion request no. 357875, in which Outokumpu states that it "produces some of the product in the exclusion request description." *Id.* (referencing AR1425-26, AR1428) (quote marks omitted). The regulations did not require that the objector *currently* produce 100% of the product at the time of objection. Rather, Commerce evaluated whether "a product (whether it is

19

currently being produced in the United States, *or could be produced in the United States*) can be delivered by a U.S. producer 'within eight weeks', or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." 15 C.F.R. pt. 705, Supp. 1 § (c)(6)(i) (emphasis added).  It therefore was sufficient that the objector certify, as Outokumpu did, that it could produce the requested quantity of product within 8 weeks.  That Outokumpu was already producing some of the requested amount is further support for its certification, above and beyond what the regulations required.

C.  #4 Satin Finish Steel

Commerce's denials of the 31 exclusion requests covering #4 satin finish products should be sustained.  Mirror Metals' arguments here largely repeat the arguments we have addressed above.  Mirror Metals argues that Outokumpu's objections failed to reference the "specific product finish."  Pl. Br. at 35.  As we have explained above, Commerce reasonably concluded, based upon Outokumpu's certified statements in its objections, that Mirror Metals was representing that it could produce the specific product(s) identified in the requests.

Mirror Metals argues that rebuttal information shows that Outokumpu cannot produce the subject steel.  Pl. Br. at 35-36.  Again, the SME reasonably concluded that the subject of the generic email inquiry did not match the precise products at issue in the exclusion requests.  AR1466.  An interested party makes a request for an exclusion because it has a particular need for a specific steel product in a specific quantity.  Commerce may reasonably disregard the generic correspondence as not probative of the exclusion request for the product at issue.  Mirror Metals' arguments rest upon its aesthetic preference for the imported product.  Pl. Br at 35; *see* AR1475 (Mirror Metals' request describing domestic product as "aesthetically inferior").

20

Aesthetic preference, however, is not a criterion that Commerce considered and therefore is not sufficient to defeat a valid exclusion objection.[8] At no point in its submissions or now in its opening brief does Mirror Metals posit, much less support with facts and developed argument, that Outokumpu's U.S. produced steel is not a sufficient "substitute product" that can be used in the specified "business activity" by the specified "end user" as defined in the regulations. 15 C.F.R. pt. 705, Supp. 1 § 1 (c)(6)(ii).

III.        None of Mirror Metals' Procedural Challenges Undermine Commerce's Decisions

None of Mirror Metals' remaining arguments demonstrate that Commerce's decisions were unlawful or arbitrary or capricious. Mirror Metals asserts that Commerce failed to provide reasoned explanations for its decisions or explain how it weighed the record evidence. Pl. Br at 44-45. As demonstrated above, Commerce's decisions are supported by the factual record.

For decision-making to be sustained under the APA standard, the agency need only "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs*, 463 U.S. at 43 (citation omitted). To be sustained, "an explanation need not be set forth in 'great detail,'" *Bader v. United States*, 160 Fed. Cl. 529, 547 (2022) (citation omitted). Nor is "ideal clarity" "the standard." *Van Hollen, Jr. v. FEC*, 811 F.3d 486, 497 (D.C. Cir. 2016).

Here, Commerce considered the relevant evidence and the path to its decisions is easily discernible. *Motor Vehicle Mfrs*, 463 U.S. at 43. Indeed, ITA evaluated "all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME." AR0007. Likewise, BIS "considered the evidence provided, including in the

---

[8] According to Mirror Metals, #4 satin finish steel "is used in architectural projects both inside and outside of buildings; kitchen equipment, store fronts, food processing, hand rails, elevator panels, dairy equipment, and the automotive industry for trim." AR1474.

exclusion request as well as any applicable objection filings." AR0002.

The ITA memorandum contains "general notes" that "describe{}, in full, the factors which ITA has considered in reaching its recommendation." AR1283. In *Seneca Foods*, the Court found that the same ITA recommendation memorandum format used here provided a "discernable path detailing the agency's consideration of the record evidence." 740 F. Supp. 3d at 1345 (finding Commerce's "reasoned explanation on the record satisfied its APA obligations") (cleaned up). This version of the memorandum is distinguishable from the earlier version of the exclusion decision memoranda subject to this Court's review in *JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1330 (Ct. Int'l Trade 2020). Mirror Metals offers no reason for this Court to depart from the finding in *Seneca Foods* and find instead that a lengthier narrative or more detail was required. *See* Pl. Br. at 46.

Mirror Metals also challenges the decision-maker's adoption of the International Trade Administration's recommendation memoranda as the basis for the decisions. Pl. Br. at 45. Decision-makers are entitled to, and frequently must, rely upon the recommendations and expertise of subordinate or other agency employees. Mirror Metals cites a 1977 Court of Customs & Patent Appeals case for the proposition that "{d}ecisions which 'merely refer to' and summarily adopt 'recommendations' . . . are insufficient." Pl. Br. at 45 (citing *Yale Univ. v. Dep't of Commerce, Domestic & Int'l Bus. Admin.., Office of Import Programs*, 579 F.2d 626, 633 (C.C.P.A. 1977)). *Yale University* is distinguishable. At issue in that case was a statute that authorized duty-free importation of certain scientific equipment if equipment of "equivalent scientific value" was not manufactured in the United States. 579 F.2d at 627-28. The statute directed Commerce to determine "equivalent scientific value," and to consider the written advice of the Secretary of Health, Education, and Welfare (HEW). *Id*. at 628. Yale and Brown

University sought to import electron microscopes for educational use.  Commerce denied the requests, relying on HEW's recommendations.  *Id*. at 629-30.  The court of appeals found that the statute required the designated Commerce official to "provide some scientific evidence as a basis for his decision" and that he had failed to do so by "summarily adopt{ing}" HEW's recommendations.  *Id*. at 633.

By contrast here, Commerce did not impermissibly outsource its decision-making, nor did it fail to consider any record evidence.  Instead, two bureaus within Commerce combined their respective expertise to thoroughly examine the exclusion requests from multiple angles.  Moreover, the standard for the agency to apply here is not one requiring "scientific evidence," as in *Yale*.  Rather, it is whether there is evidence that the relevant steel article is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, a fact that was certified before it by a leading manufacturer in the U.S steel industry.

Finally, Mirror Metals contends that the objections did not comply with the regulations, were therefore "deficient," and should have been disregarded by Commerce.  Pl. Br. at 47-49 (citing 15 C.F.R. pt. 705, Supp. 1 § (h)(1)).  Outokumpu's objections were not deficient, but compliant with the regulations.  The regulations provided that objectors who were not currently manufacturing a product, but who asserted that they could do so within the delivery times identified by the requestor, "must identify how it will be able to produce and deliver the quantity of steel or aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product."  15 C.F.R. pt. 705, Supp. 1 § (d)(4).

