Slip Op. 26-89

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **MIRROR METALS, INC.,** | |
| **Plaintiff,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Court No. 24-00260** |
| **UNITED STATES, ET AL.,** | |
| **Defendants.** | |

### OPINION AND ORDER

[Granting Plaintiff's motion and remanding Commerce's denials of Plaintiff's requests for exclusion from Section 232 tariffs on steel imports.]

Dated: August 11, 2026

Erik D. Smithweiss, Katherine Anne Dobscha, and Sarah Ellen Raymond, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP of New York, NY and Los Angeles, CA for Plaintiff Mirror Metals, Inc.

Tara Kathleen Hogan, U.S. Department of Justice, Commercial Litigation Branch – Civil Division of Washington, D.C. for Defendants United States and United States Customs and Border Protection.  Of Counsel were Billie Kathryn Debrason and Rachel M. Morris, U.S. Department of Commerce, Office of Chief Counsel for Industry and Security of Washington, D.C. for Defendant United States Department of Commerce.

Kelly, Judge:  Before the Court is Plaintiff Mirror Metals, Inc.'s ("Mirror Metals" or "Plaintiff") Rule 56.1 Motion for Judgment on the Agency Record.  Pl. 56.1 Mot.  J. Agency Rec., Jan. 14, 2026, ECF No. 31 ("Pl. Mot.").  Mirror Metals challenges the U.S. Department of Commerce's ("Commerce") denial of its requests for certain flat rolled stainless steel products to be excluded from tariffs imposed pursuant to

Court No. 24-00260                                                    Page 2

Section 232 of the Trade Expansion Act of 1962, as amended, Pub. L. 87-794, § 232,

76 Stat. 872, 877 (1962) ("Section 232"), codified at 19 U.S.C. § 1862 (2024). See id.

For the following reasons, Plaintiff's motion is granted and Commerce's

determinations are remanded for reconsideration or further explanation.

### BACKGROUND

Acting pursuant to Section 232,[1] the President issued Proclamation 9705,

imposing a 25 percent tariff on imports of certain steel products and directing

Commerce to exclude a steel article determined not to be "produced in the United

States in a sufficient and reasonably available amount or of a satisfactory quality,"

or based on specific national security considerations. See Proclamation No. 9705 at

cls. 1–2, 83 Fed. Reg. 11,625, 11,627 (Mar. 15, 2018). It also directed Commerce to

issue procedures for exclusion requests within ten days. Id. Commerce, acting

through its Bureau of Industry and Security ("BIS"), promulgated regulations

establishing the exclusion process. See Section 232 Steel and Aluminum Tariff

Exclusions Process, 85 Fed. Reg. 81,060, 81,073–78 (Dep't of Commerce Dec. 14, 2020)

(codified at former 15 C.F.R. pt. 705, supp. 1) ("15 C.F.R. pt. 705 supp. 1" or "the

regulations").[2] The regulations specified "[a]n exclusion will only be granted if an

---

[1] Section 232 of the Trade Expansion Act of 1962 empowers the President to adjust imports of articles that may threaten to impair the national security of the United States. 19 U.S.C. § 1862 (2024).

[2] The former regulations, effective December 14, 2020, applied when Plaintiff filed

(footnote continued)

Court No. 24-00260                                                              Page 3

article is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality, or for specific national security considerations." Id. at § (c)(5)(i). On February 10, 2025, the President issued Proclamation 10896, revoking the provisions of the prior proclamation that authorized Commerce to grant exclusions from Section 232 tariffs with respect to imports of steel articles. See Proclamation No. 10896 at cl. 7, 90 Fed. Reg. 9,817 (Feb. 18, 2025) (directing Commerce to "take all necessary action to rescind the product exclusion process").