Mirror Metals argues that Commerce should have rejected Outokumpu's submissions because they did not include evidence "such as purchase orders, invoices, and/or shipping

23

documents." Pl. Br. at 48.  The regulations did not require any specific type of supporting

documentation.  Outokumpu's responses, moreover, met the substance of the regulatory

requirement.  Outokumpu explained that the products in the exclusion requests were "standard

product." AR0025; AR542; AR1488.  Commerce could reasonably infer from that statement

that minimal retooling effort would be required to start production of the products in

Outokumpu's operating Calvert, Alabama mill.[9]

Even if the Court agreed with Mirror Metals that Commerce did not follow its own

regulations, reversal or remand is not required.  *See* Pl. Br. at 49.  Mirror Metals cites cases for

the proposition that an agency must follow its own regulations.  While we do not dispute this

proposition as a general matter, these cases rely upon the *Accardi* doctrine which, broadly

speaking, allows parties to seek enforcement of agency compliance with "rules promulgated by

{that} agency that regulate the rights and interests of others." *Leslie v. Att'y Gen. of U.S.*, 611

F.3d 171, 175 (3d Cir. 2010); *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260,

267 (1954).

To the extent that Mirror Metals intends to make an *Accardi* challenge to Commerce's

adherence to its regulations[10], it is not altogether clear that the exclusion regulations are the type

of regulations enforceable under the *Accardi* doctrine.  First, paragraph (C)(6)(i) lays out

---

[9]  Mirror Metals contends that objector Cleveland Cliffs did not provide its shipping, manufacturing, or lead times in the required form fields.  Pl. Br. at 48.  Commerce, however, did not rely upon any of Cleveland Cliffs' submissions as a basis to deny Mirror Metals' requests. *See, e.g.*, AR2984.

[10]  The opening brief makes no argument regarding application of the "standards established by Proclamation 9705," Pl. Br. at 13, 49.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

requirements for exclusion requests, not objections.  Second, while the regulation states that it is

"incumbent" upon both requestors and objectors to provide supplemental evidence, that

statement is reasonably read as informing requestors and objectors as to what will be helpful

evidence for their respective cases.  In other words, the regulation reminds the parties that "the

burden of creating an adequate record lies with {them} and not with Commerce."  *QVD Food*

*Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011).  It is not the sort of regulation

"intended primarily to confer important procedural benefits" on Mirror Metals.  *Am. Farm Lines*

*v. Black Ball Freight Service*, 397 U.S. 532, 538-39 (1970).  Mirror Metals cannot complain that

the regulation was not applied to when it also failed to provide the type of supporting

documentation that it claims was necessary.  Accordingly, the Court should reject Mirror Metals'

argument.

IV.    Mirror Metals Cannot Demonstrate Reversible Error Using Commerce's Treatment
       Of Other Exclusions

Finally, Mirror Metals seeks to demonstrate error in Commerce's denials by identifying

purportedly identical exclusion requests that were subsequently (or previously) granted by

Commerce.  Pl. Br. at 49-55.  This argument is unpersuasive, for several reasons.

First, each exclusion request is decided based upon its own record, and the scope of

judicial review is limited to the administrative record.  *Camp v. Pitts*, 411 U.S. 138, 142 (1973);

c*f. United States Steel Corp. v. United States*, 97 F.4ᵗʰ 1364, 1370 (Fed. Cir. 2024) (noting that

judicial review "'is limited to the record before Commerce in the particular proceeding at

25

issue'"). Thus, Commerce's treatment of unrelated requests is not before the Court and not a reason to set aside the exclusion decisions challenged here.[11]

Second, even if the Court were to entertain this argument, there are factual reasons, based upon the unique records of each request, to support different outcomes. For example, Commerce granted three requests for exclusions for #8 Non-Directional steel, because those requests received no objections. When no party filed an objection to an exclusion request, BIS generally approved the requests. 15 C.F.R. pt. 705, Supp. 1 § (h)(2)(ii). Thus, Commerce treated different situations differently when it granted request 345165 (which received no objections), and denied requests 324905, 338228, and 339240, all of which received objections from Outokumpu.

For some requests for #4 Satin steel, Commerce found that the objector(s) could not meet the timeliness criteria due to ambiguous statements in their objections and surrebuttals. Specifically, Outokumpu included the following language in its surrebuttals: "*If needed*, a domestic processor will provide desired surface finish." Because the objector's statement was unclear as to whether the stated delivery time included the time needed for a domestic processor to provide the requested surface finish, Commerce approved the exclusion requests. Conversely, in the denied requests at issue in this case, Outokumpu's objections or surrebuttals did not contain any conditional or ambiguous language that would lead Commerce to question its ability

---

[11] In addressing comments concerning Commerce's consideration of prior exclusion requests, Commerce encouraged requestors to submit such information to Commerce with their requests, and affirmed that "all requests are reviewed *solely* based on the information provided in each individual record of exclusion requests, objections, rebuttals, and surrebuttals, as well as any associated public or CBI attachments." *Revisions of the Section 232 Steel and Aluminum Tariff Exclusions Process*, 88 Fed. Reg. 58,525, 58,530 (Dep't of Commerce Aug. 28, 2023) (emphasis added).

26

to timely deliver the product. Again, there is a reason justifying Commerce's differing treatment.

Finally, Mirror Metals' references to granted exclusion requests undermines its overall position that it has been prejudiced by Commerce's denials. Compl. ¶ 21; Pl. Br. at 24. That is because, for several of the products, Mirror Metals had exclusion coverage for duty-free entry of merchandise during much of the time period that the challenged exclusion requests, had the exclusions been granted, would have been operative. Column N below represents the latest expiration date of the applicable initial set of granted exclusions, and Column O is the earliest start date of the applicable later set of granted exclusions. These dates define the potential start and end dates of the period of time that could have been covered by the denied exclusions:

| Original ER | Submission Date | Decision Date | Expiration Date | Denied ER | Product Category | Submission | Decision | Expiration | Granted ER | Submission | Decision | Expiration | t Expiration | Earliest Start | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 251183 | 9/28/2021 | 11/5/2021 | 11/5/2022 | 324905 | #8 Non-Directional Steel | 10/10/2022 | 12/23/2022 | 12/23/2023 | 345165 | 1/10/2023 | 3/3/2023 | 3/3/2024 | 7/8/2023 | 1/10/2023 | NO GAP |
| 296851 | 6/1/2022 | 7/8/2022 | 7/8/2023 | 338228 | #8 Non-Directional Steel | 12/8/2022 | 3/18/2023 | 3/18/2024 | | | | | | | |
| | | | | 339240 | #8 Non-Directional Steel | 12/13/2022 | 3/18/2023 | 3/18/2024 | | | | | | | |
| 329089 | 11/1/2022 | 3/26/2023 | 3/25/2024 | 356053 | Bright Annealed | 3/3/2023 | 6/4/2023 | 6/4/2024 | 362724 | 4/6/2023 | 7/8/2023 | 7/8/2024 | 3/25/2024 | 4/6/2023 | NO GAP |
| 281787 | 3/2/2022 | 8/22/2022 | 8/22/2023 | 356061 | Bright Annealed | 3/3/2023 | 6/4/2023 | 6/4/2024 | 362715 | 4/6/2023 | 7/8/2023 | 7/8/2024 | 8/22/2023 | 4/6/2023 | NO GAP |
| 281787 | 3/2/2022 | 8/22/2022 | 8/22/2023 | 357875 | Bright Annealed | 3/14/2023 | 6/4/2023 | 6/4/2024 | 362763 | 4/6/2023 | 7/8/2023 | 7/8/2024 | 8/22/2023 | 4/6/2023 | NO GAP |
| 258661 | 10/27/2021 | 12/5/2021 | 12/5/2022 | 386019 | #4 Satin Finish | 7/24/2023 | 10/28/2023 | 10/28/2024 | 404192 | 11/10/2023 | 2/25/2024 | 2/25/2025 | 12/3/2023 | 11/10/2023 | NO GAP |
| 300917 | 6/14/2022 | 9/3/2022 | 9/3/2023 | 390594 | #4 Satin Finish | 8/17/2023 | 11/19/2023 | 11/19/2024 | | | | | | | |
| 319817 | 9/7/2022 | 12/3/2022 | 12/3/2023 | | | | | | | | | | | | |
| 258657 | 10/27/2021 | 12/11/2021 | 12/11/2022 | 390578 | #4 Satin Finish | 8/17/2023 | 11/19/2023 | 11/19/2024 | 403592 | 11/7/2023 | 2/9/2024 | 2/9/2025 | 11/5/2023 | 11/7/2023 | 2 DAYS |
| 300903 | 6/14/2022 | 9/3/2022 | 9/3/2023 | | | | | | | | | | | | |
| 315842 | 8/17/2022 | 11/5/2022 | 11/5/2023 | | | | | | | | | | | | |
| 258658 | 10/27/2021 | 12/5/2021 | 12/5/2022 | 390582 | #4 Satin Finish | 8/17/2023 | 11/19/2023 | 11/19/2024 | 403593 | 11/8/2023 | 2/25/2024 | 2/25/2025 | 12/3/2023 | 11/8/2023 | NO GAP |
| 300910 | 6/14/2022 | 9/3/2022 | 9/3/2023 | | | | | | | | | | | | |
| 315848 | 8/17/2022 | 9/23/2022 | 9/23/2023 | | | | | | | | | | | | |
| 319800 | 9/7/2022 | 12/3/2022 | 12/3/2023 | | | | | | | | | | | | |
| 258659 | 10/27/2021 | 12/11/2021 | 12/11/2022 | 390585 | #4 Satin Finish | 8/17/2023 | 11/19/2023 | 11/19/2024 | 403801 | 11/8/2023 | 2/25/2024 | 2/25/2025 | 12/3/2023 | 11/8/2023 | NO GAP |
| 300911 | 6/14/2022 | 9/3/2022 | 9/3/2023 | | | | | | | | | | | | |
| 315910 | 8/17/2022 | 11/5/2022 | 11/5/2023 | | | | | | | | | | | | |
| 319808 | 9/7/2022 | 12/3/2022 | 12/3/2023 | | | | | | | | | | | | |
| 258662 | 10/27/2021 | 12/11/2021 | 12/11/2022 | 390598 | #4 Satin Finish | 8/17/2023 | 11/19/2023 | 11/19/2024 | 403804 | 11/8/2023 | 2/25/2024 | 2/25/2025 | 12/3/2023 | 11/8/2023 | NO GAP |
| 300918 | 6/14/2022 | 9/3/2022 | 9/3/2023 | | | | | | | | | | | | |
| 315918 | 8/17/2022 | 11/5/2022 | 11/5/2023 | | | | | | | | | | | | |
| 319825 | 9/7/2022 | 12/3/2022 | 12/3/2023 | | | | | | | | | | | | |
| 258663 | 10/27/2021 | 12/11/2021 | 12/11/2022 | 390599 | #4 Satin Finish | 8/18/2023 | 11/19/2023 | 11/19/2024 | 403805 | 11/8/2023 | 2/25/2024 | 2/25/2025 | 11/5/2023 | 11/8/2023 | 3 DAYS |
| 300919 | 6/14/2022 | 9/3/2022 | 9/3/2023 | | | | | | | | | | | | |
| 315919 | 8/17/2022 | 11/5/2022 | 11/5/2023 | | | | | | | | | | | | |
| 258664 | 10/27/2021 | 12/5/2021 | 12/5/2022 | 390883 | #4 Satin Finish | 8/18/2023 | 11/19/2023 | 11/19/2024 | 403806 | 11/8/2023 | 2/25/2024 | 2/25/2025 | 11/5/2023 | 11/8/2023 | 3 DAYS |
| 300924 | 6/14/2022 | 9/3/2022 | 9/3/2023 | | | | | | | | | | | | |
| 315919 | 8/17/2022 | 11/5/2022 | 11/5/2023 | | | | | | | | | | | | |
| 250695 | 9/24/2021 | 11/5/2021 | 11/5/2022 | 390900 | #4 Satin Finish | 8/18/2023 | 11/19/2023 | 11/19/2024 | 403807 | 11/8/2023 | 2/25/2024 | 2/25/2025 | 11/5/2023 | 11/8/2023 | 3 DAYS |
| 315922 | 8/17/2022 | 11/5/2022 | 11/5/2023 | | | | | | | | | | | | |

In light of the overlapping coverage of its granted exclusions, prevailing on its challenge to these exclusion requests may not, as a practical matter, provide much meaningful relief to Mirror Metals.[12] The history of its exclusion requests, however, underscores that Commerce's

---

[12] We do not know the specifics of Mirror Metals' import history. In addition to being time-limited, exclusions are granted for specified quantities of a steel product. Thus, it is

27

exclusion program worked as designed and Mirror Metals was able to obtain tariff relief where

appropriate.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain the challenged

determinations and enter judgment in favor of the United States.[13]

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan

OF COUNSEL:

TARA K. HOGAN
Assistant Director
Commercial Litigation Branch

B. KATHRYN DEBRASON
RACHEL MORRIS
Bureau of Industry & Security
Department of Commerce

Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-2228
Email:  Tara.Hogan@usdoj.gov

April 17, 2026

Attorneys for Defendants

---

possible that Mirror Metals could have exhausted the specified quantity provided in an earlier-granted exclusion, even if the exclusion's time period had not expired.