Mirror Metals provides flat-rolled stainless steel with specialized textures and surface treatments to customers in North America. See Compl. at ¶¶ 3–4, Dec. 20, 2024, ECF No. 2 ("Compl."). It imports three varieties of flat-rolled stainless steel: # 8 nondirectional finish steel, bright annealed finish steel, and # 4 satin finish steel (collectively, "subject steel"). See id. at ¶ 4. Between October 2022 and March 2024, Plaintiff submitted 63 exclusion requests from the Section 232 tariffs on the subject steel. See id. at Ex. 1; Pl. Mot. at 16. Domestic companies Outokumpu Stainless USA ("Outokumpu" or "the Objector"), North American Stainless, and Cleveland-Cliffs Steel Inc. objected to Plaintiff's exclusion requests.[3] Id. at ¶¶ 7–8. The International

---

the exclusion requests between 2022 and 2024. See Section 232 Steel and Aluminum Tariff Exclusions Process, 85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020). Citations to the regulations at 15 C.F.R. pt. 705, supp. 1 are to the December 14, 2020 version, unless otherwise stated.

[3] Because Commerce determined that Outokumpu was "at least one objector [who] could meet the "quality, quantity, and timeliness criteria," Defendants note it did not

(footnote continued)

Court No. 24-00260                                                          Page 4

Trade Administration ("ITA") reviewed the exclusion requests and corresponding objections, rebuttals, and surrebuttals for the subject steel products and recommended to BIS that Mirror Metals' requests for exclusion be denied. Id. at ¶ 88. BIS accepted the ITA's recommendations and provided decision memoranda explaining its rationale for denying the requests. Id.

Mirror Metals submitted 29 exclusion requests for "#8 non-directional finish" steel products. See id. at Ex. 1. Outokumpu submitted objections to the requests indicating that it could manufacture the product in its Calvert, Alabama facility within 60 days. See, e.g., Exclusion Request No. 324905, AR0027.[4] The Objector described #8 non-directional steel as "standard product." See, e.g., id., AR0028. For each request, Commerce concluded that at least one objector could meet the "quality, quantity, and timeliness criteria," and therefore denied the request. See, e.g., id., AR0004.

Mirror Metals submitted three exclusion requests for "bright annealed finish" steel products. See Compl. at Ex. 1. Outokumpu filed objections, indicating that it could produce a "mirror finished product with domestically melted steel" in its

---

consider submissions from the other objectors, North American Stainless and Cleveland-Cliffs Steel Inc., to make its determinations. See, e.g., Defs. Resp. at 9 ("Because Commerce found Outokumpu met the quality, quantity, and timeliness criteria, Commerce did not evaluate NAS' submissions. AR1282.").

[4] "AR__" refers to pages of the public version of the administrative record, which contains all public documents pertaining to each exclusion request. See Public Admin. Rec. for U.S. Dep't of Commerce, Apr. 15, 2025, ECF Nos. 15-1–8; Amend. Admin. Rec., Nov. 25, 2025, ECF No. 27 (collectively, "Exclusion Requests").

Court No. 24-00260                                                      Page 5

Calvert, Alabama facility.  See, e.g., Exclusion Request No. 356053, AR1305.  The Objector reported that it could manufacture and deliver bright annealed finish products within 55 days.  See, e.g., id., AR1307–08.  For each request, Commerce concluded that at least one objector could meet the "quality, quantity, and timeliness criteria."  See, e.g., id., AR1280.

Mirror Metals submitted 31 requests for exclusions for "#4 satin finish" steel products.  See Compl. at Ex. 1.  Outokumpu filed objections, stating that it "produces the product in the exclusion request."  See, e.g., Exclusion Request No. 334672, AR1485.  The Objector indicated that it could manufacture and deliver the product within 55 days.  See, e.g., id., AR1487–88.  Commerce denied the exclusion requests, concluding that "[At least one] objector meets the quality, quantity, and timeliness criteria."  See, e.g., id., AR1464.

On December 20, 2024, Mirror Metals filed a complaint against Defendants, challenging Commerce's determinations denying the exclusion requests.  See Compl. On April 16, 2025, Defendants filed their answer to the complaint.  See Defs. Answer, Apr. 16, 2025, ECF No. 11.  On January 14, 2026, Mirror Metals filed its Rule 56.1 motion for judgment on the agency record.  See Pl. Mot.  On April 17, 2026, Defendants responded to Mirror Metals' Rule 56.1 motion.  See Defs. Resp. to Mot. for J. on Agency Rec., Apr. 17, 2026, ECF No. 34 ("Defs. Resp.").  On June 5, 2026, Mirror Metals filed its reply in support of its Rule 56.1 motion.  [Pl.'s] Reply Brief in Supp. of Pl.'s R. 56.1 Mot. for J. on the Agency Rec., June 5, 2026, ECF No. 37.