[13]  Should the Court determine that there are any errors warranting granting relief to Mirror Metals, it must consider the appropriate remedy.  Remand is normally appropriate when agency action is found wanting. *JSW Steel*, 466 F. Supp. 3d at 1329.  Here, there is a question as to Commerce's authority to grant an exclusion upon remand.  Proclamation 10895 directed the Secretary of Commerce to "take all actions . . . necessary to terminate the product exclusion process," *Proclamation 10895*, cl. 6.  "When the President issued those Proclamations, he rescinded any authority previously delegated to Commerce to grant exclusions." *Prysmian Cables & Sys., USA, LLC v. United States*, Slip op. 26-20, 2026 Ct. Intl. Trade LEXIS 24, *22 (Ct. Int'l Trade Feb. 23, 2026).

28

CERTIFICATE OF COMPLIANCE

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), the undersigned certifies that "Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record" contains **8,327** words as computed by our word processing system, excluding those portions that do not count toward the word limitation.  Our filing thus complies with the Court's Chambers Procedures.

/s/Tara K. Hogan
TARA K. HOGAN
April 17, 2026

# ADDENDUM

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 39 of 53

Code of Federal Regulations
  Title 15. Commerce and Foreign Trade
    Subtitle B. Regulations Relating to Commerce and Foreign Trade
      Chapter VII. Bureau of Industry and Security, Department of Commerce (Refs & Annos)
        Subchapter A. National Security Industrial Base Regulations
          Part 705. Effect of Imported Articles on the National Security (Refs & Annos)

This section has been updated. Click here for the updated version.

15 C.F.R. Pt. 705, Supp. 1

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS FOR SUBMISSIONS
REQUESTING EXCLUSIONS FROM THE ADJUSTMENT OF IMPORTS
OF ALUMINUM AND STEEL IMPOSED PURSUANT TO SECTION
232 OF THE TRADE EXPANSION ACT OF 1962, AS AMENDED

Effective: December 14, 2020 to April 29, 2025

On March 8, 2018, the President issued Proclamations 9704 and 9705 concurring with the findings of the January 11, 2018 reports of the Secretary of Commerce on the effects of imports of aluminum and steel mill articles (steel articles) on the national security and determining that adjusting aluminum and steel imports through the imposition of duties is necessary so that their imports will no longer threaten to impair the national security. Clause 3 of Proclamations 9704 and 9705 also authorized the Secretary of Commerce, in consultation with the Secretary of Defense, the Secretary of the Treasury, the Secretary of State, the United States Trade Representative, the Assistant to the President for Economic Policy, the Assistant to the President for National Security Affairs, and other senior Executive Branch officials as appropriate, to grant exclusions from the duties at the request of directly affected parties located in the United States if the requested steel or aluminum article is determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations. On August 29, 2018, the President issued Proclamation 9776. Clause 1 of Proclamation 9776, authorizes the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of the Treasury, the Secretary of Defense, the United States Trade Representative, the Assistant to the President for National Security Affairs, the Assistant to the President for Economic Policy, and such other senior Executive Branch officials as the Secretary deems appropriate, to provide relief from the applicable quantitative limitations set forth in Proclamation 9740 and Proclamation 9759 for steel articles and as set forth in Proclamation

9739 and 9758 for aluminum articles and their accompanying annexes, as amended, at the request of a directly affected party located in the United States for any steel or aluminum article determined by the Secretary to not be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality. The Secretary is also authorized to provide such relief based upon specific national security considerations.

(a) Scope. This supplement specifies the requirements and process for how directly affected parties located in the United States may submit requests for exclusions from the duties and quantitative limitations imposed by the President. This supplement also specifies the requirements and process for how parties in the United States may submit objections to submitted exclusion requests for relief from the duties or quantitative limitations imposed by the President and the process for rebuttals to submitted objections and surrebuttals (collectively, "232 submissions"). This supplement identifies the time periods for such submissions, the methods of submission, and the information that must be included in such submissions.

(b) Required forms. The 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations) includes four web-based forms that are to be used for submitting exclusion requests, objections to exclusion requests, rebuttals, and surrebuttals described in this supplement. On the 232 Exclusions Portal, each web-based form is available on the portal at the bottom of the preceding filing. For example, a party submitting an objection will access the objection form by scrolling to the bottom of the exclusion request, a rebuttal filer will access the rebuttal form by scrolling to the bottom of the objection form, and a surrebuttal filer would access the surrebuttal form by scrolling to the bottom of the rebuttal form. The U.S. Department of Commerce requires requesters and objectors to use the appropriate form as specified under paragraphs (b)(1) and (2) of this supplement for submitting exclusion requests and objections to submitted exclusion requests and the forms specified under paragraphs (b)(3) and (4) of this supplement for submitting rebuttals and surrebuttals. In addition, submitters of exclusion requests, objections to submitted exclusion requests, rebuttals, and surrebuttals to the 232 Exclusions Portal will be required to complete a web-based registration on the 232 Exclusions Portal prior to submitting any documents. In order to register, submitters will be required to provide an email and establish a password for the account. After completing the registration, submitters will be able to login to an account on the 232 Exclusions Portal and submit exclusion requests, objections, rebuttals, and surrebuttal documents.

(1) Form required for submitting exclusion requests. The full name of the form used for submitting steel exclusion requests is Request for Exclusion from Remedies: Section 232 National Security Investigation of Steel Imports. The full name of the form used for submitting aluminum exclusion requests is Request for Exclusion from Remedies: Section 232 National Security Investigation of Aluminum Imports. The Title of the web-based fillable form for both steel and aluminum in the 232 Exclusions Portal is Exclusion Request.

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 41 of 53

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

(2) *Form required for submitting objections to submitted exclusion requests.* The name of the form used for submitting objections to submitted steel exclusion requests is Objection Filing to Posted Section 232 Exclusion Request: Steel. The name of the form used for submitting objections to submitted aluminum exclusion requests is Objection Filing to Posted Section 232 Exclusion Request: Aluminum. The Title of the web-based fillable form for both steel and aluminum in the 232 Exclusions Portal is Objection.

(3) *Form required for submitting rebuttals.* The name of the form used for submitting rebuttals to steel objections is Rebuttal to Objection Received for Section 232 Exclusion Request: Steel. The name of the form used for submitting rebuttals to aluminum objections is Rebuttal to Objection Received for Section 232 Exclusion Request: Aluminum. The Title of the web-based fillable form for both steel and aluminum in the 232 Exclusions Portal is Rebuttal.

(4) *Form required for submitting surrebuttals.* The name of the form used for submitting surrebuttals to steel objections is Surrebuttal to Rebuttal Received on Section 232 Objection: Steel. The name of the form used for submitting surrebuttals to aluminum objections is Surrebuttal to Rebuttal Received on Section 232 Objection: Aluminum. The Title of the web-based fillable form for both steel and aluminum in the 232 Exclusions Portal is Surrebuttal.