Court No. 24-00260                                                          Page 6

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 28 U.S.C. § 1581(i) (2024).  The Court reviews an action brought under 28 U.S.C. § 1581(i) pursuant to the standards provided by section 706 of the Administrative Procedure Act, as amended.  See 28 U.S.C. § 2640(e) (2024).  The Act states that a reviewing court shall:

> (2) hold unlawful and set aside agency action, findings and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .
>
> (F) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute.

5 U.S.C. § 706(2)(A), (F).  Agency action is arbitrary and capricious if the agency considered impermissible factors, ignored an important aspect of the problem, contradicted the record evidence, or offered an implausible explanation.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Courts ask whether the agency considered the relevant factors and data and articulated a satisfactory explanation for its action.  Id. at 43; Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).

## DISCUSSION

I.     **Denied Section 232 Exclusion Requests**

Plaintiff argues that Commerce's determinations to deny Plaintiff's 63 exclusion requests are unlawful and arbitrary and capricious because Commerce accepted and considered the Objector's statements that were deficient under the

regulations and refused to consider Plaintiff's rebuttal evidence demonstrating that the subject steel could not be produced domestically. See Pl. Mot. at 2, 8–11, 47–49. Defendants argue that Commerce reasonably denied Plaintiff's exclusion requests by considering the relevant regulatory criteria and offered reasoned explanations for its decisions consistent with the evidence before it. Defs. Resp. at 13–20. Because Commerce's determinations ignore the regulatory requirements for objections and fail to explain the denials of Plaintiff's exclusion requests in light of the rebuttal evidence, its determinations are remanded for reconsideration or further explanation.

### A.      Failure to Comply with Regulations Regarding Objections

Acting under Section 232, the President issued Proclamation 9705 which imposed an additional 25 percent ad valorem tariff on certain steel imports and authorized Commerce to consider exclusion requests for steel products determined to be unavailable domestically in sufficient quantity or satisfactory quality or based on specific national security considerations. See Proclamation No. 9705 at cls. 1–4. The President also instructed Commerce to issue procedures creating a process by which Commerce could consider affected parties' requests for "exclusions" from Section 232 tariffs. See id. at cls. 3–4. Commerce, acting through the BIS, promulgated regulations governing requests for exclusions from Section 232 tariffs. See generally 15 C.F.R. pt. 705, supp. 1. Commerce relied on BIS as "the lead agency" in deciding whether to grant a request, and the ITA "analyz[ed] requests and objections to evaluate whether there [was] domestic production available to meet the requestor's

Court No. 24-00260                                                              Page 8

product needs." See Submissions of Exclusion Requests and Objections to Submitted

Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce

Sept. 11, 2018).[5] ITA then provided Commerce with a recommendation as to whether

it should grant an exclusion request. Id.[6]

During the relevant time period, the regulations permitted domestic

manufacturers of steel or aluminum in the United States to object to an exclusion

request. 15 C.F.R. pt. 705, supp. 1 § (d)(1). The regulations stated:

> (4) Substance of objections to submitted exclusion requests. The
> objection should clearly identify, and provide support for, its opposition
> to the proposed exclusion, with reference to the specific basis identified
> in, and the support provided for, the submitted exclusion request.

---

[5] Only directly affected individuals or organizations located in the United States—including entities engaged in construction, manufacturing, or supplying steel products to users—could submit exclusion requests. 15 C.F.R. pt. 705, supp. 1 § (c)(1). The fillable form required requesters to supply specific factual information, including: (1) the product type and class for which the exclusion is requested, (2) the 10-digit Harmonized Tariff Schedule Code of the United States for the single product covered by the request, (3) the quantity of product required (stated in kilograms) under a one-year exclusion, (4) estimates of the number of days required to take delivery of, manufacture, and ship the product covered by the request, (5) a full description of the physical properties and chemical composition of the product the requestor seeks to import, (6) any standards organizations that have set specifications for the product, (7) the application for the product, (8) why similar products manufactured in the United States are not suitable, and (9) domestic product availability information. See, e.g., Exclusion Request No. 324905, AR0009–0014.