Note to Paragraphs (b)(1) Through (4): On the 232 Exclusions Portal, each exclusion request is assigned a distinct ID #, which is also used with its associated 232 submissions, but preceded with an acronym indicating the file type: Exclusion Requests (ER ID #), Objection (OF ID #), Rebuttals (RB ID #) and Surrebuttals (SR ID #). For an example of the four possible types of 232 submissions associated with a single exclusion request, you could have ER ID 237, OF ID 237, RB ID 237 and SR ID 237. The 232 Exclusions Portal will automatically assign the two letter designator depending on the type of web-based form being submitted in the portal and will assign an ID number to the original exclusion request and that ID number will be common to any objection, rebuttal, or surrebuttal submitted pertaining to the same exclusion request.

(5) *Public disclosure and information protected from public disclosure.*

(i) Information submitted in 232 submissions will be subject to public review and made available for public inspection and copying, except for the information described in paragraph (b)(5)(iii) of this supplement. Individuals and organizations must fully complete the relevant forms.

(ii) Information not subject to public disclosure should not be submitted. Personally identifiable information, including social security numbers and employer identification numbers, should not be provided. Information that is subject to government-imposed access and dissemination or other specific national security controls, e.g., classified information or information that has U.S. Government restrictions on dissemination to non–U.S. citizens or other categories of persons that

Case 1:24-cv-00260-CRK     Document 34     Filed 04/17/26     Page 42 of 53

would prohibit public disclosure of the information, may not be included in 232 submissions. Individuals and organizations that have confidential business information ("CBI") that they believe relevant to the Secretary's consideration of the 232 submission should so indicate in the appropriate field of the relevant form, or on the rebuttal or surrebuttal submission, following the procedures in paragraph (b)(5)(iii) of this supplement.

(iii) Procedures for identifying, but not disclosing confidential or proprietary business information (CBI) in the public version, and procedures for submitting CBI. For persons seeking to submit confidential or proprietary business information (CBI), the 232 submission available to the public must contain a summary of the CBI in sufficient detail to permit a reasonable understanding of the substance of the information. If the submitting person claims that summarization is not possible, the claim must be accompanied by a full explanation of the reasons supporting that claim. Generally, numerical data will be considered adequately summarized if grouped or presented in terms of indices or figures within ten percent of the actual figure. If an individual portion of the numerical data is voluminous (e.g., five pages of numerical data), at least one percent of the numerical data, representative of that portion, must be summarized. In order to submit CBI that is not for public release as a separate email submission to the U.S. Department of Commerce, you must follow the procedures in paragraphs (b)(3)(iii)(A)-(D) of this supplement to assist the U.S. Department of Commerce in identifying these submissions and associating these submissions with the respective 232 submission in the 232 Exclusions Portal. Submitters with classified information should contact the U.S. Department of Commerce for instructions on the appropriate methods to send this type of information.

(A) For CBI related to exclusion requests or objections, check the appropriate box in the 232 Exclusions Portal indicating that the filer has relevant CBI for consideration. If Commerce determines after review that the CBI is needed, Commerce will directly request the CBI from the exclusion requester or objector as warranted.

(B) For CBI related to rebuttals or surrebuttals, on the same day that you submit your 232 submission in the 232 Exclusions Portal, submit the CBI via email to the U.S. Department of Commerce. The email address used is different depending on the type of submission the emailed CBI is for, as follows: CBI for rebuttals use 232rebuttals@doc.gov; and CBI for surrebuttals use 232surrebuttals@doc.gov.

(C) For rebuttals and surrebuttals pertaining to 232 submissions for exclusion requests the email subject line must only include the original 232 Exclusions Portal Exclusion Request (ER) ID # and the body of the email must include the 232 Exclusions Portal Rebuttal (RB) ID #, or Surrebuttal (SR) ID # you received from the 232 Exclusions Portal when you successfully submitted your rebuttal or surrebuttal. These naming conventions used in the 232 Exclusions Portal, respectively,

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 43 of 53

will assist the U.S. Department of Commerce to associate the CBI that will not be posted in the 232 Exclusions Portal with the information included in the public submission.

(D) Submit the CBI as an attachment to that email. The CBI is limited to a maximum of five pages per rebuttal or surrebuttal. The email is to be limited to sending your CBI. All other information for the public submission, and public versions of the CBI, where appropriate, for a 232 submission in the 232 Exclusions Portal following the procedures identified in this supplement, as appropriate.

Note 1 to Paragraph (b) for Submissions of Supporting Documents (Attachments): Supporting attachments must be emailed as PDF documents.

Note 2 to Paragraph (b): It is a criminal offense to willfully make a false statement or representation to any department or agency of the United States Government as to any matter within its jurisdiction [18 U.S.C. 1001(2018) ].

(c) Exclusion requests.

(1) Who may submit an exclusion request? Only directly affected individuals or organizations located in the United States may submit an exclusion request. An individual or organization is "directly affected" if they are using steel in business activities (e.g., construction, manufacturing, or supplying steel product to users) in the United States.

(2) Identification of exclusion requests. Separate exclusion requests must be submitted for steel products with chemistry by percentage breakdown by weight, metallurgical properties, surface quality (e.g., galvanized, coated), and critical dimensions covered by a common HTSUS statistical reporting number. Separate exclusion requests must be submitted for aluminum products with critical dimensions covered by a common HTSUS statistical reporting number. The exclusion request forms allow for minimum and maximum dimensions. A permissible range must be within the minimum and maximum range that is specified in the HTSUS statistical reporting number and applicable notes. Separate exclusion requests must also be submitted for products falling in more than one ten-digit HTSUS statistical reporting number. The U.S. Department of Commerce will approve exclusions on a product basis, and the approvals will be limited to the individual or organization that submitted the specific exclusion request, unless Commerce approves a broader application of the product-based exclusion request to apply to additional importers. Other directly-affected individuals or organizations located in the United States that wish to submit an exclusion request for a steel or aluminum product that has already been the subject of an approved exclusion request may submit an exclusion request under this supplement. These additional exclusion requests by other directly-affected individuals or organizations in the United States are not required to reference the previously approved exclusion but are advised to do so, if they want Commerce to take that exclusion into account when reviewing a subsequent exclusion request. Directly affected

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 44 of 53

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

individuals and organizations in the United States will not be precluded from submitting a request for exclusion of a product even though an exclusion request submitted for that product by another requester or that requester was denied or is no longer valid.

(3) Where to submit exclusion requests? All exclusion requests must be submitted directly on the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations).

(4) No time limit for submitting exclusion requests. Exclusion requests may be submitted at any time.