[6] Under the regulations in effect at the time, Commerce reviewed each exclusion request to determine whether the requester's steel product met any of three criteria: (1) "the article is not produced in the United States in a sufficient and reasonably available amount;" (2) "the article is not produced in the United States in a satisfactory quality;" or (3) "specific national security considerations" warrant relief. 15 C.F.R. pt. 705, supp. 1 § (c)(6). Exclusion requests that did not satisfy the requirements specified in the regulations would be rejected. 15 C.F.R. pt. 705, supp. 1 § (h)(1)(i).

Court No. 24-00260                                                    Page 9

Id. at § (d)(4).  Where an objector was not currently producing the product but could produce and "immediately" (i.e., within eight weeks or, if after eight weeks, a date earlier than when the requester could obtain the quantity from the foreign supplier) make available the requester's required product quantity, the regulations required the objector to explain the anticipated timeline to start production of the steel included in the exclusion request to which it was objecting, with supporting evidence substantiating its claimed delivery schedule.  Id.

Specifically, the fillable objection form required an objector to: (1) indicate whether the objector currently manufactures or can immediately manufacture the product, (2) state the time period within which the objector can produce the product, (3) state whether the objector manufactures, or can immediately manufacture, a substitute product, (4) discuss the suitability of the objector's product, (5) provide a technical description of the product's characteristics, (6) state what percentage of the requested tonnage the objector can manufacture, and (7) detail the total delivery time.  See, e.g., Exclusion Request No. 324905, AR0025–0028.

The regulations also required Commerce's decision memoranda to respond to any objections, rebuttals, and surrebuttals concerning the requests.  15 C.F.R. pt. 705, supp. 1  § (h)(2)(i).  Although an agency generally may rely on certified factual statements, it must still consider countervailing evidence that "create[s] doubt" about those statements' veracity.  Seneca Foods Corp. v. United States, 663 F. Supp. 3d 1325, 1336 (Ct. Int'l Trade 2023) ("Seneca I") (citing Allied Tech. Grp., Inc. v. United

Court No. 24-00260                                                                                          Page 10

States, 649 F.3d 1320, 1331 (Fed. Cir. 2011)).  Ultimately, "[a]n exclusion will only be granted if an article is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality, or for specific national security considerations."[7]  15 C.F.R. pt. 705, supp. 1 § (c)(5)(i).

Here, Commerce accepts the Objector's conclusory statements despite their failure to satisfy the objection requirements in subsection (d)(4) and therefore fails to give effect to the regulations' requirements for valid objections.  The regulations require an objector to clearly explain and substantiate its claims by addressing the specific grounds and evidence presented in the exclusion request.  See id. at § d(4).  More specifically, the "objection should clearly identify, and provide support for, its opposition to the proposed exclusion."  Id.  Further, with respect to timing, the regulations provide, "[i]t is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times."  See id. at § (c)(6)(i).  Yet, the Objector in this case does not support its assertions and provides no supplemental evidence regarding delivery times.  See generally Exclusion Requests.  Defendants argue that the regulations were intended only to remind the parties that it was their burden to create an adequate record.  See Defs. Resp. at 25 (citing QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).  However, the regulations state their purpose:

---

[7]  Here, Plaintiff does not request an exclusion based on national security concerns, and Commerce does not identify any national security concerns as a basis for denial of Plaintiff's exclusion requests.  See generally Exclusion Requests.

>  (a) Scope.  This supplement specifies the requirements and process for how directly affected parties located in the United States may submit requests for exclusions from the duties and quantitative limitations imposed by the President.  This supplement also specifies the requirements and process for how parties in the United States may submit objections to submitted exclusion requests for relief from the duties or quantitative limitations imposed by the President and the process for rebuttals to submitted objections and surrebuttals (collectively, "232 submissions").  This supplement identifies the time periods for such submissions, the methods of submission, and the information that must be included in such submissions.