(5)(i) Substance of exclusion requests. An exclusion request must specify the business activities in the United States within which the requester is engaged that qualify the individual or organization to be directly affected and thus eligible to submit an exclusion request. The request should clearly identify, and provide support for, the basis upon which the exclusion is sought. An exclusion will only be granted if an article is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality, or for specific national security considerations.

(ii) Certification for volume requested. In order to ensure that the volume requested in an exclusion request is consistent with legitimate business needs for the same steel or aluminum articles obtained (i.e., imported from abroad either directly by the requester or indirectly by purchasing from distributors) by the entity requesting an exclusion, the following certification in paragraphs (c)(5)(ii)(A)-(E) must be acknowledged in the 232 Exclusions Portal when completing the submission of a 232 exclusion request. The exclusion request certification for volume requested must be signed by an organization official specifically authorized to certify the document (the certification being made in the 232 Exclusions Portal) as being accurate and complete. The undersigned certifies in the 232 Exclusions Portal that the information herein supplied in response to this paragraph is complete and correct to the best of his/her knowledge. By signing the certification below, I attest that:

(A) My organization intends to manufacture, process, or otherwise transform the imported product for which I have filed an exclusion request or I have a purchase order or orders for such products;

(B) My organization does not intend to use the exclusion for which I have filed an exclusion request, if granted, solely to hedge or arbitrage the price;

(C) My organization expects to consume, sell, or otherwise use the total volume of product across all my active exclusions and pending exclusion requests in the course of my organization's business activities within the next calendar year;

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 45 of 53

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

(D) If my organization is submitting an exclusion request for a product for which we previously received an exclusion, I certify that my organization either imported the full amount of our approved exclusion(s) last year or intended to import the full amount but could not due to one of the following reasons:

(1) Loss of contract(s);

(2) Unanticipated business downturns; or

(3) Other factors that were beyond my organization's control that directly resulted in less need for steel or aluminum articles; and

(E) I certify that the exclusion amount requested this year is in line with what my organization expects to import based on our current business outlook. If requested by the Department of Commerce, my organization shall provide documentation that justifies its assertions in this certification regarding its past imports of steel or aluminum articles and its projections for the current year, as it relates to past and current calendar year exclusion requests.

Note to Paragraphs (c)(5)(i) and (ii): Any exclusion request that does not include a certification made in accordance with (c)(5)(ii) will be treated as an incomplete submission and will therefore be rejected.

(6) Criteria used to review exclusion requests. The U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: The article is not produced in the United States in an amount which can be delivered in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier, is not produced in the United States in a satisfactory quality, or for specific national security considerations. The reviews will be made on a case-by-case basis to determine whether the requester has shown that the article is not produced in the United States in sufficient and reasonably available amount or of a satisfactory quality, or that there are specific national security considerations to grant the exclusion. To provide additional context on the meaning and application of the criteria, paragraphs (c)(6)(i)-(iii) of this supplement define keys terms used in the review criteria and provide illustrative application examples. The U.S. Department of Commerce will use the same criteria identified in paragraphs (c)(6)(i)-(iii) of this supplement when determining whether it is warranted to approve broader product-based exclusions based on trends the Department may see over time with 232 submissions. The public is not permitted to request broader product-based exclusions that would apply to all importers, because the Department makes these determinations over time by evaluating the macro trends in 232 submissions. Items for which a broader determination has been made will be identified in supplements no. 2 or 3 to part 705.

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 46 of 53

(i) Not produced in the United States in a sufficient and reasonably available amount. The exclusion review criterion "Not produced in the United States in a sufficient and reasonably available amount" means that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities. Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks", or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier. Furthermore, to the extent that an objector can produce and deliver a portion, which is less than 100 percent, but ten percent or more, of the amount of steel or aluminum needed in the business activities of the user in the United States described in the exclusion request, the Department of Commerce may deny a requested exclusion for that percentage of imported steel or aluminum. It is incumbent upon both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times.

(ii) Not produced in the United States in a satisfactory quality. The exclusion review criterion "not produced in the United States in a satisfactory quality" does not mean the steel or aluminum needs to be identical, but it does need to be equivalent as a substitute product. "Substitute product" for purposes of this review criterion means that the steel or aluminum being produced by an objector can meet "immediately" (see paragraph (c)(6)(i) of this supplement) the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user.

(A) Steel application examples. For a steel example, if a U.S. business activity requires that steel plates to be provided must meet certain military testing and military specification standards in order to be used in military combat vehicles, that requirement would be taken into account when reviewing the exclusion request and any objections, rebuttals, and surrebuttals submitted. As another steel example, if a U.S. business activity requires that steel tubing to be provided must meet certain Food and Drug Administration (FDA) approvals to be used in medical devices, that requirement would be taken into account when reviewing the exclusion request and any objections, rebuttals, and surrebuttals submitted. Another steel example would be a food manufacturer that requires tin-plate approval from the U.S. Department of Agriculture (USDA) to make any changes in the tin-plate it uses to make cans for fruit juices. An objector would not have to make steel for use in making the cans that was identical, but it would have to be a "substitute product," meaning it could meet the USDA certification standards.

(B) Aluminum application examples. For an aluminum example, if a U.S. business activity requires that aluminum to be provided must meet certain military testing and military specification standards in order to be used in military aircraft, that requirement would be taken into account

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 47 of 53

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

when reviewing the exclusion request and any objections, rebuttals, and surrebuttals submitted. Another aluminum example would be a U.S. pharmaceutical manufacturer that requires approval from the Food and Drug Administration (FDA) to make any changes in its aluminum product pill bottle covers. An objector would not have to make aluminum for use in making the product covers that was identical, but it would have to be a "substitute product," meaning it could meet the FDA certification standards.

(iii) For specific national security considerations. The exclusion review criterion "or for specific national security considerations" is intended to allow the U.S. Department of Commerce, in consultation with other parts of the U.S. Government as warranted, to make determinations whether a particular exclusion request should be approved based on specific national security considerations.

(A) Steel application examples. For example, if the steel included in an exclusion request is needed by a U.S. defense contractor for making critical items for use in a military weapons platform for the U.S. Department of Defense, and the duty or quantitative limitation will prevent the military weapons platform from being produced, the exclusion will likely be granted. The U.S. Department of Commerce, in consultation with the other parts of the U.S. Government as warranted, can consider other impacts to U.S. national security that may result from not approving an exclusion, e.g., the unintended impacts that may occur in other downstream industries using steel, but in such cases the demonstrated concern with U.S. national security would need to be tangible and clearly explained and ultimately determined by the U.S. Government.