15 C.F.R. pt. 705, supp. 1 § (a).  The phrase "specifies the requirements" means the regulation delineates what parties must supply in support of their positions.  See Requirement, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/requirements (last visited Aug. 6, 2026) (defining "requirement" as something required, necessity, "something essential to the existence or occurrence of something else").[8]

Here, the Objector repeats the same general response in each of its objections—the product in the exclusion request is a "standard product" that it can produce domestically in its Calvert, Alabama mill.[9]  Contrary to subsection (d)(4)'s

---

[8]  QVD Food Co. reminds the parties that they bear the burden of creating an adequate record, and the regulations remind the parties of what is specifically required to create that adequate record.  See QVD Food, 658 F.3d at 1324; 15 C.F.R. pt. 705, supp. 1.

[9]  For example, in response to the prompt, "[i]ndicate what type of order the Exclusion Request that is the subject of the Objection Filing would pertain to," the Objector states, "Standard Product," and under comments, "Outokumpu can produce the product in the exclusion request."  See, e.g., Exclusion Request No. 324905, AR0024–

(footnote continued)

Court No. 24-00260                                                          Page 12

requirements, the Objector's statements fail to substantiate the claim that it can produce the subject steel by addressing the specific grounds and evidence presented in the exclusion request.[10]  See 15 C.F.R. pt. 705, supp. 1 § (d)(4).  For example, in Exclusion Request No. 324905, Plaintiff requests an exclusion related to the "#8 non-directional finish steel" product it claims is not domestically available.  See Exclusion Request No. 324905, AR0009–0023.  In the exclusion request, Plaintiff identifies what it claims is the closest domestically available product which has a "#8 directional finish," and explains why it is an inadequate substitute for the subject steel by citing different physical characteristics relating to, e.g., polishing method, reflectivity, and clarity, which depart from Plaintiff's quality standards for #8 non-directional finish steel.  See id.

---

0025.  In response to the prompt, "discuss the suitability of your organization's steel product compared to that identified by the Exclusion Requestor," the Objector states, "[t]he product in the exclusion request is standard product.  Outokumpu can produce the product in the exclusion request domestically in its mill in Calvert, Alabama."  See, e.g., id., AR0025.  In response to the prompt, "identify the reasons your organization objects to an exclusion request being granted to the applicant," the Objector states, "Outokumpu can produce the product in this exclusion request domestically in its mill in Calvert, Alabama."  See, e.g., id., AR0027.

[10]  The regulations also required the substance of surrebuttals to "address a rebuttal to an objection to the exclusion request made by the requester."  15 C.F.R. pt. 705, supp. 1 § (g)(3).  In many of its surrebuttals, the Objector claims generally, "the product in the exclusion request is standard product," and adds "Outokumpu can meet all of the specifications of the product in this exclusion request."  See, e.g., Exclusion Request No. 324905, AR0035–0036.  Although the surrebuttal mentions "specifications," it does not identify the product specifications Plaintiff offers in its rebuttal, evidence to demonstrate that the subject steel is not domestically available.  See, e.g., id.  Therefore, the Objector's surrebuttals likewise failed to meet the regulatory requirements.  See 15 C.F.R. pt. 705, supp. 1 §§ (g)(3), (h)(1)(iv).

Court No. 24-00260                                                      Page 13

According to the regulations, to successfully object to a requester's claim that

its subject steel product is "[n]ot produced in the United States in a satisfactory

quality," an objector must demonstrate that "the steel . . . being produced by an

objector can meet . . . the quality (e.g., industry specs or internal company quality

controls or standards)" standards.  15 C.F.R. pt. 705, supp. 1 § (c)(6)(ii).  Here, the

objection does not address or even mention Plaintiff's support for its request, such as

Plaintiff's explanation that the nearest domestically available product, "#8

directional finish" steel product, fails to meet its quality standards for polish,

reflectivity, and clarity.  See Exclusion Request No. 324905, AR0024–0028.  Thus, the

objection fails to meet the regulatory requirements to successfully demonstrate that

the subject steel is domestically available.  See 15 C.F.R. pt. 705, supp. 1 § (d)(4).  In

the decision memorandum, even though the objection fails to meet the regulation's

subsection (d)(4) requirements, Commerce denies the exclusion.  Exclusion Request