(B) Aluminum application examples. For example, if the aluminum included in an exclusion request is needed by a U.S. defense contractor for making critical items for use in a military weapons platform for the U.S. Department of Defense, and the duty or quantitative limitation will prevent the military weapons platform from being produced, the exclusion will likely be granted. The U.S. Department of Commerce, in consultation with the other parts of the U.S. Government as warranted, can consider other impacts to U.S. national security that may result from not approving an exclusion, e.g., the unintended impacts that may occur in other downstream industries using aluminum, but in such cases the demonstrated concern with U.S. national security would need to be tangible and clearly explained and ultimately determined by the U.S. Government.

(d) Objections to submitted exclusion requests.

(1) Who may submit an objection to a submitted exclusion request? Any individual or organization that manufactures steel or aluminum articles in the United States may file objections to steel exclusion requests, but the U.S. Department of Commerce will only consider information directly related to the submitted exclusion request that is the subject of the objection.

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 48 of 53

(2) *Identification of objections to submitted exclusion requests.* When submitting an objection to a submitted exclusion request, the objector must locate the exclusion request and submit the objection in response to the request directly in the 232 Exclusions Portal. Once the relevant exclusion request has been located, an individual or organization that would like to submit an objection will access the objection form by scrolling to the bottom of the exclusion request form and then fill out the web-based form for submitting their objection to the exclusion request in the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations).

(3) *Time limit for submitting objections to submitted exclusions requests.* All objections to submitted exclusion requests must be submitted directly on the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations) no later than 30 days after the related exclusion request is posted, with the 30–day clock starting at 11:59 p.m. Eastern Time on the calendar day an exclusion request is posted.

(4) *Substance of objections to submitted exclusion requests.* The objection should clearly identify, and provide support for, its opposition to the proposed exclusion, with reference to the specific basis identified in, and the support provided for, the submitted exclusion request. If the objector is asserting that it is not currently producing the steel or aluminum identified in an exclusion request but can produce the steel or aluminum and make that steel or aluminum available "immediately" in accordance with the time required for the user of steel or aluminum in the United States to obtain the product from its foreign suppliers, the objector must identify how it will be able to produce and deliver the quantity of steel or aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product. It is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times. This requirement includes specifying in writing to Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting. For example, a summary timeline that specifies the steps that will occur over the weeks needed to produce that steel or aluminum would be helpful to include, not only for the Department of Commerce review of the objection, but also for the requester of the exclusion and its determination whether to file a rebuttal to the objection. The U.S. Department of Commerce understands that, in certain cases, regulatory approvals, such as from the Environmental Protection Agency (EPA) or some approvals at the state or local level, may be required to start or restart production and that some of these types of approvals may be outside the control of an objector.

(e) *Limitations on the size of submissions.* Each exclusion request and each objection to a submitted exclusion request is to be limited to a maximum of 5,000 words, inclusive of all exhibits and attachments, but exclusive of the respective forms and any CBI provided to the U.S. Department of Commerce. Each attachment to a submission must be less than 10 MB.

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 49 of 53

(f) Rebuttal process. Only individuals or organizations that have submitted an exclusion request pursuant to this supplement may submit a rebuttal to any objection(s) posted in the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations). The objections to submitted exclusion requests process identified under paragraph (d) of this supplement already establish a formal response process for steel and aluminum manufacturers in the United States.

(1) Identification of rebuttals. When submitting a rebuttal, the individual or organization that submitted the exclusion request will access the rebuttal form by scrolling to the bottom of the objection form and then filling out the web-based form for submitting their rebuttal to the objection in the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations).

(2) Format and size limitations for rebuttals. Similar to the exclusions process identified under paragraph (c) of this supplement and the objection process identified under paragraph (d) of this supplement, the rebuttal process requires the submission of a government form as specified in paragraph (b)(3) of this supplement. Each rebuttal is to be limited to a maximum of 2,500 words, inclusive of all exhibits and attachments, but exclusive of the rebuttal form and any CBI provided to the U.S. Department of Commerce. Each attachment to a submission must be less than 10 MB.

(3) Substance of rebuttals. Rebuttals must address an objection to the exclusion request made by the requester. If multiple objections were received on a particular exclusion, the requester may submit a rebuttal to each objector. The most effective rebuttals will be those that aim to correct factual errors or misunderstandings in the objection(s).

(4) Time limit for submitting rebuttals. The rebuttal period begins on the date the Department opens the rebuttal period after the posting of the last objection in the 232 Exclusions Portal. The rebuttal period ends seven days after the rebuttal comment period is opened. This seven-day rebuttal period allows for the individual or organization that submitted an exclusion request pursuant to this supplement to submit any written rebuttals that it believes are warranted.

(g) Surrebuttal process. Only individuals or organizations that have a posted objection to a submitted exclusion request pursuant to this supplement may submit a surrebuttal to a rebuttal (see paragraph (f) of this supplement) posted to their objection to an exclusion request in the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations).

(1) Identification of surrebuttals. When submitting a surrebuttal, the individual or organization that submitted the objection will access the surrebuttal form by scrolling to the bottom of the rebuttal form and then filling out the web-based form for submitting their surrebuttal to the rebuttal in the 232 Exclusions Portal (https://www.commerce.gov/page/section–232–investigations).

Case 1:24-cv-00260-CRK     Document 34     Filed 04/17/26     Page 50 of 53

(2) Format and size limitations for surrebuttals. Similar to the exclusions process identified under paragraph (c) of this supplement, the objection process identified under paragraph (d) of this supplement, and the rebuttal process identified under paragraph (f) of this supplement, the surrebuttal process requires the submission of a government form as specified in paragraph (b) (4) of this supplement. The surrebuttal must be submitted in the 232 Exclusions Portal. Each surrebuttal is to be limited to a maximum of 2,500 words, inclusive of all exhibits and attachments, but exclusive of the surrebuttal form and any CBI provided to the U.S. Department of Commerce. Each attachment to a submission must be less than 10 MB.

(3) Substance of surrebuttals. Surrebuttals must address a rebuttal to an objection to the exclusion request made by the requester. The most effective surrebuttals will be those that aim to correct factual errors or misunderstandings in the rebuttal to an objection.

(4) Time limit for submitting surrebuttals. The surrebuttal period begins on the date the Department opens the surrebuttal comment period after the posting of the last rebuttal to an objection to an exclusion request in the 232 Exclusions Portal. The surrebuttal period ends seven days after the surrebuttal comment period is opened. This seven-day surrebuttal period allows for the individual or organization that submitted an objection to a submitted exclusion request pursuant to this supplement to submit any written surrebuttals that it believes are warranted to respond to a rebuttal.

(h) Disposition of 232 submissions—

(1) Disposition of incomplete submissions.

(i) Exclusion requests that do not satisfy the requirements specified in paragraphs (b) and (c) of this supplement will be rejected.

(ii) Objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) will not be considered.

(iii) Rebuttal filings that do not satisfy the requirements specified in paragraphs (b) and (f) will not be considered.