No. 324905, AR0005.  Notably, Commerce acknowledges that the Objector fails to

meet subsection (d)(4)'s requirement that it address the basis and supporting

evidence for the exclusion request, i.e., a "type 304 #8 non-directional mirror finish,"

yet it still accepts the Objector's vague statements as basis for denial:

> The request specifies type 304 #8 non-directional mirror finish.
> Outokumpu's product matches the specifications of the request;
> however, Outokumpu does not specifically mention the type 304 #8 non-
> directional mirror finish in the objection offering.  ITA notes that
> Outokumpu includes a statement that, "The product in this exclusion
> request is standard product.  Outokumpu can meet all of the
> specifications of the product in this exclusion request."  As such, ITA has
> determined that the specific statement made by the objector satisfies

Court No. 24-00260                                                                Page 14

> and meets the specifications listed in the exclusion request.  Therefore,
> Outokumpu meets the quality criterion.

Id.; see 15 C.F.R. pt. 705, supp. 1 § (d)(4).

Defendants argue that Commerce reasonably relied on the Objector's statements because "[a] written statement made under penalty of perjury is considered reliable evidence in situations with even more consequence than a non-prejudicial denial of an exclusion request."  Defs. Resp. at 16.  They argue that "[i]n the absence of contrary record evidence . . . Commerce may consider an objector's statement, certified under penalty of perjury, to be reliable evidence."  Id. at 15 (citing Seneca Foods Corp. v. United States, 740 F. Supp. 3d 1336, 1346, 1348 (Ct. Int'l Trade 2024) ("Seneca II"), aff'd, Fed. Cir. No. 25-1310).  Although the regulations require parties making submissions to "legally certify the veracity of the submission," the purpose of the regulations titled "Section 232 Steel and Aluminum Exclusions Process," was to delineate a process for making exclusion requests, objections, rebuttals, and surrebuttals.  See generally 85 Fed. Reg. 81,060, 81067 (Dep't of Commerce Dec. 14, 2020).  Even in the absence of contrary evidence, which as discussed below is not always the case here, certified statements are of no value if they do not tend to support the determination.  The Court did not hold, in Seneca I nor in Seneca II, that Commerce may accept certified statements uncritically; rather, it held that Commerce must consider countervailing evidence and may rely on parties' factual representations only where that reliance reflects "reasoned decision-making."  Seneca I, 663 F. Supp. 3d at 1339; see also Seneca II, 740 F. Supp. 3d at 1346 ("The

Court No. 24-00260                                                        Page 15

problem with Commerce's denials in <u>Seneca I</u> . . . was not that the agency accepted [the objector's] representations, but rather that it failed to make apparent its rationale for crediting [the objector's] representations despite Seneca's email submissions."). Here, it is unclear whether the Objector's statement that it can meet "the specifications of the product" means that the Objector certified its ability to meet Mirror Metals' quality requirements for each product. Indeed, a certified ambiguous statement proves little and cannot supplant Commerce's obligation to provide a reasoned basis for its determinations.

The regulations state that "[o]bjection filings that do not satisfy the requirements specified in paragraphs (b) and (d) will not be considered." 15 C.F.R. pt. 705, supp. 1 § (h)(1)(ii). Because Commerce denied Mirror Metals' exclusion requests based on its determinations that the subject steel was domestically available, and those determinations relied on objections that failed to comply with 15 C.F.R. pt. 705, supp. 1 § (d)(4), the matter is remanded to Commerce for further explanation or reconsideration.[11]

### B.    Failure To Assess Rebuttal Evidence

Even if the Objector satisfied subsection (d)(4)'s substantive requirements for objections, Commerce does not address Plaintiff's rebuttal evidence that may

---

[11] Should Commerce, on remand, find that the objections raised are insufficient and thus the exclusions should have been granted, Commerce's failure to consider countervailing rebuttal evidence is moot. However, in the interest of judicial economy, the Court addresses the issue.