(iv) Surrebuttal filings that do not satisfy the requirements specified in paragraphs (b) and (g) will not be considered.

(2) Disposition of complete submissions—

(i) Posting of responses in the 232 Exclusions Portal. The U.S. Department of Commerce will post responses (decision memos) in the 232 Exclusions Portal to each exclusion request. The U.S.

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 51 of 53

Department of Commerce response to an exclusion request will also be responsive to any of the objection(s), rebuttal(s) and surrebuttal(s) for that submitted exclusion request submitted through the 232 Exclusions Portal.

(ii) Streamlined review process for "No Objection" requests. The U.S. Department of Commerce will grant properly filed exclusion requests which meet the requisite criteria, receive no objections, and present no national security concerns. If an exclusion request's 30–day comment period in the 232 Exclusions Portal has expired and no objections have been submitted, BIS will immediately assess the request for any national security concerns. If BIS identifies no national security concerns, it will post a decision granting the exclusion request in the 232 Exclusions Portal.

(iii) Effective date for approved exclusions and date used for calculating duty refunds—

(A) Effective date for approved exclusions. Approved exclusions will be effective five business days after publication of the U.S. Department of Commerce response granting an exclusion in the 232 Exclusions Portal. Starting on that date, the requester will be able to rely upon the approved exclusion request in calculating the duties owed on the product imported in accordance with the terms listed in the approved exclusion request. Companies are able to receive retroactive relief on granted requests dating back to the date of the request's submission on unliquidated entries.

(B) Contact for obtaining duty refunds. The U.S. Department of Commerce does not provide refunds on tariffs. Any questions on the refund of duties should be directed to CBP.

(iv) Validity period for exclusion requests. Exclusions will generally be approved for one year from the date of the signature on the decision memo, but may be valid for shorter or longer than one year depending on the specifics of the exclusion request; any objections filed; and analysis by the U.S. Department of Commerce and other parts of the U.S. Government, as warranted, of the current supply and demand in the United States, including any limitations or other factors that the Department determines should be considered in order to achieve the national security objectives of the duties and quantitative limitations.

(A) Examples of what fact patterns may warrant a longer exclusion validity period. Individuals or organizations submitting exclusion requests or objections may, and are encouraged to specify how long they believe an exclusion may be warranted and specify the rationale for that recommended time period. For example, an individual or organization submitting an exclusion request may request a longer validity period if there are factors outside of their control that may make it warranted to grant a longer period. These factors may include regulatory requirements that make a longer validity period justified, e.g., for an aircraft manufacturer that would require a certain number of years to make a change to an FAA–approved type certificate or for a manufacturer of medical items to obtain FDA approval. Business considerations, such as the need for a multi-year

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 52 of 53

contract for steel with strict delivery schedules in order to complete a significant U.S. project by an established deadline, e.g., a large scale oil and gas exploration project, is another illustrative example of the types of considerations that a person submitting an exclusion request may reference.

(B) Examples of what criteria may warrant a shorter exclusion validity period. Objectors are encouraged to provide their suggestions for how long they believe an appropriate validity period should be for an exclusion request. In certain cases, this may be an objector indicating it has committed to adding new capacity that will be coming online within six months, so a shorter six-month period is warranted. Conversely, if an objector knows it will take two years to obtain appropriate regulatory approvals, financing and/or completing construction to add new capacity, the objector may, in responding to an exclusion that requests a longer validity period, e.g., three years, indicate that although they agree a longer validity period than one year may be warranted in this case, that two years is sufficient.

(C) None of the illustrative fact patterns identified in paragraphs (h)(2)(iv)(A) or (B) of this supplement will be determinative in and of themselves for establishing the appropriate validity period, but this type of information is helpful for the U.S. Department of Commerce to receive, when warranted, to help determine the appropriate validity period if a period other than one year is requested.

(3) Review period and implementation of any needed conforming changes—

(i) Review period. The review period normally will not exceed 106 days for requests that receive objections, including adjudication of objections submitted on exclusion requests and any rebuttals to objections, and surrebuttals. The estimated 106–day period begins on the day the exclusion request is posted in the 232 Exclusions Portal, and ends once a decision to grant or deny is made on the exclusion request.

(ii) Coordination with other agencies on approval and implementation. Other agencies of the U.S. Government, such as CBP, will take any additional steps needed to implement an approved exclusion request. These additional steps needed to implement an approved exclusion request are not part of the review criteria used by the U.S. Department of Commerce to determine whether to approve an exclusion request, but are an important component in ensuring the approved exclusion request can be properly implemented. The U.S. Department of Commerce will provide CBP with information that will identify each approved exclusion request pursuant to this supplement. Individuals or organizations whose exclusion requests are approved must report information concerning any applicable exclusion in such form as CBP may require. These exclusion identifiers will be used by importers in the data collected by CBP in order for CBP to determine whether an import is within the scope of an approved exclusion request.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00260-CRK    Document 34    Filed 04/17/26    Page 53 of 53

SUPPLEMENT NO. 1 TO PART 705—REQUIREMENTS..., 15 C.F.R. Pt. 705,...

(i) For further information. If you have questions on this supplement, you may contact the Director, Industrial Studies, Office of Technology Evaluation, Bureau of Industry and Security, U.S. Department of Commerce, at (202) 482–5642 or Steel232@bis.doc.gov regarding steel exclusion requests, or at (202) 482–4757 or Aluminum232@bis.doc.gov regarding aluminum exclusion requests. The U.S. Department of Commerce website includes FAQs, best practices other companies have used for submitting exclusion requests and objections, and helpful checklists. The U.S. Department of Commerce has also included a manual providing instruction on the 232 Exclusions Portal for exclusion requests submitted on or after June 13, 2019, titled 232 Exclusions Portal Comprehensive Guide ("232 Exclusions Guide") and posted online at (https://www.commerce.gov/page/section–232–investigations) to assist your understanding when making 232 submissions in the 232 Exclusions Portal.

**Credits**

[83 FR 12110, March 19, 2018; 83 FR 46056, Sept. 11, 2018; 84 FR 26757, June 10, 2019; 85 FR 64382, Oct. 13, 2020; 85 FR 81073, Dec. 14, 2020]

SOURCE: 45 FR 55712, Aug. 21, 1980; 47 FR 14693, Apr. 6, 1982; 54 FR 601, Jan. 9, 1989; 54 FR 19355, May 5, 1989; 63 FR 31623, June 10, 1998; 65 FR 62600, Oct. 19, 2000; 67 FR 20631, April 26, 2002; 81 FR 10084, Feb. 29, 2016; 83 FR 12110, March 19, 2018, unless otherwise noted.

AUTHORITY: Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862) and Reorg. Plan No. 3 of 1979 (44 FR 69273, December 3, 1979).

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.