Court No. 24-00260                                                    Page 16

undermine the Objector's assertions.   Therefore, even if Commerce explains on

remand why the Objector's submissions satisfy subsection (d)(4), it must also address

the evidence bearing on whether the subject steel is domestically available and

reasonably explain why it credits the Objector's evidence over Plaintiff's evidence.

The regulations require Commerce's determination to include an explanation

responsive to any objections, rebuttals, and surrebuttals. See 15 C.F.R. pt. 705, supp.

1 § (h)(2)(i) ("[t]he U.S. Department of Commerce['s] response to an exclusion request

will also be responsive to any of the objection(s), rebuttal(s) and surrebuttal(s) for

that submitted exclusion request."). Plaintiff's rebuttal evidence contains business

information and communications it contends undermine the Objector's statements

that it can make the subject steel. See, e.g., Exclusion Request No. 346364, AR0690

(the Objector's managers confirmed in a telephone conference in 2022 that the

Objector could not make the #8 non-directional finish but rather could add reflective

gloss to base steel); Exclusion Request No. 324905, AR0033 (the Objector's website

explains that the reflective gloss is not polishing, and therefore different from Mirror

Metals' polished and finished product, and that the website does not mention #8

finish at all); Exclusion Request No. 341039, AR0689 (a November 2022 email from

the Objector to Plaintiff which stated that it can only produce a "#8 finish" using

third-party processors).

In many instances, Commerce's reason for disregarding the rebuttal evidence

is that it consulted a "subject matter expert," who it claims, "could not definitively

Court No. 24-00260                                                                Page 17

connect the information . . . to the requested product." See e.g., Exclusion Request

No. 324905, AR0005.   For example, the Exclusion Request No. 324905 decision

memorandum states, in part:

> ITA notes Mirror Metals provided [confidential business information] to
> support its claim that Outokumpu cannot provide the requested
> product.  [Subject matter expert] guidance was requested to determine
> if the information in the emails referenced the requested product.  The
> [subject matter expert] could not definitively connect the information in
> the emails to the requested product.  ITA finds that nothing in the sales
> correspondence contradicts the certified statements made by
> Outokumpu in its objection.

Id.[12]  For this denial, Commerce does not explain why the subject matter expert could

not "definitively connect" the rebuttal evidence to the subject steel or why "nothing

in the sales correspondence contradicts" the Objector's statements.

In other instances, Commerce refuses to consider Plaintiff's evidence

indicating that the Objector can only produce the subject steel outside the United

States.  For example, in the Exclusion Request No. 341039 decision memorandum,

the ITA's recommendation disclaims any authority to consider "country-of-origin"

evidence in its analysis and recommendation and instead defers to BIS.  Exclusion

---

[12] See also, e.g., Exclusion Request Nos. 324938, AR0037; 38231, AR0076; 338228,
AR0114; 338379, AR0149; 339249, AR0190; 339250, AR0231; 339256, AR0273;
339242, AR0310; 339240, AR0351; 346185, AR0437; 346215, AR0479; 346220,
AR0524; 346225, AR0569; 334672, AR1355; 334673, AR1405; 334674, AR1454;
334675, AR1503; 334676, AR1552; 334677, AR1602; 339264, AR1652; 339269,
AR1702; 339271, AR1749; 339540, AR1796; 339616, AR1843; 339627; AR1890.

Court No. 24-00260                                                          Page 18

Request No. 341039, AR0660.[13]    However, BIS concludes without confronting the

issue that there is no "country of origin" question and accepts the Objector's

unsupported claim that it can or does produce the subject steel in the United States.

Id., AR0657.

However, in some instances, Commerce reasonably disregards certain rebuttal

evidence for staleness, reasoning that Plaintiff's email evidence was dated more than

90 days prior to the date of the exclusion request.  See, e.g., Exclusion Request No.

356061, AR1281.[14]    Commerce, as a fact-finder, may reasonably consider the

evidence's currency or staleness in evaluating its reliability and probative value.  See

5 U.S.C. § 556(d); see also, e.g., Seneca II, 740 F. Supp. 3d 1336 at 1354 (finding

Commerce's internal 90-day "cutoff" "reasonable").  Although Commerce addresses

some rebuttal evidence, its decision ignore other rebuttal evidence without

explanation is arbitrary and capricious.

## II.    Remedy

Defendants note that on remand, if Commerce determines that Plaintiff should

have been granted the exclusion requests, there is a question as to how Commerce

---

[13] See also, e.g., Exclusion Request Nos. 342642, AR0700; 342653, AR0739; 342672, AR0779; 342668, AR0819; 342650, AR0858; 391496 AR1026–27; 357875, AR1301; 416927, AR1111.
[14] See also Exclusion Request Nos. 355972, AR0900; 359427, AR0941; 386011, AR0982; 386019, AR1994; 390092, AR2043; 390578, AR2095; 390582, AR2147; 390585, AR2407; 390589, AR2251; 390591, AR2303; 390594, AR2355; 390598, AR2199; 390599, AR2459; 390883, AR2511; 390900, AR2563; 356053, AR1196; 356061, AR1251; 357875, AR1301; 416927, AR1111; 418325, AR1068; 429045, AR2664; 429057, AR2768; 429034, AR2716; 390408, AR2615.

Court No. 24-00260                                                           Page 19

may provide a remedy because Proclamation 10896 has since revoked Commerce's authority to grant Section 232 tariff exclusions for steel imports.  See Defs. Resp. at 28 n.13.  At oral argument, Defendants stated that, "[i]f Commerce were to reach a contrary decision on remand, it would document its reasons for doing so, and [Commerce] would probably need some sort of court order to effectuate that."  Oral Argument at 53:34–44, July 22, 2026, ECF No. 41 ("Oral Argument").  Likewise, Plaintiff stated that "[w]e would probably need a court order along the lines of the AM/NS Calvert decision, requiring reliquidation of some entries . . . ."  Id. at 51:05–14.  If, on remand, Commerce reconsiders its determination and concludes that it should have granted the exclusions, Commerce shall undertake whatever action is necessary to effectuate them, including directing United States Customs and Border Protection to reliquidate the subject entries as necessary.  See 28 U.S.C. § 2643(c)(1) (the Court may "order any other form of relief that is appropriate in a civil action . . .").

## CONCLUSION

Commerce's denial of Plaintiff's exclusion requests was arbitrary and capricious because Commerce improperly relied on invalid objections, failed to critically examine Plaintiff's countervailing evidence, and did not reasonably explain the connection between its determinations and the evidence before it.  Therefore, Commerce's determinations denying the 63 exclusion requests are remanded for reconsideration or further explanation.  In accordance with the foregoing, it is

Court No. 24-00260                                                              Page 20

**ORDERED** that Commerce's denials of Mirror Metals' exclusion requests, specifically Exclusion Request Nos. 324905, 324938, 338231, 338228, 338379, 339249, 339250, 339256, 339242, 339240, 346176, 346185, 346215, 346220, 346225, 346364, 341039, 342642, 342653, 342672, 342668, 342650, 355972, 359427, 386011, 391496, 418325, 416927, 369673, 356053, 356061, 357875, 334672, 334673, 334674, 334675, 334676, 334677, 339264, 339269, 339271, 339540, 339616, 339627, 342310, 386019, 390092, 390578, 390582, 390598, 390589, 390591, 390594, 390585, 390599, 390883, 390900, 390408, 429045, 429034, 429057, 452856, 452861, are remanded; and it is further

**ORDERED** that Commerce shall either explain further or reconsider its determinations, and shall file its remand redetermination with the Court within 90 days of this date; and it is further

**ORDERED** that if Commerce concludes that it should have granted the exclusions, Commerce shall undertake whatever action is necessary to effectuate them, including directing United States Customs and Border Protection to reliquidate the subject entries as necessary; and it is further

**ORDERED** that the parties shall have 30 days to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the remand redetermination; and it is further

Court No. 24-00260                                                                    Page 21

      **ORDERED** that the parties shall file the Joint Appendix within 14 days after the filing of replies to the comments on the remand redetermination; and it is further

      **ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:      August 11, 2026
            New York, New York